IN THE CIRCUIT COURT FOR SOMERSET COUNTY, MARYLAND

JANE DOE, INDIVIDUALLY
AND IN HER OFFICIAL CAPACITY
AND ALL OTHERS KNOWN OR UNKNOWN
PAST, PRESENT AND FUTURE STUDENTS
AT MD UMES AND OR ANY OTHER MD HBCU'S
OF THE UNIVERSITY OF MARYLAND SYSTEM
WHO HAVE BEEN, CURRENTLY AND/OR
POSSIBLE VICTIMS OF **DIRECT** RACE, SEX, AGE, GENDER
AND OTHER ACTS OF DISCRIMINATION & BIASES
4109 CUTTY SARK RD.
BALTIMORE, MD 21220
EMAIL:psychdotor101@gmail.com

JANE DOE a.k.a. BERRI A.WELLS
**2019 MARYLAND GOVERNOR'S SERVICE AWARD WINNER**
7414 RIVERHILL RD.
OXON HILL, MARYLAND 20745
(301)905-7160
EMAIL:abettercoach@gmail.com

BERRI A. WELLS
7414 RIVERHILL RD.
OXON HILL, MD 20745
(301)905-7160
EMAIL:abettercoach@gmail.com


PLAINTIFF(S)


Vs                                    **CASE NUMBER:**_____
                                      **VERIFIED COMPLAINT/DEMAND FOR TRIAL BY JURY**

**SERVE**:
STATE OF MARYLAND
ATTORNEY GENERAL BRIAN FROSH
200 St. Paul Place
Baltimore, MD 21202

**SERVE ON: FOR**

**1). STATE OF MARYLAND**
**Larry Hogan, Governor of MD**
100 State Circle
Annapolis, Maryland 21401-1925

**2). STATE OF MARYLAND**
**MD GENERAL ASSEMBLY/MD House Speaker-**
**Hon. Adrienne A. Jones, and ALL other Members Known or Unknown**
90 State Circle
Annapolis, MD 21401-1925

**3). University of MD College Park**
**UNIVERSITY SYSTEM OF MARYLAND**
**Hon. Wallace Loh, President**
**and/or Successor Darryll J. Pines**
1101 Main Administration Bldg.
College Park, MD 20742

**4). University of Maryland-College Park**
**University System of Maryland**
**Attn: Board of Regents and Board of Trustees**
1101 Main Administration Bldg.
College Park, MD 20742

**5). Maryland Higher Education Commission**
**MD Attorney General, Consumer Protection Division**
200 St. Paul St.
Baltimore, MD 21202

**6). Associate Director of Career and Workforce Education**
**Maryland Higher Education Commission**
6 N. Liberty Street, 10th Floor
Baltimore, MD 21201

**7). Office of the Secretary**
**Maryland State Department of Education**
200 West Baltimore Street
Baltimore, MD 21201-2595

**8). State of Maryland**
**University of MD College Park**
**Office of the General Counsel**
2117 Seneca Bldg.
College Park, MD 20742

**9). University of MD-College Park**
**Office of Civil Rights & Sexual Misconduct**
3101 Susquehanna Hall
4200 Lehigh Rd.
College Park, MD 20742

**10). University of MD-College Park**
**Ombudsman Officer**
**Hon. Mark A. Shayman**
2117 Seneca Bldg.
College Park, MD 20742

**11). Office of the President-UMES/MD HBCU**
**Dr. Heidi M. Anderson, President**
11868 College Backbone Rd.
Princess Anne, MD 21853-1299

**12). Dr. Prince Attoh, Program Director, Instructor, Student-Advisor**
**UMES/MD HBCU**
11868 College Backbone Rd.
Princess Anne, MD 21853-1299

**13). Ms. Cheryl Duffy, REGISTRAR**
**UMES/MD HBCU**
11868 College Backbone Rd.
Princess Anne, MD 21853-1299

**14). Dr. LaKeisha Harris, Interim Dean-Graduate School**
**UMES/MD HBCU**
11868 College Backbone Rd.
Princess Anne, MD 21853-1299

**15). Jason Casares, Dir.**
**UMES/MD Office of Institutional Equity & Compliance**
11868 College Backbone Rd.
Princess Anne, MD 21853-1299

**16). Dr. Joyce Bell, Interim Chair-DSS**
**UMES/MD HBCU**
11868 College Backbone Rd.
Princess Anne, MD 21853-1299

**17). Dr. Marshall Stevenson, Dean**
**UMES/MD HBCU**
11868 College Backbone Rd.
Princess Anne, MD 21853-1299

**18). Dr. Boyd**
**UMES/MD HBCU**
11868 College Backbone Rd.
Princess Anne, MD 21853-1299

**19). State of Maryland**
**STATE TREASURER**
**State Treasurer, Nancy Kopp**
80 Calvert Street, Room 109
Annapolis, MD 21401

**20). Department of Budget & Management**
**Central Collections Unit**
300 W. Preston Street
Baltimore, MD 21201

**<u>SERVE:</u>**
**1). U.S. ATTORNEY AND U.S. ATTORNEY GENERAL & OFFICES**
36 S. Charles St.
Baltimore. MD 21201

**<u>SERVE ON:</u>**

**2). U.S. Department of Education**
**Office for Civil Rights**
400 Maryland Avenue, SW
Washington, DC 20202-1100

**3). Office for Civil Rights, Philadelphia Office**
**U.S. Department of Education**
100 Penn Square East, Suite 515
Philadelphia, PA 19107-3323

4). **U.S. DEPARTMENT OF JUSTICE**
950 PENNSYLVANIA AVE., N.W.
WASHINGTON, DC 20530-0001

**Middle State Commission <u>BELOW</u> –Separate** Defendant

**1). Middle States Commission on Higher Education**
**Attn: Hon. Dr. Heather Perfetti, President Elect**
3624 Market Street, Suite 2 West
Philadelphia, PA 19104

ALL DEFENDANTS ARE BEING SUED IN THEIR INDIVIDUAL AND OFFICIAL
CAPACITY

## PRELIMINARY STATEMENT

1). The Plaintiffs assert that this Honorable Court has subject matter jurisdiction over the

persons, and parties included in this petition. This Complaint is to bring an action to

redress acts, conduct and/or practices of various forms of discrimination against the

Plaintiff and others. This Court has jurisdiction over this case and parties as to the acts

and conduct described herein violated or violates The Civil Rights Act of 1866, The Civil

Rights Act of 1964, Age Discrimination Act of 1975, Article 24 of the Maryland

Declaration of Rights, Article 26 of the Maryland Declaration of Rights, MD CONSUMER

DEBT COLLECTION ACT, MD CONSUMER PROTECTION ACT, Title 42 USC 1981,

Title 42 USC 1983, Title 42 USC 1985, Title 42 USC 1986, Title VI of the Civil Rights

Act of 1964, Title IX and because some of the Defendants are recipients of Federal

financial assistance and educational services, and therefore is subject to Title IX of the

Educational Amendments of 1972, 20 U.S.C. 1681-1688, and MD Criminal Code, 7-

302, Computer Crimes, Violation of the 5th, 8th Amendment Cruel and Usual Punishment

and 14th Amendments., were all under the color of state and federal laws or statutes in

further violation of the equal protection laws. Title IX prohibits providers of Federal

financial assistance from discriminating on the basis of sex in educational programs or activities. Additionally, it is unlawful for a school and/or staff members and to officials to retaliate against any individual (student) because he or she filed a complaint, opposed any unlawful practice, or testified or assisted in an investigation or proceeding.

**"Governor Hogan I am hurt by the way I was mistreated." I exhausted ALL of my administrative remedies.**

2). **PROCEDURAL AND FACTUAL BACKGROUND**

**STATEMENT OF THE CASE AND FACTS**
**COMPLAINT AND COUNT ONE**

3). **COME NOW** the Plaintiff(s) Jane Doe, and Berri A. Wells, a **2019 Maryland Governor's Service Award Winner.** And John Doe, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS A FORMER STUDENT AND ALL OTHERS KNOWN OR UNKNOWN, PAST, PRESENT AND FUTURE **FEMALE** STUDENTS AT the University of Maryland Eastern Shore ( UMES) AND OR ANY OTHER University of Maryland Historical Black College or University (MD HBCU'S) WHO HAVE BEEN, CURRENTLY AND/OR POSSIBLE VICTIMS OF **DIRECT** RACE, SEX, AGE, GENDER AND OTHER ACTS OF DISCRIMINATION and BIASES, you will find my Complaint with attachments, exhibits and evidence to support **each** claim as set forth herein and below, and respectfully sue State of MD Defendants 1-18, and the United States Defendants 1-4. In addition, the Middle States Commission on Higher Education, is a separate and independent Defendant and for the cause of action state as follows:

**CAUSES OF ACTION**

4). Beginning on or about the 7th day of September, 2018, the Defendants, individually, separately and/or jointly, did knowingly, willingly, purposely, negligently,

commit some acts or conduct with malice, deliberate indifference, did commit and/or caused, allowed to cause and/or authorize malicious mischief to occur against the Plaintiff a Black/African-American woman of color 55 year of age and others before, during and after her attendance at MD UMES, was denied equal educational opportunities on the basis of sex, gender, race, color, age and nationality through promoted acts of discrimination by several of the Defendants mainly Defendant Dr. Prince Attoh, a professor at UMES for the designed purpose of executing the scheme to **deny** Black women any opportunity, by illegally and unlawfully perpetrating discriminatory policies and practices to ensure Black female students would fail without any procedural safeguards, due process and equal protections under the law.

**The Civil Rights Act of 1866, The Civil Rights Act of 1964, Age Discrimination Act of 1975, Article 24 of the Maryland Declaration of Rights, Article 26 of the Maryland Declaration of Rights, Title 42 USC 1981, Title 42 USC 1983, Title 42 USC 1985, Title 42 USC 1986, Title VI of the Civil Rights Act of 1964, Title IX and Federal financial assistance and educational services and therefore is subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. 1681-1688, and MD Criminal Code, 7-302, Computer Crimes, Violation of the 5th, 8th Amendment Cruel and Usual Punishment and 14th Amendments, were all under the color of state and federal laws or statutes in further violation of the equal protection laws.**

## Protection from Harm and Discrimination

5). UMES by its own policies and practices described herein subject Plaintiff(s) to a substantial risk of serious harm, cruel and unusual punishment by failing to protect female Black students from class room violence, insults, demeaning language and verbiage from, Dr. Attoh, who is male. He, used his professional title with great energy to guarantee that targeted black Female students would fail his course and subsequently be dismissed from the doctoral program. UMES ORLD. Like a modern day former Gov. George C. Wallace, Dr. Attoh, and Dr. Harris, the Dean of Graduate

Studies through the years, perpetuated policies and practices, that continue to deprive Plaintiff of her rights that are secured by the United States Constitution under the 5th, Eighth and 14th Amendments and federal laws.

6). Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or have been deliberately indifferent to such conduct.

7). Defendants Number 1, 2, 3, 4, 5, 7, 8, 9, 11, and the U.S. Department of Education, the U.S. Justice Department, and the **Middle States Commission of Higher Education**, the Primary Accreditation Authority, failed and willfully neglected to oversee UMES, all MD HBCU's and the entire University of Maryland facilities and institutions as to programs, policies, practices and procedures. The lack of oversight ensured targeted UMES students were victimized by discrimination  and policies that favor or protect white students attending both the predominant white institutions (PWI) of the University of Maryland system as well as, white students attending UMES.  UMES Black Females suffer without a safety net, as personnel and policies between the PWI's and the HBCU's vary immensely.  The white students, regardless to location are aided and supported and the Black students at UMES lose while received no such aid or assistance.

## BACKGROUND

8). For the record, there are at least 15 other former UMES students with identical or similar complaints of Plaintiff, Jane Doe.  They too were victimized by discriminatory, and capricious grading practices of the primary perpetrators, Defendant  Dr. Prince Attoh and his accomplice Dr. Lakeisha Harris. In 2018, during the Christmas holiday,

the Saturday before Christmas, on December 22, 2018, UMES sent Jason Casares Director of the UMES Office of Institutional Equity & Compliance to conduct emergency, in-person, one-on-one interviews with victims of Dr. Attoh and Dr. Harris. The investigation was initiated as the result of two African-American female students, both over the age of 40, from the class of 2017, who alerted UMES administration of grading irregularities and communicated with the Administration and alerted them to the problem by creating a fictitious email address to protect their anonymity. Similar to other victims, The Plaintiff followed through with her interview and met Defendant Jason Casares on December 28, 2017. Topics of discussion during the interview addressed:  grading irregularities, discriminatory comments and treatment exhibited toward, African-American female students and the topic of inappropriate sexual mis-conduct on the part of Dr. Attoh.  During the interview, Plaintiff Wells truthfully answered questions, reviewed the documentation supporting her observations and provided a hard copy of evidence in the form of her original Complaint to UMES .

### 9). I. **The Four Components of the Systematic Removal of African-American Female Students from the (ORLD) Program of UMES**

**Step 1**-Withholding grades and denying notification until the end of the course makes it impossible for students to redo, or respond before final grades are submitted.

**Step 2**-Capricious Grading.  In conjunction with late notification, capricious grading including not giving students credit for assignments that were in fact submitted, further ensuring a failing grade.

**Step 3**-Immediate Removal from the Program.  Late notification and capricious grading assure students will fail and per UMES policies, are immediately removed.

**Step 4**-Saddling the Student with Debt. UMES after implementing the Scheme, turn the students' account over to the Maryland Central Collection Unit.

Graduate courses of the ORLD do not follow a traditional semester or trimester format.

But rather, each course occurs over the span of two-weekends each month: Fridays

5pm – 9pm; Saturdays and Sundays 9am to 5pm. In September 2018, the first course of the ORLD Program was course 601-Theories of Organizations and was held the first and the third weekends during the month of September 2018. There were a total of eight (8) assignments: six (6) Written Papers, one (1) Group Project-Oral Presentation and a Final Exam. **Exhibit C**-Table of Grades, provides an overview of assignments, the due dates, the submission dates and the dates Plaintiff Wells received her grades from Dr. Attoh. As a result of the compressed weekend format, obtaining timely feedback and grades from instructors is critical to a students' success as UMES has a zero tolerance for failing grades see page 83-of the UMES Student Handbook. Unlike UMUC, UMES students are not provided up to three opportunities to resubmit each paper, nor are UMES students offered any support, assistance or resources to address deficiencies. **Exhibit P**- UMUC Syllabus. Withholding grades in any academic setting disadvantages students. In a compressed format, withholding grades guarantees UMES students failing the course which leads to automatic dismissal from the program.

In addition to Dr. Attoh informing Plaintiff Wells of her first graded assignment 27 days following the on-time submission, Dr. Attoh claimed that she failed to submit the assignment and she received a zero. On October 3, 2018 when Plaintiff Wells became aware of the zero, she provided emails and screen shots showing proof of the submission of the assignment to Dr. Attoh. He refused to re-consider the failing grade and to give her the credit for the assignment that she deserved.

10). <u>**Step 1/Withholding Grades and Denying Notifications Until the Course Has Concluded. Along With Not Giving Credit for Assignments That Were Submitted**</u>-
Plaintiff Doe, for the first course of the ORLD Program, Theories of Organizations Course ORLD 601 submitted the first assignment on time: September *7, 2018*.

Date Grade Received: October 4.

Grade Received 0/10.

Turnaround Time: 27 days

Course ORLD 601

Total number of assignments: eight (8)?

Turnaround Time (from date of submission to the date Dr. Attoh provided grades):

Assignment number 1:  27 Days

Assignment number 3:  14 Days

Assignment number 4:  21 Days

On average, fifty percent of the graded assignments had a turnaround time of 21 days. The only instances that Dr. Attoh provided timely and prompt feedback were for in-class presentations.  Two assignments fall into this category, or 1/3 of the assignments:

| The | Turnaround | Time | for | In-Class | Presentations: |
|---|---|---|---|---|---|
| Assignment | Number | 2: | | Same | Day |
| Assignment | Number | 6: | | Same | Day |

See **Exhibit C** – ORLD Table of Grades. **CHRONOLOGY**

**I. Table:  Grade Submission Dates-Exhibit C**

**II. Emails: Attachments/Exhibits B:**
a). October 2, 2018, time: 10:23.  I offered to meet on October

3rd or 4th, 2018. Dr. Attoh informed me with was too late, Attoh had already submitted grades.

b). On October 4, 2018,      *the* Plaintiff received Termination and mail from Defendant Dr. LaKeisha Harris, Interim Dean of the UMES Graduate School, informing the Plaintiff Wells, that her admission to the doctoral program at UMES was terminated effective

October 4, 2018, and she was no longer in good academic standing. The email also included her FINAL GRADE and the points assigned for each assignment. (See **Exhibit A**)

c). Also on October 4, 2018 at 11:05 am,    Plaintiff Wells sent Defendant Dr. Prince Attoh an email addressing several issues and concerns that she had with his Final Exam Evaluation and Grade Calculation. This was based upon Defendant Attoh email to me of October 4, 2018 at 11:05 am. **(See Exhibit B)**    October is the same time period of my dismissal and when Dr. Attoh told me to leave his class, which I <u>did not</u> find Defendant Attoh had any such authority to do so whether challenges, appeals or grievances were about to be filed or filed, no such authority was located in the policy exist. Once again, Defendant Attoh over-reached a power grabbed twice, doing an act outside the scope of his job description and legal authority.

d). For the record, the Plaintiff submits that correspondence in her Complaint to **(See Exhibits B, C, D, E**) in further support of Plaintiff(s) email to Defendant Attoh.

e). The Plaintiff does hereby adopt and incorporate each and every statement, claim and issues presented in **Exhibits A, B, C, D,** and **E,** paragraphs 1-4, and her Appeal and Complaint dated October 9, 2018, **without** having to reassert or re-allege those claims attached to this Complaint, as evidence in support of the entire Complaint in this matter.

f). **Exhibit D**, provides the Plaintiffs Complaint and all Defendants an overview and Chronology beginning September 7-October 2018, which breaks down my issues, concerns and problems with grades, comments made to or about African American

blatant, policies denies Plaintiff due process of law, no Notice prior to dismissal, alleged Sanctions imposed without warning, were all expressed to Defendant Dr. Prince Attoh, with my appeal and complaint, with the requested relief sought.

11). According to Dr. Attoh on October 4, he informed me that he had not received the very last assignment that was required from the course. Although I emailed this assignment to Dr. Attoh and he acknowledged receipt, he refused to give me credit for the assignment, stating that I had failed to submit the paper.

12). The 2nd paper was due and submitted on time: September 21, Date Grade Received, Grade Received 5/10 on October 4, Turn Around Time-14 days.

13). The 3rd paper due and submitted on time: September 14. Date Grade Received October 4, Grade Received 8/10. Turn around time-21 days.

14). According to Dr. Attoh records, by the 3rd assignment, at the outset of the course, Plaintiff Wells was failing the course. In his capacity as her instructor, and as he Department Chair and as her advisor, Dr. Attoh ws obligated and expected to inform her : of her standing in the class.

15). **Part-2 A). Capricious Grading-** Dr. Attoh's grading was unduly influenced by race, gender, sex, and age. The 2nd highest score that I received was 19/20 for a Group project that I was partnered with a white male student who was younger than I. Although we completed and submitted the assignment on time, our work did not merit a near perfect score. Being partnered with the white male student was helpful to me but for the wrong reason.

16). **Part-3 Immediate Removal/October 4th-Letter from Dr. Harris**

Unfair policies at UMES disadvantage students, unlike multiple chances students at UMD-College Park are provided with:

a. Syllabus that outlines steps to take when failing

b. Opportunities to re-write each paper 3 times

c. Resources made available to assist.

d. Syllabus from UMGC

17). **Part 4-Saddled with Debt**

**Exhibits T, U, V, AA, and BB.**

**Part 2B-Capricious Grading**-The 3rd assignment, the 2nd paper of the course, Plaintiff Wells received 5/10. Dr. Attoh's rational was that Ms. Wells had failed to follow the rubric that Dr. Attoh had provided. Although Ms. Wells concedes that she did not follow the rubric, she points out that she had followed the template which Dr. Attoh had also provided in the instructions. He had provided students with two options to follow: the rubric or the template. The 2nd reason Dr. Attoh provided, related to the gravity of the empirical article that Ms. Wells selected. In the Defendants response regarding the failing grade, Dr. Attoh stated the following…. "You did not select an appropriate empirical article for the assignment" and as a result, I received a failing grade.

**III. Defendants Violated UMES Appeal of Dismissal Policies and Procedures By Both Defendants UMES, Dr. Harris and Dr. Attoh**

18). Attached as **Exhibit F**, is the above referenced UMES policy and procedures for Graduate Student –Dismissal and Appeals. "<u>**Division of Academic Affairs School of Graduate Studies Appeal of Dismissal/Discontinuation Policies and Procedures**</u> A. Purpose 1. These procedural guidelines are designed to provide a means for the resolution of appeals by students who have been dismissed from the School of Graduate Studies because of poor academic performance or progress. Students dismissed from any graduate program **will be given due process**. B. Procedure 1. A program director may recommend dismissal of a graduate student for failure to meet the program's standards of academic performance or progress. A student shall be given written notice of dismissal by the School of Graduate Studies stating the reasons for the dismissal. 2. Within five days of the date of the notice, a student who disputes the reasons for the dismissal must contact the department chair, the graduate program director and advisor for informal discussion of the situation. 3. If a student remains dissatisfied after the discussions required by paragraph 2, the student may file a formal appeal of the dismissal, no later than 10 days after the discussions. The appeal must be made in writing in the form of a letter to the Dean of the School of Graduate Studies and include (a) in detail, the basis for the appeal; (b) the date the student was advised of the dismissal; and (c) a summary of the informal discussions held pursuant to these procedures. An appeal also should be supported by any attachments necessary to explain the issue and by an attachment giving the names and contact information (i.e., campus addresses, telephone numbers) of persons with relevant information. An appeal may be supported by written statements from other persons, provided such persons are identified in the statement and contact information is included. 4. Upon receiving an appeal, the Dean shall forward a copy of it to the faculty advisor, the program director and

department chairperson(s) of the program from which the student is dismissed. 5. The Dean shall review each dismissal appeal and shall dismiss the appeal if: (a) The student has submitted the same or a similar complaint through any other formal grievance procedure; (b) There are no procedural grounds or other evidence supporting the appeal; (c) The appeal was not filed with the Dean within 10 days of the student's notice of the dismissal; or Early Childhood Research Center, Suite 1137 Princess Anne, MD 21853 Tel: (410) 651-6507 Fax: (410) 651-7571 If the appeal is dismissed, the Dean shall notify the student, the chairperson and the graduate program director in writing. 6. If an appeal is not dismissed by the Dean within five days of receipt of the appeal, the program involved shall submit a reply to the appeal within 10 days of the program's receipt of the appeal. 7. The Dean shall submit the appeal of the student and the response of the program involved to the Graduate Council Appeals Committee (GCAC). The GCAC will hear statements from the student and the program. 8. The committee shall meet privately at the close of the fact-finding meeting to decide whether a majority believe the evidence supports the allegation of arbitrary and capricious grading beyond a reasonable doubt. 9. Following deliberations, the Committee shall notify the Dean in writing of the decision within five days of the meeting. 10. The Dean shall issue a decision in writing to the student, the faculty advisor, the chairperson and the program director within five days after receiving the recommendations of the GCAC or the request to waive GCAC review. 11. GCAC review may be waived upon the written request of the student and the program. C. Authority of the Committee The decision of the committee is final, and binding on both parties. The decision may not be appealed to any other body within UMES or the University of Maryland System. D. Implementation The Graduate Dean shall be responsible for implementing the decision of the

committee. E. Schedules Times stated in these procedures will be shortened, if feasible, when

an appeal is relevant to an advancement decision. The Dean may extend or shorten the

deadlines stated in these procedures when circumstances do not permit student, faculty or

administrative actions within the specified time frames. Requests by the faculty or student to

extend or shorten these deadlines must be in writing, but the Dean may not require the GCAC

to decide an appeal within a certain time. The Dean's decisions with respect to scheduling shall

be in writing and shall be final. Early Childhood Research Center, Suite 1137 Princess Anne, MD

21853 Tel: (410) 651-6507 Fax: (410) 651-7571 N.B. Adopted from the UMBC School of

Graduate Studies dismissal policy." These Defendants **did not** follow nor comply with ^any^ parts

or provisions of the procedures. Clearly violating the Plaintiff Wells rights to procedural due

process. Plaintiff Wells did not receive all the protections required under the policy in her case,

appeal and complaint. (See **Exhibit F**)

18). Defendant Harris or Graduate School Dean Harris failed to comply with the dictates of

**Exhibit F**, when she power played all the positions, including those of the Graduate Council

Appeals Committee (Chair) who by policy is the *FINAL* decision maker and authority, were

**never** given the opportunity to take part in Plaintiff Wells appeal, as Defendant Harris like

Defendant Attoh are both members of the (GCAC), and thus conflicts occurred, and

what will be described later, any action by Defendant Harris was illegal and in direct violation of

UMES policy, as her actions were to cover-up for Defendant Dr. Attoh. (See **Exhibit G/Graduate**

**Council Members List**)

19). At UMES and as it relates to the discriminatory acts, conduct to conflicts of interests, as to the Appeal policy and procedures, the policies and procedures described were and continue to be unfair, discriminatory, unconstitutional, defective process to Plaintiff Wells and other Black Female students ever affected while attending Graduate School and UMES, when Defendant Dr. Attoh, played ALL of the initial roles, but department chair as to the appeal process, thus making it impossible for Plaintiff Wells to have fair notice, review, **without** . . . hearing every being held, in further violation of UMES policy and procedures. This Complaint goes directly to the heart of due process and equal protection violations in too many ways. The Plaintiff **never** had any meetings with anyone as required by policy. Defendant Harris, the Dean never submitted anything to the (GCAC) she chairs. The Plaintiff shall ask the Court to rule and declare that the actions of both Defendants Attoh and Harris were illegal, unlawful to unconstitutional and violated the Plaintiffs right to due process and UMES policy were never followed.

## IV. <u>Arbitrary and Capricious Grading-Violations</u>
## <u>Withholding and Denying Credit for Assignments</u>

20). **Exhibit H,** further describes the UMES policies on Arbitrary and Capricious Grading problems involving Plaintiff Well and Dr. Attoh.

a). Attached as **Exhibit I,** is the copy of an email and letter from Defendant Harris dated December 4, 2018, that she **self-ruled** and informed me,Defendant Dr. Harris had rescinded my dismissal from the program effective that day, December 4, 2018. **NOTE: There are NO past** **<u>correspondence letters or information from any Defendant reflective of the Appeal,</u>** **<u>Complaint and Grievance process and procedures being followed.</u>**

b). On or about the 14th day of December, 2018, pages 3, 4, 5, and 19, of **Exhibit J** describe in great detail in Plaintiff Wells *"Complaint and Appeal"* to UMES and Defendant Jason A. Casares of the UMES Office on Institution Equity and Compliance Investigator who interviewed me and several Black Female students who were victims of UMES, Dr. Attoh and Harris discriminatory schemes.

## V. UMES Compliance & Discrimination Policy Section Incomplete

21). It has been discovered Defendants at UMES Compliance Policy, provides the student NO information or directions of what the Office of Institutional Equity and Compliance does or the Plaintiffs has a right to notice which is not provided, thus the Plaintiff and other students of color rights to due process of law and equal protection are and were violated and infringed upon by UMES, staff and officials under this section are not defined. (See **Exhibit L**)

22). On December 27, 2018, Plaintiff Wells sent ALL UMES Defendants an email seeking to Amend and Supplement    Complaint for Civil Rights, Discrimination Violations & Request For Investigation With Action Plan-**COVER LETTER**. Plaintiff never heard back from the Defendants as to what is marked as **Exhibit K**.

## VI. COMPLAINT UPDATE-TO Defendant Jason Casares
## Situations that Prompt the Need for Policy Changes-Addressed

23). On March 1, 2019, and May 29, 2019,  Plaintiff Wells sent Defendant Jason Casares of Institutional Equity and Compliance, the attached emails, and letters Updating her Complaint with that UMES office, of the need to change, modify and upgrade various policy voids, that

keep students like me Berri Wells at a total disadvantage compared to students at the

predominately white institutions of the University of Maryland System. (See **Exhibit-M**)

## VII. Plaintiff Wells Follow-up Complaint, and Email to
## Jason Casares of June 24, 2019-Appeal Status and Illegal
## To Unauthorized Grade Tampering-From F to W-IS CRIMINAL

24). On June 24, 2019, the Plaintiff sent Defendant Jason Casares another email complaining

about not receiving any correspondence from any Defendant of UMES as to her appeal,

grievances, of 8 months, and now notification that someone at UMES illegally gained access to

my student record, changed an **F to a W**, without my knowledge or notice. At no time have or

did I withdraw from the program at UMES. MD Criminal Code 7-302, et. seq. prohibits the illegal

and unlawful access to my personal records to commit a fraud by anyone. **This act along**

**requires a criminal investigation by state and federal law enforcement to investigate who**

**changed by grades, and who authorized the changes which were illegal, and sounds like an**

**attempt to cover-up various Defendants tracks in this case to lower or hide risk and fault.**

(See **Exhibit N**)

## VIII. ADDITIONAL COMPLAINTS TO DEFENDANT DR. HARRIS
## Regarding Discriminatory Practices at UMES-Threats of CCU Collections
## By Bursar Office, Illegal Grade Changes/Tampering & Policy Changes Requested
## ORLD Removal From The Program and Unresolved ORLD Fall 2019 Course Schedule Issues

25). On June 25, 2019, **July 17, 2019 and August 29, 2019-Exhibit P**, the Plaintiff sent yet

another email, inquiry, complaint and update request to Defendant Harris and UMES to no

avail. Plaintiff Wells once again addressed and attempted to reach out to the Defendants in

hopes of resolving many issues that remained opened without any answers or responses to

date. The Defendants Dr. Attoh and UMES as described in that email message actively and

continue to unlawfully engage in practicing discriminatory grading practices that harmed the

Plaintiff and many others to date, **must be** halted by the Courts. **Clearly, Defendant Harris, did**

**not contact nor consult with the General Counsel of the MD Attorney's Office, for the**

**institution.**    (See **Exhibit 0-1 & 2 and Exhibit P**)

## IX. September 18, 2019-Letter from Defendant Dr. Harris Informing Plaintiff Wells She was DISMISSED from the program in error.

26). Enclosed as **Exhibit Q**, a letter and email from Defendant Dr. Harris who **admitted,** after

reviewing policies and procedures for the ORLD program determined Plaintiff Wells was

DISMISSED in error.

## X. Reinstatement Plan Letter from Defendant Dr. Harris Dated September 26, 2019

27). Defendant Dr. Harris emailed the Plaintiff Wells a letter regarding reinstatement, that

failed to address the unresolved issues and problems to date with the entire process that have

not been corrected nor cured. (See **Exhibit R )** Without, the Defendants and officials of the

Graduate School Council taking part in the decisions of Plaintiff Wells appeal, grievances etc.,

this letter or correspondence fails to have the force and effect of the policy, and cannot be

taken as true, nor legally accurate, as Defendant Harris was without legal authority on her own

to make ALL the decisions and decide Plaintiff Wells case, **without** the right, power, authority

nor jurisdiction to do so on her own. **This ruling along with all others issued by Defendant**

**Harris cannot legally stand as valid orders, judgments or instruments consistent with UMES**

**policy and procedures.** (See also **Exhibit S-Email from Berri Wells to Defendant Harris**) The

Plaintiff Wells continues to show through continuous emails and correspondence to the

Defendants, of UMES, Harris and Attoh failure and refusal to comply and follow the dictates of

the UMES policy, rules, regulations, practices and procedures on Appeals, Grievances and

Complaints.

## XI. 28). <u>What a difference between UMES and UMUC.  Check out the syllabus?</u>

Here is my email and Cover Letter dated January 9, 2019 to UMES staff and officials on the issue and concerns of the syllabus differences of two University College facilities.

" Last fall with great excitement, I entered the Organizational Learning Doctoral Program at the University of Maryland Eastern Shore.  Following the completion of my first course, Organizational Theory, I learned that not only had I failed the course, per UMES policy; I was dismissed from the Program.  All of this without a conversation or any indication from the instructor who also happened to be my advisor, Dr. Prince Attoh.

During the process of researching and educating myself on available options, quite accidentally, while online, I came across the syllabus of the University of Maryland University College's Foundations of Doctoral of Management Program – Course Number:  DMG 600 Business Management Doctoral Program and was astounded at the desperate policies and practices between the two University of Maryland System schools.  In comparing the syllabi from UMES and UMUC, here are a few of the differences, taken directly from the syllabus:

1. "Faculty will strive to provide feedback within four (4) calendar days"
2. "Work may only be submitted up to three times"
3. "Information of receiving the Grade of "I"I"
4. "7 Day Incomplete"
5. "60 Day Incomplete"

Without any effort, UMUC students have substantial information about grading policies, available options at their fingertips by way of the course syllabus.  In contrast to UMES students, we have to struggle and grope for direction and accurate information on next steps and available options.

As a Historical Black College and University, UMES serves a specific population that is often overlooked and disregarded.  Instead of adhering to practices and policies that support and aide students, UMES specifically ORLD, systematically and routinely discriminates against its students and creates a hostile learning environment that dismisses students as a matter of course.  The Cohort of 2016 – 2017 began with 17 students and to date, three to four or – 15% remain.   In my cohort of 2018 – 2019, ten students completed the first course and eight students were advanced to the second course.

I am writing to express my concerns over the systematic practices of UMES ORLD that dismiss African American, female students disproportionately.  Practices including:  withholding grades Had I had only one of the provisions so freely offered at UMUC, I would not be in the position that I am in, fighting an uphill battle in the dark – with vague and conflicting information."

Berri Wells

**This BIG problem has to be corrected to benefit ALL University of Maryland System, and**

**MD HBCU's students regardless of race, sex, gender and age, or campus location.**

## COUNT 2
## COMPLAINT FOR FRAUD, UNJUST ENRICHMENT, CONVERSION, IMPROPER ACCESS TO A COMPUTER, SYSTEM, NETWORK AND SCHEME TO DEFRAUD AND ILLEGAL GRADE TAMPERING AND UNAUTHORIZED GRADE CHANGES

29). The Plaintiff hereby re-alleges each and every and any and all the allegations and claims set forth in Paragraphs 1-28 above and incorporates same herein by reference in further support of all the claims made in this Complaint. The Plaintiff Wells was verbally notified in May of 2019, by Defendants Jason Casares, that one of her grades had been changed from a **F to W**. Plaintiff Wells has never submitted any withdrawal letter to any of the Defendants at UMES.

30). These Defendants known or unknown made these grade changes without any written or other Notice to Plaintiff Wells, knowing the representations were illegal, false and Defendants knew the falsity of these grade changes to **F to W** would impact the Plaintiffs status at the time the grades were changed, by some staff member or official at UMES.

31). The Defendants sought to have the Plaintiff rely on the representations and fraud committed.

32). Plaintiff is informed and believes and thereon alleges that the Defendants known or unknown went to great lengths behind the scenes of the specific purpose to change and tamper with the Plaintiffs grade, that deprived the Plaintiff of a full educational opportunity at UMES, to harass and humiliate Plaintiff in her personal life, business, reputation, to defraud plaintiff, to subject the Plaintiff to public ridicule and embarrassment in the classroom, all with malice toward Plaintiff.

33). Plaintiff was and continues to be injured and suffers by the loss of her funds, loss of reputation, and an inability to compete in the market place without the use of being able to obtain her degree at UMES.

34). That the Defendants known and/or unknown owed the Plaintiff a legal duty to protect her school educational records from illegal and unlawful intrusion of staff and officials seeking to permanently injure the Plaintiff from further educational opportunities.

35). The acts and conduct described herein in **COUNT 2**, not only unfairly or unduly took advantage of Plaintiff Wells or commit wrongful acts in order to unjustly enrich and smear the Plaintiff at the expense of a degree and higher level educational opportunity, for which the Plaintiff applied to succeed.

36). The Defendants did knowingly, willingly, purposely, negligently to malice and fraudulent intent wrongfully converted, took, utilizing or managing the property and financial interests of the Plaintiff to their own self benefits and that of UMES and not the Plaintiff.

37). Such acts and omissions leading to the Defendant's unjust enrichment were the actual and proximate cause of harm to Wells.

38). The Defendants at UMES breached that duty on more than one occasion and such breaches described herein were the actual and proximate cause of further harm to Plaintiff Wells.

39). These acts and conduct of UMES staff and officials and many Defendants were malicious, fraudulent and oppressive, justifying an award of Punitive Damages so that Defendants and each of them will not engage in such conduct in the future and make an example of them.

Grade changing and illegal access to a student's private state record using a computer to falsify a grade is a crime.

## COUNT-3

40).          **BREACH OF CONTRACT AND CONVENANT OF GOOD FAITH AND FAIR DEALING**

41). The Plaintiff hereby re-alleges each and every and any and all the allegations and claims set forth in Paragraphs 1-39 above and incorporates same herein by reference in further support of all the claims made in this Complaint. As stated above, the parties were in a contractual relationship with UMES and all Defendants and ALL Defendants by whatever names owed a duty to Plaintiff Wells to act in good faith and deal fairly with her. Such acts and omissions leading to the Defendant's breach of their legal duty to deal in good faith and fairly with Plaintiff Wells were the actual and proximate cause of past, present and future harm to Wells the Black *Female* student victim.

42). Defendants Harris and Attoh and others conduct was outrageous, with both Harris and Attoh acts being done with malice or bad motives or reckless indifference to the interests of Wells.

43).          **COUNT 4
COMPLAINT FOR VIOLATION OF MD
CONSUMER DEBT COLLECTION ACT AND CONSUMER
PROTECTION ACT BY UMES AND MDCENTRAL COLLECTION UNIT
COLLECTING OR ATTEMPTIING TO COLLECT A DEBT
WITHOUT A LICENSE**

44). The Plaintiff hereby re-alleges each and every and any and all the allegations and claims set forth in Paragraphs 1-42 above and incorporates same herein by reference in further support of all the claims made in this Complaint, and says:

45). The Defendants at UMES on June 11, 2019 emailed the Plaintiff a debt letter claiming Wells owed $7,681.00 allegedly to UMES. The Plaintiff has never entered into any financial contract or other agreement with the Defendants or UMES as to her student loan. (See **Exhibit-T** )

46). Plaintiff student loan is with the U.S. Department of Education, exclusively.

32). On or dated July 1, 2029, without legal or just cause, and without any adequate Notice, the Defendants sent the Plaintiff Wells a debt Notice demanding the Plaintiff pay $8,986.77. (See **Exhibit U** )

47). The Defendants as described herein, are debt collectors as defined in MD Commercial Law 14-201(a)(b)(c), MD Business Regulations Section 7-101, when the Defendants a State agency and institution, when it engaged in unlawful debt collection activities in violation of MCALA.

48). A violation of the consumer debt collection act constitutes per se violation of the Consumer Protection Act Section 13-301(14)(iii), by collecting or attempting to collect debts not owed or knew had not incurred and by collecting a debt without First obtaining a license the requisite debt collection license.

49). The Plaintiff has obtained direct information but evidence that the Central Collection Unit, or CCU, State of Maryland Central Collection Unit, Maryland Department of Budget and Management,  and/or Maryland Central Collections Unit, **DO NOT** have the required license to engage, nor force hustle a consumers debt, **without** the required license. (See **Exhibit V** ) The debt or debts described herein **must be voided** by the state, immediately, as the State

Defendants have NO legal right, but license from itself, to collect any debts, knowing no debt is actually owed and no such debt could be enforced by the State Defendants as NO contract exist between the Plaintiff and Defendants for this alleged debt. (See also Section 14-202(8) of the Consumer Debt Collection Act. **The Plaintiff owes NO debt to the State of Maryland.**

50). The Defendants of the State of MD, have imposed and sent correspondence to the various credit bureaus of the false debt, and also within the various sate components in other attempts to collect this false debt bill, whereas the Plaintiff is being harmed further or likely to be harmed with her taxes being affected and monies taken, illegally, without a license.

51). The acts and conduct described herein and above violate not only my constitutional rights to due process under the law and the equal protection violations of the 5th, 14th Amendment to the Civil Rights Act of 1964, and separately The Civil Rights Act of 1866,The Equal Educational Opportunities Act of 1974, Title IX of the Educational Amendments of 1972, to include Title 20 USC 1681-1688, and Age Discrimination Act of 1975. The Plaintiff and Complainant Berri A. Wells was the victim of harassment, gender, race, sex, age, color discrimination, as well as cruel and usual punishment at UMES, as there are without any doubt Title VI and Title IX violations committed by Defendants UMES, The University of MD System, Dr. Attoh, Dr. Harris and other UMES staff to officials subjects of this Complaint.

52). The policies, rules, regulations and guidelines of UMES, the subject of this issue, **and possibly** now also includes Morgan State, Bowie State, Coppin State as well as UMES. UMES and the three other historically black institutions policies, rules, regulations and guidelines on **"Arbitrary and Capricious Grading Policies in Courses, Doctoral, Dismissal, Student Rights / Responsibilities & Grievance Procedures"** are shameful to slave time, outdated to draconian

adversely affecting mostly black students at each of these HBCU's compared to the almost ALL white staff and student ratio within the UM Systems College Park and other campuses statewide. The University of Maryland System **grants** its mostly all white institutions and students, ***"Marquee Academic Policies"*** while the UM Systems HBCU's have NO second, third or fourth chances for its students, no protections or no safe guards, and no safety net for mostly black students at HBCU's compared to the largely white UM system campuses students enjoy, from Baltimore City/County to College Park. This conduct described is implicit bias and cuts deep racially against black students, as costs or saving money to cutting corners at MD HBCU's could be the motivating impact. Clearly, there is a pointed injustice towards all four MD HBCU's, in not treating or offering to treat ALL MD University system students whether at HBCU's and mostly white UM campuses in College Park, and Baltimore, the **same**.

**53). Below is a outline of UM System (College Park-Main campus) Graduate School Policies, that are stand-alone mostly "_white only_" policies on the subject of Arbitrary and Capricious Grading Policies, Dismissal and Grievance Procedures, that benefit mostly white students:**

(A). Arbitrary and Capricious Grading Policies In Courses and Doctoral Qualifying
(B). Formal Procedures
(C). Benefit of Ombudsman Officer and Office-Staff and Students benefit
(D). The Informal Appeal Process
(E). The Formal Appeals Process
(F). The Initial Evaluation Phrase
(G). The Dispute Resolution Phrase
(H). The Examination Committee's Response Phrase
(I). The Fact-Finding Phrase
(J). The Authority of the Appeal Committee
(K). The Appeal's Committee Decision

**<u>GRADUATE STUDENT RIGHTS AND RESPONSIBILITIES</u>**
**GRIEVANCE PROCEDURE**

**(I).  Limitations**
**(II). Informal Consultation**
**(III). Formal Grievance**

**(IV). The Appeal Process**
**(V). General Rules Controlling Formal Grievance Procedures**

54). The same policies referenced herein above which most student protections, civil rights safe guards **do not** exist or apply at UMES, Coppin State, Morgan State and Bowie is like having land, and sand drowning, compared to the life rafts UM System schools at College Park and Baltimore provide to its students and staff.

55). Conflicts exist with UMES and other MD University Systems HBCU's institutions, with staff directors, officials, department chairs, and Chief University UMES Complainant setting on multiple boards to committees with multiple hats to decision making action or authorities over the affected students initial appeal, dismissal and/or grading issues, when presented to UMES staff.

56). Case in point, UM System at College Park have several policies in place in real time which eliminate staff holding multiple conflict roles over a student's complaint, grievance, appeals or dismissal involvement in the process. There should be NO great disparities between UM system mostly white campuses and UMES and HBCU's which are mostly black not enjoying the same protections as mostly white students at UM system campuses. The policies outlined below should be consistent and uniformed throughout the entire UM system institutions need be applied equally system wide, not spread apart because you are at UMES, Coppin State, Morgan State and Bowie, all black colleges.

57). All UM system campuses policies, rules, regulations on grading, dismissals, appeals, informal to formal complaints, grievances and rights to responsibilities should be for the *"equal"* benefit of any and all UM system students state wide and staff, without

discriminating against a black few, with UMES and the other three HBCU's giving mainly one shot, miss you are out.

## REQUEST FOR RELIEF

1.      Plaintiffs have no adequate remedy at law to redress the wrongs suffered as set forth in this complaint. Plaintiffs will continue to suffer irreparable harm and personal injury as a result of the unlawful acts, omissions, policies, and practices of Defendants, as alleged herein, unless this Court grants the relief requested. The need for relief is critical because the rights at issue are paramount under the United States Constitution and the laws of the United States.

2.      **WHEREFORE, Plaintiffs respectfully request that the Court**:

    a. Adjudge and declare that the acts, omissions, policies, and practices of Defendants, and their agents, employees, officials, and all persons acting in concert with them under color of state law or otherwise as described herein are in violation of the rights of the Plaintiffs under the Cruel and Unusual Punishments Clause of the Eighth Amendment to the United States Constitution and federal law;

    b. Preliminarily and permanently enjoin Defendants, their agents, employees, officials, and all persons acting in concert with them under color of state law, from subjecting Plaintiffs to the illegal and unconstitutional conditions, acts, omissions,

    policies, and practices set forth above;

    c. Order Defendants to develop and implement, as soon as practical, a plan to eliminate the substantial risks of serious harm that Plaintiffs suffer due to

planned to targeted acts of discrimination and the Defendants' plan shall include at a minimum the following:

    a. Protection from Harm and acts or other illegal to unlawful, discriminatory conduct that infringes upon the equal rights of all Black Female students at UMES and MD HBCU students and any and all basic human needs required by dignity, civilized standards, humanity, and decency, as Female students at UMES and any and all MD HBCU's, should enjoy.

**d.** Issue a judgment against Defendants in an amount to be determined at trial, including compensatory and punitive damages in an amount that is fair, just, and **reasonable;**

e. Award Plaintiffs the costs of this suit, and reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 1988, and other applicable laws;

f. Retain jurisdiction of this case until Defendants have fully complied with the orders of this Court, and there is a reasonable assurance that Defendants will continue to comply in the future absent continuing jurisdiction; and

g. Grant Plaintiffs such other relief as the Court deems appropriate and just.

h. **Request for Appointment of Counsel.**

i. That the Defendants of the State of Maryland **TERMINATE** the employment status of Defendants Dr. Attoh and Dr. Harris, and Dr. Bell for the acts and illegal conduct as described herein above, as both violated UMES and state policy and procedures and created their own in violating the rights of Plaintiff Wells. That Dr. Heidi M. Anderson UMES President be **immediately REMOVED** from office, as she knew

and/or should have known that her staff and Defendants were directly and intentionally violating Black Female students rights.

## AMENDED REQUESTED RELIEF:

1). Demand For Trial By Jury

2). The Plaintiff demand damages in the amount of $10,250,000 Dollars in Compensatory Damages and $20,000,000 in Punitive Damages, against each Defendant, as to **COUNT ONE**. Plaintiff demands damages in the amount of $2,500,000 in Compensatory Damages and $5,000,000 dollars in Punitive Damages against each applicable Defendant as to **COUNT TWO**. As to **COUNT 3**, the Plaintiff demands and seeks damages against each Defendant in the amount of $1,000,000 dollars in Compensatory Damages and $500,000 dollars in Punitive Damages. For **COUNT 4,** the Plaintiff demands judgment and relief in the amount of $250,000 dollars in Compensatory Damages and $750,000 dollars in Punitive Damages.

a). Request other **unspecified** damages, which can be fully negotiated between the parties.

b). The UM System educational services **must** mandate and ensure that any and all rules, policies, regulations, procedures and guidelines, to student rights and responsibilities to grievance procedures from each UM System institution to its students regardless of campuses location, are equally applied, and student safe guards and full protections and rights are in place consistent with UM College Parks main campus policies for all students in any programs enrolled.

c). That any policy changes, corrections, or other amendments should be made or posted publicly online with proper legal Notice to all students, staff and general public of the planned action.

d). That ALL UM System institutions shall have and/or employ a Ombudsman officer and office at each facility, fully staffed for students and staff.

e). The State of MD/UM System shall agree **not to** create or have policies between each UM System campus that are different or otherwise conflict with other UM System institutions, based upon race, color or other discriminatory appearances to practices.

f). The Petitioner/Complainant Berri Wells, requests that she be issued an **"*Honorary Degree*"** from the University of Maryland System with FULL honors for her mental pain and suffering that I endured, and will never be the same in the functional educational setting again.

g). Rule, Declare and Order the Defendants at UMES Compliance Policy, provide the student NO information or directions of what the Office of Institutional Equity and Compliance does or the relevant areas of discrimination it covers. The Section is incomplete and the students' rights to all Notice is not provided, thus the students' rights to due process and equal protection are violated and infringed upon by UMES, who's policies under this section are not defined. This policy must be consistent with All other University of Maryland campuses and institutions Compliance policies.

h). Rule and Order that the Defendants **cannot** legally collect any alleged debts from the Plaintiff without a lawful contract and license by the collecting agency and/or entity.

i). Rule and Declare that the Defendants CCU and/or UMES do not have at time of alleged debt notice went out to collect any debt from the Plaintiff as set forth and alleged herein, legally

without a license to collect such debts.

j). Rule and Order that the debts from UMES and CCU Defendants is voided and cannot be enforced.

k). That the Court issue an immediate ORDER to open a criminal investigation as to who directed, accessed and authorized the unauthorized and illegal grade tampering and grade changes of Plaintiff Wells grade from a F to W.

l). Rule and Declare that both Defendants Harris and Attoh violated UMES policy and procedures as outlined and described above, and violated Plaintiff Wells rights to due process and equal protections laws.

m). Rule, Declare and Order that the Court takes Judicial Notice of the admission by Defendant Harris that the UMES and other Defendants dismissed Plaintiff Wells from her program in error.

n). Rule and Order that the changing of the Plaintiffs grade from a F to W, without reason, notice and justification was illegal, unlawful and criminal.

o). Rule, Order and Declare that the Defendants to whom applicable failed to follow the appeals, complaint and grievance procedures, which denied the Plaintiff due process, which was not fait to Plaintiff.

p). Rule, Order and Declare that NO acts or conduct can or shall occur that violate the rights of any student based upon race, sex, color, gender, or age.

q). That the Court shall immediately order and direct that any and all policies, rules, regulations between all Defendants institutions of the University of Maryland System shall be consistent, fair and equal to all students, regardless, of race, sex, color, age or gender.

r). Rule, Order and Declare that ALL University of MD institutions ***Syllabus*** must be consistent,

fair and equal too ALL University of MD students.

s). Rule, Order and Declare that Defendant Attoh **did not** have the legal right, power nor authority to dismiss and tell the Plaintiff to leave his class, as due process during the appeal, grievance and complaint process would and shall protect victims like the Plaintiff until the appeal and/or grievance process is completed, that NO student shall be under these circumstances be not allowed to continue their classes, until this process is FINAL.

t). That the Defendants shall immediately create a policy that any unauthorized access to another students educational records and any changes without notice or legal justification to harm the student, is illegal and criminal, and any staff member and/or employee found to be in violation will be terminated, and subject to criminal prosecution.

u). That the Court Rule, Order and Declare that the Defendants shall immediately eliminate any and all complaints and issues with *Arbitrary and Capricious Grading Policies, Appeal, Grievance and Complaints need be fair across the board and any and all apparent Disparities Between policies at each Institutions in these policy areas shall be consistent and protect all students, equally.*

_____

Berri A. Wells
7414 Riverhill Rd.
Oxon Hill, MD 20745
(301)905-7160
Email: abettercoach@gmail.com


Dated this the 21st day of May, 2020

## VERIFICATION

I do hereby VERIFY & CERTIFY this date that the above and foregoing Complaint

is true and correct to the best of my knowledge, information and beliefs.

_____
Berri A. Wells

# EXHIBITS

# TABLE OF CONTENTS

1). **EXHIBIT A**-October 4, 2018, Program Termination Letter from Dr. Lakeisha Harris-Dean

2). **EXHIBIT B**-EMAILS COMMUNICATIONS
#(A). October 2, 2018 @ 12:36 PM Berri Wells to Dr. Attoh Article Critique Format Instruction Sheet

#(B). October 2, 2018 @ 5:30 PM Dr. Attoh's Reply and Response to Berri Wells Article Critique Format and Explanation of my housing Emergency situation. Grades submitted without Face to Face on Subject the next day

#(C). October 3, 2018 @ 2:16 PM, and 2:58 PM, Dr. Attoh's email that we can discuss the critique evaluation. No meeting never took place or materialized. In the 2:58 PM email Dr. Attoh advised DO NOT submit the paper. Dr. Attoh had already calculated the grades.

#(D).-October 4, 2018, Final Exam Evaluation from Dr. Prince Attoh at 11:05 AM.

#(E).-October 4, 2018, to Dr. Attoh from Berri Wells addressing financial aid, the bursar and accounts conflicts to assignments missing at 3:44 PM.

3). **EXHIBIT C**-October 8, 2018, ORLD 601 **Table of Grades** for Berri Wells

4). **EXHIBIT D**-October 8, 2018 ORLD 621 **Grades** for Berri Wells

5). **EXHIBIT E**-**Chronology September – October 2018**

6). **EXHIBIT F**-**Appeal and Complaint** from Berri Wells dated October 9, 2018

7). **EXHIBIT G**-**UMES Appeal Policies and Procedures**

8). **EXHIBIT H**-**Graduate School Council Members List**

9). **EXHIBIT I**-**UMES Arbitrary and Capricious Grading Policies**

10).**EXHIBIT J**-**Email and Letter of Withdrawal for Berri Wells from Dr. Harris dated December 4, 2018 at 12:56 PM**

11). **EXHIBIT K**-**December 14, 2018** *Complaint and Appeal* **submitted to Jason A. Casares of the Office of Institution Equity and Compliance**

12). **EXHIBIT L**--*Attachment Number One*-**Emails Containing Grades for 601 part of Exhibit K-Complaint & Appeal to Jason A. Casares**

13). **EXHIBIT M**--**Attachment Number Two**-**Assorted documents, emails, denial of extension, denied credit for the assignment, "Rotation Resistance"**

14). **EXHIBIT N--<u>Attachment Number Three</u>**-Empirical Article Critique, Issue of <u>did not</u> follow Template, <u>did not</u> select Appropriate Empirical Article, Template and Dr. Attoh's Comments

15). **EXHIBIT O-<u>Attachment Number Four</u>**-Leadership Reflection Paper and Copy of Power Point Slide-deck

16). **EXHIBIT P-<u>Attachment Number Five UMUC Course Syllabus</u>**

17). **EXHIBIT Q-**Copy of Berri Wells Amended and/or Supplemental Complaint for Civil Rights, Discrimination Violations, etc. & Request for Investigation with Action Plan-Dated January 9, 2019, and January 15, 2019 Letter from Berri Wells to UMES officials, addressing the scheme at UMES relating to Options for Poor and Failing Disparate Treatment regarding grades, UMES staff and officials not following UMES policy on Appeals and Dismissal, apparent conflicts of interests among staff, title and duties, NO second or third chances like students enjoy at UMCP, as UMES has ONE STRIKE and you are out.

18). **EXHIBIT R-**Deficient UMES Office of Institutional Equity and Compliance without definition nor description as to the mission and function of that office, and the rights of students.

19). **EXHIBIT S-**March 1, 2019 email from Berri Wells to Jason Casares, seeking an Update on Complaint submitted to Jason, the need for immediate policy changes, with Relief, Notice, Opportunity to Improve and Just Cause.

20). **EXHIBITS T**-June 24, 2019 email from Berri Wells to Jason Casares following up again on the appeal, and why without my knowledge and consent my grade was changed from a F to a W.

21). **EXHIBIT U** -Berri Wells on June 25th, and June 26th 2019 sent Dr. Harris a series of questions about status, reinstatement, student collections, student loan, the Bursars Office, policy changes, practices about erroneous removal from the program.

22). **EXHIBIT V**-Berri Wells follow up email dated July 18, 2029 to Dr. Harris on Dr. Attoh, delay in providing me with my grades, capricious grading, withholding grades, unanswered issues with the unauthorized changing of my grade from a F to a W, public humiliation of me by Dr. Attoh.

23). **EXHIBIT W**-August 29, 2019 email from Berri Wells to Dr. Harris and others on grade tampering again, student loan, UMES account that to date were never answered, correct or closed properly.

24). **EXHIBIT X**-September 18, 2019 Letter and Email from Dr. Harris to Berri Wells, which admitted and indicated UMES determined Dr. Harr is was dismissed in error.

25). **EXHIBIT Y**-September 26, 2019 Letter and Email from Dr. Harris to Berri Wells serving as an Update on her status and standing, and further details on my reinstatement back into the Organizational Leadership program.

26). **EXHIBIT Z**-Copy of ORLD September 27, 2019 follow-up email from Berri Wells to Dr. Harris about not receiving the 601 registration information , lists of assignments, the instructor, my advisor, plus the disputed outstanding balance of about $9,000 which prevented me from registering. Plus an outline of the many UMES policies to Dr. Harris she and others like Dr. Attoh violated and failed to comply with as to the handling of my complaints, appeal and grievances filed timely.

27). **EXHIBIT AA**-Copy of an email dated June 11, 2019 from the UMES accounting/finance officer as to my DISPUTED debt, and the July 1, 2019 Letter from Central Collections as to what I owe the State of Maryland associated with my attendance at UMES.

28). **EXHIBIT BB**-Copy of a Letter dated February 21, 2020, from the Office of the Commissioner of Financial Regulations that says, the Central Collection Unit, State of Maryland Central Collection Unit, Maryland Department of Budget and Management, and/or Maryland Central Collections Unit, do not have a license as a collection agency.

29). **EXHIBIT CC**-Copy of a December 5, 2018, Letter & Statement from another Student Victim at UMES who explained the scheme of things and how she too was a victim of UMES and Dr. Attoh HIT and you out program, for the record.

# 2019 GOVERNOR'S SERVICE AWARD WINNER

Mar 1

Photo - Google Photos



# EXHIBIT-A



# UNIVERSITY of MARYLAND
# EASTERN SHORE

## DIVISION of ACADEMIC AFFAIRS
### School of Graduate Studies

October 4, 2018

Berri Wells #1238199
7723 English Oak Circle
Elkridge, MD 21075

Dear Ms. Wells:

I regret to inform you that following a recent review of your grades, your admission to the doctoral program in Organizational Leadership has been terminated effective October 4, 2018 because you are no longer in good academic standing. You earned the following grades in your coursework:

- "F" in ORLD 601: History & Philosophy Organizations

According to policy, a student in the ORLD program *"who receives a final course grade of "F" at any time will be immediately dismissed from the program."* (2015-2017 Graduate Catalog, page 183 available at
https://www.umes.edu/uploadedFiles/_WEBSITES/Schedule/Content/2015-2017%20Graduate%20Catalog%20(Updated%20Fall%202016).pdf.

Thank you for your interest in the University of Maryland Eastern Shore and best wishes in your future endeavors.

Respectfully

Dr. LaKeisha Harris, Ph.D., CRC
Interim Dean

Cc.    Mrs. Cheryl Duffy, Registrar
       Dr. Prince Attoh, Program Director

# EXHIBIT-B

    **Berri Wells <abettercoach@gmail.com>**

## Extension Request on Writing Assignment

3 messages

---

**Berri Wells** <abettercoach@gmail.com>                                   Thu, Sep 6, 2018 at 7:54 AM
To: "Attoh, Prince A" <paattoh@umes.edu>

Good morning Dr. Attoh.  I'm writing to request an extension for tomorrow morning at 9 am.

My intent was to finish it today.  Currently, I am in the midst of house hunting and this morning my agent notified me of a property this is quite promising:  right price and location.  We have an appointment to see it today and if I like it, I will submit paperwork today.

I do not want to run the risk of running out of time and being late and I am touching base sooner rather than later.

Thank you for your considerstion.

Berri Wells

---

**Attoh, Prince A** <paattoh@umes.edu>                                   Thu, Sep 6, 2018 at 12:14 PM
To: Berri Wells <abettercoach@gmail.com>

Good Afternoon Berri


I am not going to grant you the requested extension. The Assignment is due Today.


Dr. Attoh

*Dr. Prince A. Attoh*

*Associate Professor and Director Organizational Leadership Ph.D program*

*Department of Social Sciences*

*University of Maryland Eastern Shore*

*1106 Spaulding Hall*

*Princess Anne, Maryland 21853*

*Tel. 410-651-8361 Fax 410-651-8418*

*Email: paattoh@umes.edu*

[Quoted text hidden]

WARNING: This message was sent from an external source. Please verify the source before clicking any links or opening any attachments. NEVER provide account credentials or sensitive data unless the source has been 100% verified as legitimate.

CONFIDENTIALITY NOTICE: This message may contain confidential information intended only for the use of the person named above and may contain communication protected by law. If you have received this message in error, you are hereby notified that any dissemination, distribution, copying or other use of this message may be prohibited and you are requested to delete and destroy all copies of the email, and to notify the sender immediately at his/her electronic mail.

**Berri Wells** <abettercoach@gmail.com>                        Thu, Sep 6, 2018 at 2:12 PM
To: "Attoh, Prince A" <paattoh@umes.edu>

Dr. Attoh - thank you for your consideration.

Berri
[Quoted text hidden]

 Gmail

**Berri Wells <abettercoach@gmail.com>**

## Blackboard
2 messages

**Berri Wells** <abettercoach@gmail.com>                          Thu, Sep 6, 2018 at 9:07 PM
To: pattoh@umes.edu

Sorry Dr. Attoh, I'm in BLackboard and can't get past entering your email address. I'm sure it's a simple fix.

In the meantime. I emailed my assignment to be safe.

Berri Wells

**Mail Delivery Subsystem** <mailer-daemon@googlemail.com>        Thu, Sep 6, 2018 at 9:08 PM
To: abettercoach@gmail.com



### Address not found

Your message wasn't delivered to **pattoh@umes.edu** because
the address couldn't be found, or is unable to receive mail.

The response was:

550 #5.1.0 Address rejected.

Final-Recipient: rfc822; pattoh@umes.edu
Action: failed
Status: 5.0.0
Remote-MTA: dns; smtp1.umes.edu. (131.118.96.26, the server for the domain umes.edu.)
Diagnostic-Code: smtp; 550 #5.1.0 Address rejected.
Last-Attempt-Date: Thu, 06 Sep 2018 21:08:05 -0700 (PDT)

---------- Forwarded message ----------
From: Berri Wells <abettercoach@gmail.com>
To: pattoh@umes.edu
Cc:
Bcc:
Date: Fri, 7 Sep 2018 00:07:52 -0400
Subject: Blackboard
Sorry Dr. Attoh, I'm in BLackboard and can't get past entering your email address. I'm sure it's a simple fix.

In the meantime. I emailed my assignment to be safe.

 Gmail

**Berri Wells <abettercoach@gmail.com>**

## PDF Of Organization Chart
3 messages

---

**Berri Wells** <abettercoach@gmail.com>                 Thu, Sep 6, 2018 at 8:53 PM
To: "Attoh, Prince A" <paattoh@umes.edu>

Organization Chart as PDF (just in case submission number one is a bit distorted or format changed)

--
Berri  A. Wells, MA
President, Turning Point Solutions
Founder, Coaches Corner
Leadership Training,  Job Search and Career Coach
www.turningpointsolutions.net
berriwells@turningpointsolutions.net
301-905-7160

---

 **Assignment Number One Org Chart v2.pdf**
50K

---

**Attoh, Prince A** <paattoh@umes.edu>                 Fri, Sep 7, 2018 at 10:06 AM
To: Berri Wells <abettercoach@gmail.com>

Hello Berri


I am in receipt


*Dr. Prince A.Attoh*

*Associate Professor and Director Organizational Leadership Ph.D program*

*Department of Social Sciences*

*University of Maryland Eastern Shore*

*1106 Spaulding Hall*

*Princess Anne, Maryland 21853*

*Tel. 410-651-8361 Fax 410-651-8418*

*Email: paattoh@umes.edu*

[Quoted text hidden]

WARNING: This message was sent from an external source. Please verify the source before clicking any links or opening any attachments. NEVER provide account credentials or sensitive data unless the source has been 100% verified as legitimate.

CONFIDENTIALITY NOTICE: This message may contain confidential information intended only for the use of the person named above and may contain communication protected by law. If you have received this message in error, you are hereby notified that any dissemination, distribution, copying or other use of this message may be prohibited and you are requested to delete and destroy all copies of the email, and to notify the sender immediately at his/her electronic mail.

**Berri Wells** <abettercoach@gmail.com>                          Fri, Sep 7, 2018 at 12:40 PM
To: "Attoh, Prince A" <paattoh@umes.edu>

Very good and thank you.
[Quoted text hidden]

 **Gmail**

**Berri Wells <abettercoach@gmail.com>**

## Syllabus Pages 8-10
2 messages

**Berri Wells** <abettercoach@gmail.com>
To: "Attoh, Prince A" <paattoh@umes.edu>

Sun, Sep 9, 2018 at 8:24 PM

Hello Dr. Attoh - quick question.

In the syllabus, beginning on page 8, "Some Topics" through page 10.

Is the list suggestions for the arguement paper?

All the best,

Berri

---

**Attoh, Prince A** <paattoh@umes.edu>
To: Berri Wells <abettercoach@gmail.com>

Tue, Sep 11, 2018 at 8:18 AM

Good morning Berri

No, the list is not for the Argument paper. Hope your day is going well.

Dr. Attoh

*Dr. Prince A.Attoh*

*Associate Professor and Director Organizational Leadership Ph.D program*

*Department of Social Sciences*

*University of Maryland Eastern Shore*

*1106 Spaulding Hall*

*Princess Anne, Maryland 21853*

*Tel. 410-651-8361 Fax 410-651-8418*

*Email:* paattoh@umes.edu

[Quoted text hidden]

---

**WARNING:** This message was sent from an external source. Please verify the source before clicking any links or opening any attachments. **NEVER** provide account credentials or sensitive data unless the source has been 100% verified as legitimate.

 Gmail                               **Berri Wells <abettercoach@gmail.com>**

## Assignment 1 Evaluation
2 messages

**Attoh, Prince A** <paattoh@umes.edu>                            Fri, Sep 14, 2018 at 2:09 PM
To: Berri Wells <abettercoach@gmail.com>

Berri

Attached, please find your Assignment 1 Part II Evaluation. Let's discuss further. You did not submit a Part II to this assignment

Dr. Attoh

*Dr. Prince A.Attoh*

*Associate Professor and Director Organizational Leadership Ph.D program*

*Department of Social Sciences*

*University of Maryland Eastern Shore*

*1106 Spaulding Hall*

*Princess Anne, Maryland 21853*

*Tel. 410-651-8361 Fax 410-651-8418*

*Email:* paattoh@umes.edu

**CONFIDENTIALITY NOTICE:** This message may contain confidential information intended only for the use of the person named above and may contain communication protected by law. If you have received this message in error, you are hereby notified that any dissemination, distribution, copying or other use of this message may be prohibited and you are requested to delete and destroy all copies of the email, and to notify the sender immediately at his/her electronic mail.

**2 attachments**

📄 **Berri's Org Chart Part I.docx**
   28K

📄 **Berri's Identification of Problem Rubric.doc**
   36K

**Berri Wells** <abettercoach@gmail.com>                                    Fri, Sep 14, 2018 at 2:47 PM
To: "Attoh, Prince A" <paattoh@umes.edu>

Hello Dr. Attoh - my mistake.  I thought I had emailed this to you.  Additionally, I had a hard copy and forgot to turn it in upon arriving to class.

[Quoted text hidden]

--
Berri  A. Wells, MA
President, Turning Point Solutions
Founder, Coaches Corner
Leadership Training,  Job Search and Career Coach
www.turningpointsolutions.net
berriwells@turningpointsolutions.net
301-905-7160

---

 **B. Wells Part II Problem Identification v3.docx**
43K

 **Gmail**

Berri Wells <abettercoach@gmail.com>

## B. Wells Reflection Paper
3 messages

**Berri Wells** <abettercoach@gmail.com>
To: "Attoh, Prince A" <paattoh@umes.edu>

Fri, Sep 14, 2018 at 8:54 PM

--
Berri  A. Wells, MA
President, Turning Point Solutions
Founder, Coaches Corner
Leadership Training,  Job Search and Career Coach
www.turningpointsolutions.net
berriwells@turningpointsolutions.net
301-905-7160

 **B. Wells Reflection Paper.docx**
42K

**Attoh, Prince A** <paattoh@umes.edu>
To: Berri Wells <abettercoach@gmail.com>

Sun, Sep 16, 2018 at 5:41 AM

Good morning Berri

I am in receipt.

*Dr. Prince A.Attoh*

*Associate Professor and Director Organizational Leadership Ph.D program*

*Department of Social Sciences*

*University of Maryland Eastern Shore*

*1106 Spaulding Hall*

*Princess Anne, Maryland 21853*

*Tel. 410-651-8361 Fax 410-651-8418*

*Email: paattoh@umes.edu*

[Quoted text hidden]

**WARNING:** This message was sent from an external source. Please verify the source before clicking any links or opening any attachments. **NEVER** provide account credentials or sensitive data unless the source has been 100% verified as legitimate.

**CONFIDENTIALITY NOTICE:** This message may contain confidential information intended only for the use of the person named above and may contain communication protected by law. If you have received this message in error, you are hereby notified that any dissemination, distribution, copying or other use of this message may be prohibited and you are requested to delete and destroy all copies of the email, and to notify the sender immediately at his/her electronic mail.

**Berri Wells** <abettercoach@gmail.com>                          Sun, Sep 16, 2018 at 2:46 PM
To: "Attoh, Prince A" <paattoh@umes.edu>

Very good and thank you.

I brought a hard copy to class with the intent of turning it in and it slipped my mind, "old school" for sure. Who brings printed homework to class?

All the best,

Berri

[Quoted text hidden]

 Gmail                                            **Berri Wells** <abettercoach@gmail.com>

## Ideas for ORLD 601
9 messages

**Berri Wells** <abettercoach@gmail.com>                                    Sat, Sep 15, 2018 at 5:58 PM
To: cwanderson01@outlook.com, "cwaples@chesapeake.edu" <cwaples@chesapeake.edu>, jamelle banks
<jamellebanks@hotmail.com>, Kirk Howie <jkirkhowie@gmail.com>, "Manolova, Aleksandra T" <atmanolova@umes.edu>,
"wiltssy.payero@perdue.com" <wiltssy.payero@perdue.com>, Haleigh LaChance <haleighlachance@gmail.com>, Beth
Howie <bethhowie98@gmail.com>, ahowie@talbotschools.org, "Michele L. Foster -DHS- Baltimore City"
<michele.foster@maryland.gov>

Greetings Comrades - please see attachment.

All the best,


Berri  A. Wells, MA
President, Turning Point Solutions
Founder, Coaches Corner
Leadership Training,  Job Search and Career Coach
www.turningpointsolutions.net
berriwells@turningpointsolutions.net
301-905-7160

 **Theories Matrix.docx**
      21K

**Kirk Howie** <jkirkhowie@gmail.com>                                    Sat, Sep 15, 2018 at 7:00 PM
To: Berri Wells <abettercoach@gmail.com>
Cc: Beth Howie <bethhowie98@gmail.com>, Haleigh LaChance <haleighlachance@gmail.com>, "Manolova, Aleksandra T"
<atmanolova@umes.edu>, "Michele L. Foster -DHS- Baltimore City" <michele.foster@maryland.gov>,
ahowie@talbotschools.org, cwanderson01@outlook.com, "cwaples@chesapeake.edu" <cwaples@chesapeake.edu>, jamelle
banks <jamellebanks@hotmail.com>, "wiltssy.payero@perdue.com" <wiltssy.payero@perdue.com>

Thank you! I sent you some resources to your umes address
[Quoted text hidden]

**Berri Wells** <abettercoach@gmail.com>                                    Sun, Sep 16, 2018 at 4:14 PM
To: Kirk Howie <jkirkhowie@gmail.com>

Hey Kirk - my pleasure!  The ideas had been rolling around in my head.  Just do it and check it off!!

Will review what you sent AND will begin using UMES email in earnest.
How about we talk tomorrow evening?
What time is good for you?
301-905-7160
Need your number.
Also, take a look at the attachment.  What do you think about using it for our handout?
All the best,
Berri

[Quoted text hidden]

--

[Quoted text hidden]

---

📄 **Handout.pub**
340K

---

**Kirk Howie** <jkirkhowie@gmail.com>                    Sun, Sep 16, 2018 at 4:16 PM
To: Berri Wells <abettercoach@gmail.com>

Will after 7 work?  410-463-2585
[Quoted text hidden]

---

**Berri Wells** <abettercoach@gmail.com>                    Sun, Sep 16, 2018 at 7:36 PM
To: Kirk Howie <jkirkhowie@gmail.com>

Yes, that'll work.
Talk with you tmrw.
[Quoted text hidden]

---

**Waples, Christle** <cwaples@chesapeake.edu>                    Mon, Sep 17, 2018 at 2:39 PM
To: Kirk Howie <jkirkhowie@gmail.com>, Berri Wells <abettercoach@gmail.com>
Cc: Beth Howie <bethhowie98@gmail.com>, Haleigh LaChance <haleighlachance@gmail.com>, "Manolova, Aleksandra T"
<atmanolova@umes.edu>, "Michele L. Foster -DHS- Baltimore City" <michele.foster@maryland.gov>,
"ahowie@talbotschools.org" <ahowie@talbotschools.org>, "cwanderson01@outlook.com" <cwanderson01@outlook.com>,
jamelle banks <jamellebanks@hotmail.com>, "wiltssy.payero@perdue.com" <wiltssy.payero@perdue.com>

I just found a really good series on youtube called the Organizational Communication Channel.  Great place to start.

[Quoted text hidden]

---

**Kirk Howie** <jkirkhowie@gmail.com>                    Mon, Sep 17, 2018 at 3:52 PM
To: "Waples, Christle" <cwaples@chesapeake.edu>
Cc: Berri Wells <abettercoach@gmail.com>, Beth Howie <bethhowie98@gmail.com>, Haleigh LaChance
<haleighlachance@gmail.com>, "Manolova, Aleksandra T" <atmanolova@umes.edu>, "Michele L. Foster -DHS- Baltimore
City" <michele.foster@maryland.gov>, ahowie@talbotschools.org, cwanderson01@outlook.com, jamelle banks
<jamellebanks@hotmail.com>, wiltssy.payero@perdue.com

Thanks
[Quoted text hidden]

---

**Berri Wells** <abettercoach@gmail.com>                    Mon, Sep 17, 2018 at 4:24 PM
To: cwaples@chesapeake.edu
Cc: Kirk Howie <jkirkhowie@gmail.com>, Beth Howie <bethhowie98@gmail.com>, Haleigh LaChance
<haleighlachance@gmail.com>, "Manolova, Aleksandra T" <atmanolova@umes.edu>, "Michele L. Foster -DHS- Baltimore
City" <michele.foster@maryland.gov>, ahowie@talbotschools.org, cwanderson01@outlook.com, jamelle banks
<jamellebanks@hotmail.com>, wiltssy.payero@perdue.com

Who knew?  Good looking out Christle.

On Mon, Sep 17, 2018 at 5:39 PM Waples, Christle <cwaples@chesapeake.edu> wrote:
[Quoted text hidden]

--

[Quoted text hidden]

**Kirk Howie** <jkirkhowie@gmail.com>                                Tue, Sep 18, 2018 at 4:30 PM
To: Berri Wells <abettercoach@gmail.com>

I like the handout if we can condense the material to main points or authors
[Quoted text hidden]

 Gmail

**Berri Wells <abettercoach@gmail.com>**

## Group Project Question on Org. Reform
1 message

**Berri Wells** <abettercoach@gmail.com>                    Wed, Sep 19, 2018 at 9:52 AM
To: Prince A Attoh <paattoh@umes.edu>, Kirk Howie <jkirkhowie@gmail.com>

Hello Dr. Attoh - hope you are having a great day.

Just left a voicemail and am emailing you if email is easier.

Want to make sure I'm clear on the topic for Group Project. I am not finding resources specifically related to "organizational reform movement"; neither in our texts or online. It could be argued that critics of the various theorists were reformists, but I don't want to assume.

The wording of the assignment is leading me to expect find several authors, writers and theorists. So far, this is not the case.

In looking at " Total Quality Management", related search terms of quality, quality assurance systems, quality standards, appear. Lean Six Sigma has keywords of operational excellence, process excellence and none of these terms specifically relate to organizational reform.

Following directions is a primary tenant of yours and I want to make sure that I am following directions by addressing the right topic.

Please advise.

Berri

 **Gmail**                                    Berri Wells <abettercoach@gmail.com>

## Reform Movements That I have Found
5 messages

---

**Berri Wells** <abettercoach@gmail.com>                    Wed, Sep 19, 2018 at 10:11 AM
To: Prince A Attoh <paattoh@umes.edu>, Kirk Howie <jkirkhowie@gmail.com>

Reform Movements that I found...

Industrialization
Education Reform - Horace Mann
Transcendentalist - Henry Thoreau
2nd Great Awakening- Charles Finney
The Temperance Movement
Prison Reform - Dorothea Dix

---

**Kirk Howie** <jkirkhowie@gmail.com>                       Wed, Sep 19, 2018 at 8:52 PM
To: Berri Wells <abettercoach@gmail.com>

Like what you added I touched up a few of mine talk tomorrow evening?
[Quoted text hidden]

---

**Berri Wells** <abettercoach@gmail.com>                    Thu, Sep 20, 2018 at 7:06 AM
To: Kirk Howie <jkirkhowie@gmail.com>

Very good.
Also, I have an idea of ways to engage audience throughout.  Let's discuss tonight.

I'm available after 7.  When is good for you?
Also, what did you think about getting a few artifacts from your school?  If possible, that'll be good.
[Quoted text hidden]

---

**Kirk Howie** <jkirkhowie@gmail.com>                       Thu, Sep 20, 2018 at 7:17 AM
To: Berri Wells <abettercoach@gmail.com>

Ok and I like both trying to determine what artifacts. Talk tonight. Like the formatting you did too
[Quoted text hidden]

---

**Berri Wells** <abettercoach@gmail.com>                    Thu, Sep 20, 2018 at 9:34 AM
To: Kirk Howie <jkirkhowie@gmail.com>

Sounds good!!

[Quoted text hidden]

 Gmail                                    Berri Wells <abettercoach@gmail.com>

## Screen Shot
4 messages

**Berri Wells** <abettercoach@gmail.com>                                    Fri, Sep 14, 2018 at 2:45 PM
To: pattoh@umes.edu

Dr. Attoh - please see the date and time stamp for Part II of the assignment:

B. Wells Part II Problem Identification 9/7/2018 12:40 PM
I had finished the paper before the deadline and I hope this will suffice as proof and that you will consider the paper as being on time.


**20180914_174116_001.jpg**
4530K

**Mail Delivery Subsystem** <mailer-daemon@googlemail.com>                                    Fri, Sep 14, 2018 at 2:46 PM
To: abettercoach@gmail.com

       ## Address not found

Your message wasn't delivered to **pattoh@umes.edu** because the address couldn't be found, or is unable to receive mail.

The response was:

550 #5.1.0 Address rejected.

Final-Recipient: rfc822; pattoh@umes.edu
Action: failed
Status: 5.0.0
Remote-MTA: dns; smtp1.umes.edu. (131.118.96.26, the server for the domain umes.edu.)
Diagnostic-Code: smtp; 550 #5.1.0 Address rejected.
Last-Attempt-Date: Fri, 14 Sep 2018 14:46:11 -0700 (PDT)

---------- Forwarded message ----------
From: Berri Wells <abettercoach@gmail.com>

New folder

| | Name | Date modified | Type |
|---|---|---|---|
| | APA  Networking and Marketing | 9/6/2018 7:41 PM | Microsoft Word |
| | APA Faculty Development | 9/6/2018 7:45 PM | Microsoft Word |
| | APA Networking With Ease | 9/6/2018 7:42 PM | Microsoft Word |
| | B. Wells Part II Problem Identification v2 | 9/7/2018 5:04 AM | Microsoft Word |
| | B. Wells Part II Problem Identification v3 | 9/7/2018 12:40 PM | Microsoft Word |
| | B. Wells Part II Problem Identification | 9/6/2018 11:33 PM | Microsoft Word |
| | Organization Chart | 9/3/2018 9:41 PM | Microsoft Word |
| | Part One Written Assignment and Org... | 9/6/2018 11:39 PM | Microsoft Word |
| | Resources and References | 9/7/2018 12:44 PM | Microsoft Word |

sk (C:)

TANT (E:)

To: pattoh@umes.edu
Cc:
Bcc:
Date: Fri, 14 Sep 2018 17:45:55 -0400
Subject: Screen Shot
Dr. Attoh - please see the date and time stamp for Part II of the assignment:

B. Wells Part II Problem Identification 9/7/2018 12:40 PM
I had finished the paper before the deadline and I hope this will suffice as proof and that you will consider the paper as being on time.

----- Message truncated -----

---

**Berri Wells** <abettercoach@gmail.com>                           Sat, Sep 15, 2018 at 6:33 AM
To: pattoh@umes.edu

Good morning Dr. Attoh, I sent this yesterday afternoon and it bounced back.

Berri
[Quoted text hidden]

     **20180914_174116_001.jpg**
4530K

---

**Mail Delivery Subsystem** <mailer-daemon@googlemail.com>        Sat, Sep 15, 2018 at 6:33 AM
To: abettercoach@gmail.com

[Quoted text hidden]

Final-Recipient: rfc822; pattoh@umes.edu
Action: failed
Status: 5.0.0
Remote-MTA: dns; smtp1.umes.edu. (131.118.96.26, the server for the domain umes.edu.)
Diagnostic-Code: smtp; 550 #5.1.0 Address rejected.
Last-Attempt-Date: Sat, 15 Sep 2018 06:33:52 -0700 (PDT)

---------- Forwarded message ----------
From: Berri Wells <abettercoach@gmail.com>
To: pattoh@umes.edu
Cc:
Bcc:
Date: Sat, 15 Sep 2018 09:33:36 -0400
Subject: Fwd: Screen Shot
Good morning Dr. Attoh, I sent this yesterday afternoon and it bounced back.

Berri

---------- Forwarded message ---------
From: **Berri Wells** <abettercoach@gmail.com>
Date: Fri, Sep 14, 2018, 5:45 PM
Subject: Screen Shot
To: <pattoh@umes.edu>

Dr. Attoh - please see the date and time stamp for Part II of the assignment:

B. Wells Part II Problem Identification 9/7/2018 12:40 PM
I had finished the paper before the deadline and I hope this will suffice as proof and that you will consider the paper as being on time.

----- Message truncated -----

 Gmail

**Berri Wells <abettercoach@gmail.com>**

## B. Wells Crtique Paper
1 message

**Berri Wells** <abettercoach@gmail.com>
To: "Attoh, Prince A" <paattoh@umes.edu>

Fri, Sep 21, 2018 at 8:57 PM

Thanks Dr. Attoh.

--
Berri A. Wells, MA
President, Turning Point Solutions
Founder, Coaches Corner
Leadership Training, Job Search and Career Coach
www.turningpointsolutions.net
berriwells@turningpointsolutions.net
301-905-7160

 **Taylorism Critique.docx**
18K

 **Gmail**

**Berri Wells <abettercoach@gmail.com>**

## 601 Reflection Evaluation
1 message

Attoh, Prince A <paattoh@umes.edu>                          Mon, Sep 24, 2018 at 1:51 PM
To: Berri Wells <abettercoach@gmail.com>

Good Afternoon Berri


Attached please find your Reflection paper evaluation


*Dr. Prince A.Attoh*

*Associate Professor and Director Organizational Leadership Ph.D program*

*Department of Social Sciences*

*University of Maryland Eastern Shore*

*1106 Spaulding Hall*

*Princess Anne, Maryland 21853*

*Tel. 410-651-8361 Fax 410-651-8418*

*Email:* paattoh@umes.edu


**CONFIDENTIALITY NOTICE:** This message may contain confidential information intended only for the use of the person named above and may contain communication protected by law. If you have received this message in error, you are hereby notified that any dissemination, distribution, copying or other use of this message may be prohibited and you are requested to delete and destroy all copies of the email, and to notify the sender immediately at his/her electronic mail.

---

**2 attachments**

 **Berri's Reflection Paper 1.docx**
43K

**Berri's Reflection paper.docx**
16K

REFECTION PAPER RUBRIC

| Category | TAGET (2) | ACCEPTABLE (1) | UN-ACCEPTABLE (0) |
|---|---|---|---|
| **Introduction:** Why is studying organizations important? | The Introduction is engaging and shows a strong direction responding to the need for studying organization and the importance. The student's discussion is clear and succinct based on the article reviewed | The Introduction somehow shows a direction responding to the need for studying organization and the importance. The student's discussion is adequate based on the articles reviewed. | The Introduction is not engaging and doesn't show a strong direction of responding to the need for studying organization and the importance. The student's discussion is not clear based on the article reviewed |
| **Similarities:** What are some of the similarities between the articles regarding organizational theory? | Has a high degree of clarity, depth, coherency and completeness of the similarities The discussion is framed within the context of the question and presents a highly accurate and complete treatment of the relevant issues related to organizational theory. | Has some clarity, depth, coherency and Completeness of the similarities. The discussions related to the question and presents an accurate and complete understanding of the relevant issues. | Lacks consistency, coherence and Completeness The discussion is not related to the question or the issues of the question are not elaborated |
| **Differences:** What are some of the differences between the articles regarding organizational theory? | Has a high degree of clarity, depth, coherency and completeness of the difference The discussion is framed within the context of the question and presents a highly accurate and complete treatment of the relevant issues related to organizational theory. | Has some clarity, depth, coherency and Completeness of the differences. The discussions related to the question and presents an accurate and complete understanding of the relevant issues. | Lacks consistency, coherence and Completeness The discussion is not related to the question or the issues of the question are not elaborated |
| **Application:** How do the articles reflect your organizational experience? | Response is well developed, effectively supported and appropriate for discussing the application and how the articles reflect the student's organizational experience, | Response is somewhat developed, supported and appropriate for discussing the application and how the articles reflect the student's organizational experience, | Response is poorly developed with supporting details that are absent or vague about discussing the application and how the articles reflect the student's organizational experience, |
| **Conclusions:** A critical evaluation answering the question: How do these articles inform (enhance) our understanding of organizational leadership? | High degree of completeness in the understanding of how the articles inform them of organizational leadership | Has some clarity and understanding of how the articles inform them of organizational leadership | Does not have clarity, and understanding of how the articles inform them of organizational leadership |
| **Organization, Citations, and Reference Page** | Writing is clearly organized around a central theme using the appropriate sentence | Writing is somewhat organized using some appropriate sentence structures and grammar. | Writing is not clearly organized around a central theme and doesn't use appropriate sentence |

| This section is evaluated but not graded | structures and grammar. Each paragraph is clear and relates to the others in a well-planned framework presenting responses to the inquiries. APA form/style is appropriately used with citations and a Reference page | Each paragraph is clear and relates to the others. APA form/style is appropriately used with citations and a Reference page | structures and grammar. Each paragraph is not clearly related to the others in a well-planned framework presenting responses to the inquiries. APA form/style is not appropriately used with citations and a Reference page. |

**Student's Name:** Berri       **Score:** 8/10



≡ **M** Gmail    🔍   label:umes      ✕   ▾

Compose

| ▬ **T. Ellis** | 13 |
| --- | --- |
| ▬ Tickets | 1 |
| ▬ Transcripts | |
| ▬ Travel | |
| ▬ **UMES** | |
|   ▬ 601 | |
| ▬ UMES Appeal | |
| ▬ UMES Attoh | |
| ▬ UMUC | |
|   ▬ DISA | |

Berri      +

## Harris Letter - Research Assistance    UMES ✕

**Berri Wells** <abettercoach@gmail.com>
to Supreme

-- Hello Dr. Harris. As a follow up, I am sending information that I believe will be helpful in your research.

**High Level Sum**

For 601, Dr. Attoh with-held my grades until October 4 when he emailed me and informed me that I had failed the course. As a resu receiving my grades on Oct., 4, I was 100% unaware that:

    a. According to his records, I had missed the very first assignment of the course and received 0/10. The assignment was d assignment.

    b. I received a failing grade 5/10 for a paper that was due and submitted September 21. Again, he with-held the grade unt failing grade are immediately dismissed from the Program and withholding my grades ensured my dismissal. Dr. Attoh with- quickly, were for two, in-class presentations. For those assignments, I received my grades the same day.

The last assignment, a ten page paper was due, Friday, September 28 and I missed the deadline. On Tuesday, October 2, Dr. Attoh i the week. At that time, I was renting and my lease expired in two days and I had not secured housing. I had found a home but the c family. On September 7, the day the first assignment was due, I emailed him that afternoon and asked if I could have a nine hour ex required paperwork would likely take a few hours to submit and I did not want to run the risk of being late with submitting my first a was a legitimate necessity. He declined my request and informed me that my paper was due at midnight. No extension. Not to be the requirement, turned in the paper and earned a perfect score, 10/10.

Considering his initial refusal to grant me a nine hour extension for the assignment that was due on September 7, I did not bother to October 3 when he emailed to inquire. I explained my intention and he did not object. To my dismay, twenty four hours later, he ma had submitted the grades. At that point, I still had not received a listing of all my grades, as he did not provide the list to me until th

To further his objective, upon receiving proof that the missing assignment due Sept. 7 had in fact been turned in on time and a rebu follow it, I included a copy of it, showing that I had followed the format exactly as he has prescribed), Dr. Attoh refused to update my

On Memorial Day 2019, Jason informed me that my grade had been changed to a "W". This was peculiar and alarming. Although Dr grievance. Additionally, in preparation for 602, I informed Dr. Attoh that I would be in attendance and I submitted the first homewor withdraw.

In summary, I did not withdraw. Dr. Attoh embarrassed me, harassed me by dismissing me from the class. His actions were unneces caused me great harm and based on his behavior: I lost a full year of studies, I am facing $9,000 student loan debt for a taking a sinç of this is right and I am hoping that I can count on you to advocate for what is fair and what is right.

Lastly, please see the attachment that includes emails between Dr. Attoh and myself as well as an illuminating chart that shows his ra

Thank you for your consideration.

Berri Wells

Berri A. Wells, MA
President, Turning Point Solutions
Founder, Coaches Corner
Leadership Training, Job Search and Career Coach

Make a call

Also try our mobile apps for [Android](#) and [iOS](#)

 Gmail                                    **Berri Wells <abettercoach@gmail.com>**

---

## ORLD 602 Assignment # 1
1 message

---

**Attoh, Prince A** <paattoh@umes.edu>                          Sat, Sep 29, 2018 at 6:00 AM
To: "Manolova, Aleksandra T" <atmanolova@umes.edu>, "Howie, Anna" <ahowie@talbotschools.org>, Berri Wells
<abettercoach@gmail.com>, "Anderson, Christopher W" <cwanderson@umes.edu>, "Waples, Christle"
<cwaples@chesapeake.edu>, "LaChance, Haleigh N" <hnlachance@umes.edu>, Kirk Howie <jkirkhowie@gmail.com>,
"Michele L. Foster -DHS- Baltimore City" <michele.foster@maryland.gov>, "Payero, Wiltssy" <wpayero@umes.edu>, Samuel
Akinribade <sakinribade@gmail.com>
Cc: "Luning, Celeste K" <ckluning@umes.edu>, "Howie, Anna G" <aghowie@umes.edu>, "Wells, Berri A"
<bawells@umes.edu>


Good Morning All.


WELCOME TO ORLD 602. Attached, please find Assignment #1 and the scoring rubric. Please review the assignment
instructions carefully before embarking on the assignment. If you need additional clarity or information, please let me
know. **The Due Date for this assignment is Oct. 6th. Please come to Residence # 1 (Oct. 5th-7th) prepared to
present your paper.**


Dr. Attoh

*Dr. Prince A. Attoh*

*Associate Professor and Director Organizational Leadership Ph.D program*

*Department of Social Sciences*

*University of Maryland Eastern Shore*

*1106 Spaulding Hall*

*Princess Anne, Maryland 21853*

*Tel. 410-651-8361 Fax 410-651-8418*

*Email:* paattoh@umes.edu

**CONFIDENTIALITY NOTICE:** This message may contain confidential information intended only for the use of the
person named above and may contain communication protected by law. If you have received this message in
error, you are hereby notified that any dissemination, distribution, copying or other use of this message
may be prohibited and you are requested to delete and destroy all copies of the email, and to notify the
sender immediately at his/her electronic mail.

---

**2 attachments**

 **ORLD 602-1st Assignments sheet.doc**
    30K

 **Rubric Assignment # 1 ORLD 602.doc**

34K

 Gmail

**Berri Wells <abettercoach@gmail.com>**

## FW: Article Critique Format
1 message

**Wells, Berri A** <WellsBA1@state.gov>
To: "paattoh@umes.edu" <paattoh@umes.edu>
Cc: "abettercoach@gmail.com" <abettercoach@gmail.com>

Tue, Oct 2, 2018 at 1:14 PM

**From:** Wells, Berri A
**Sent:** Tuesday, October 2, 2018 12:36 PM
**To:** 'paatoh@umes.edu' <paatoh@umes.edu>
**Subject:** Article Critique Format

Hello Dr. Attoh – hope you are well!

Thank you for your feedback on the ciritique that I provided as well as, an opportunity to discuss.

I am flexbile regarding meeting place, time and location. We can meet in person this weekend or over the next few days via phone or zoom. Let me know your preference and availability.

Needless to say, your coments got my attention. Knowing that you place a premium on following directions, I reflected on the instructions and guidelines that I followed and wondered about the source of the disconnect between what you were expecting and what I provided. Please see the attachment as this is what I used to guide my content.

Bottom line, knowing how to write an empirical article is part of my development and once I am clear, I will re-submit.

All the best,

Berri

📄 **SKM_C25818100212010.pdf**
57K

**Additional format for writing your article critique**

**Journal:**    Full name of journal, volume number, pages

**Date:**    Year of publication

**Author(s):**    Last Name, First Name, Middle Initial; Last Name, First Name, Middle Initial; etc

### Purpose/: Abstract

In no more than 2 or 3 sentences, state why the study is being done. What is the reason behind the study? What were the results and findings?

### Hypothesis and Research Question:

In no more than 2 or 3 sentences, what do the authors expect to find? Depending on the type of study, a hypothesis may not be stated.

### Method/Type of Study

In 3-5 sentences, how was the study done? Number of participants, types of participants, procedures used, tool/equipment/tests used, databases used. What type of study (Quantitative or Qualitative: – cross sectional, literature review, meta-analyses, experimental, longitudinal, etc? Does the population that is tested compare to your population of patients in your community?

### Findings

In 5-7 sentences, what were the major findings – these are usually presented in the results section of the article, but sometimes are summarized quite neatly in the discussion section.

### Conclusions

Bearing in mind the hypothesis and purpose, what are the major points that can summarize the study? What is the important information that you as the reader will take away with you? What is the significance of the issues that is the focus of the article? What conclusion can you draw from this work? How does it contribute to your understanding of the field of Educational Leadership? What are the implications? What is its relevance?

### Limitations

Shortcomings of the study – what could have been done to make the study stronger (e.g., longer study interval, more subjects, different tools, etc.)1-3 points. Some articles will have a limitations section while others will not - for the latter, try to think about 1 or 2 things that could have been done to make the study better.

### Summary

Provide a critical evaluation of the central ideas of the article. Provide an analysis of the implications of the content read to the particular course, study or field of interest. Would this research topic change your current practice? If yes, why? If no, why not.

*Explanation of my housing emergency.*

**From:** Attoh, Prince A <paattoh@umes.edu>
**Sent:** Tuesday, October 2, 2018 5:30 PM
**To:** Wells, Berri A <WellsBA1@state.gov>
**Subject:** RE: Article Critique Format

Hello Berri

And yes, we can further discuss the critique evaluation. However, in my last email, I was referring to the last assignment; the Argument paper. I didn't get one from you. Did you submit one. I am currently grading papers and cannot find that paper. I will continue to look.

*Dr. Prince A. Attoh*
*Associate Professor and Director Organizational Leadership Ph.D program*
*Department of Social Sciences*
*University of Maryland Eastern Shore*
*1106 Spaulding Hall*
*Princess Anne, Maryland 21853*
cess {Anne, {Maryland 21853
;T/eL 410-651836.1 fax 410-651-8418
"Email? paatto/if@umes.ediu

**From:** Wells, Berri A [mailto:WellsBA1@state. ov]
**Sent:** Tuesday, October 02, 2018 4:14 PM
**To:** Attoh, Prince A < aattoh umes.edu>
**Cc:** abettercoach mailgcom
**Subject:** FW: Article Critique Format

**From:** Wells, Berri A
**Sent:** Tuesday, October 2, 2018 12:36 PM
**To:** paatoh@umes.edu' <paatoh umes.edu> **Subject:**
Article Critique Format

Hello Dr. Attoh — hope you are well!
Thank you for your feedback on the ciritique that I provided as well as, an opportunity to discuss.

## Wells, Berri A

**From:** Attoh, Prince A <paattoh@umes.edu>
**Sent:** Tuesday, October 2, 2018 5:30 PM
**To:** Wells, Berri A
**Subject:** RE: Article Critique Format

Hello Berri



And yes, we can further discuss the critique evaluation. However, in my last email, I was referring to the last assignment; the Argument paper. I didn't get one from you. Did you submit one. I am currently grading papers and cannot find that paper. I will continue to look.

*Dr. Prince A.Attoh*
*Associate Professor and Director Organizational Leadership Ph.D program*
*Department of Social Sciences*
*University of Maryland Eastern Shore*
*1106 Spaulding Hall*
*Princess Anne, Maryland 21853*
*Tel. 410-651-8361 Fax 410-651-8418*
*Email: paattoh@umes.edu*

**From:** Wells, Berri A [mailto:WellsBA1@state.gov]
**Sent:** Tuesday, October 02, 2018 4:14 PM
**To:** Attoh, Prince A <paattoh@umes.edu>
**Cc:** abettercoach@gmail.com
**Subject:** FW: Article Critique Format

**From:** Wells, Berri A
**Sent:** Tuesday, October 2, 2018 12:36 PM
**To:** 'paatoh@umes.edu' <paatoh@umes.edu>
**Subject:** Article Critique Format

Hello Dr. Attoh – hope you are well!

Thank you for your feedback on the ciritique that I provided as well as, an opportunity to discuss. *The opportunity did not materialize as Dr. submitted the grades the very next day, before we had a chance to discuss.*
I am flexible regarding meeting place, time and location. We can meet in person this weekend or over the next few days via phone or zoom. Let me know your preference and availability.
Needless to say, your coments got my attention. Knowing that you place a premium on following directions, I reflected on the instructions and guidelines that I followed and wondered about the source of the disconnect between what you were expecting and what I provided. Please see the attachment as this is what I used to guide my content.
Bottom line, knowing how to write an empirical article is part of my development and once I am clear, I will re-submit.

All the best,

Berri

1

Needless to say, your comments got my attention. Knowing that you place a premium on following directions, I reflected on the instructions and guidelines that I followed and wondered about the source of the disconnect between what you were expecting and what I provided. Please see the attachment as this is what I used to guide my content.

Bottom line, knowing how to write an empirical article is part of my development and once I am clear, I will re-submit.

All the best,

Berri

## Wells, Berri A

| | |
|---|---|
| From: | Wells, Berri A |
| Sent: | Wednesday, October 3, 2018 2:16 PM |
| To: | [1]Attoh, Prince A[1] |
| Subject: | RE: Article Critique Format |

Hello Dr. Attoh thank you for asking. I was not able to complete the paper and I am working on it now. The rental that I decided on, fell through and I had to find another property, which I did. Having to shift gears on such short notice was a stressful distraction. I was going to touch base but decided against it and figured I would just turn it in.

  **Gmail**                         **Berri Wells <abettercoach@gmail.com>**

## ORLD 601 Evaluation
1 message

**Attoh, Prince A** <paattoh@umes.edu>                    Wed, Oct 3, 2018 at 8:58 AM
To: Berri Wells <abettercoach@gmail.com>

Good morning Berri

Will you please give me a call at your earliest convenience to discuss your 601 evaluation. It is curial that you call me today.

Dr. Attoh

*Dr. Prince A. Attoh*

*Associate Professor and Director Organizational Leadership Ph.D program*

*Department of Social Sciences*

*University of Maryland Eastern Shore*

*1106 Spaulding Hall*

*Princess Anne, Maryland 21853*

*Tel. 410-651-8361 Fax 410-651-8418*

*Email:* paattoh@umes.edu

**CONFIDENTIALITY NOTICE:** This message may contain confidential information intended only for the use of the person named above and may contain communication protected by law. If you have received this message in error, you are hereby notified that any dissemination, distribution, copying or other use of this message may be prohibited and you are requested to delete and destroy all copies of the email, and to notify the sender immediately at his/her electronic mail.



---

# ORLD 601 Evaluation
1 message

---

Attoh, Prince A <paattoh@umes.edu>
To: Berri Wells <abettercoach@gmail.com>                    wed, Oct 3, 2018 at 11 :58 AM

Good morning Berri


Will you please give me a call at your earliest convenience to discuss your 601 evaluation. It is curial that you call me today.


Dr. Attoh

Dr. Prince Attoh

Associate "Professor and Director Organizational Leadership "Ph.D program

Department of Social Sciences

"University of Maryland Eastern Shore

1106 Spaulding fffaCC

Princess Anne, filaryCand21853

Tec 410-651-8361 fax 410-651-8418
"Email: paattoh@umessedu

CONFIDENTIALITY NOTICE: This message may contain confidential information intended only for the use of the person named above and may contain communication protected by law. If you have received this message in error, you are hereby notified that any dissemination, distribution, copying or other use of this message may be prohibited and you are requested to delete and destroy all copies of the email, and to notify the sender immediately at his/her electronic mail.

| | |
|---|---|
| **From:** | Wells, Berri A |
| **Sent:** | Wednesday, October 3, 2018 2:16 PM |
| **To:** | 'Attoh, Prince A' |
| **Subject:** | RE: Article Critique Format |



Hello Dr. Attoh - thank you for asking. I was not able to complete the paper and I am working on it now. The rental that I decided on, fell through and I had to find another property, which I did. Having to shift gears on such short notice was a stressful distraction. I was going to touch base but decided against it and figured I would just turn it in.

*Explanation of my housing emergency.*

**From:** Attoh, Prince A <paattoh@umes.edu>
**Sent:** Tuesday, October 2, 2018 5:30 PM
**To:** Wells, Berri A <WellsBA1@state.gov>
**Subject:** RE: Article Critique Format

Hello Berri

And yes, we can further discuss the critique evaluation. However, in my last email, I was referring to the last assignment; the Argument paper. I didn't get one from you. Did you submit one. I am currently grading papers and cannot find that paper. I will continue to look.

*Dr. Prince A. Attoh*
*Associate Professor and Director Organizational Leadership Ph.D program*
*Department of Social Sciences*
*University of Maryland Eastern Shore*
*1106 Spaulding Hall*
*Princess Anne, Maryland 21853*
*Tel. 410-651-8361 Fax 410-651-8418*
*Email: paattoh@umes.edu*

**From:** Wells, Berri A [mailto:WellsBA1@state.gov]
**Sent:** Tuesday, October 02, 2018 4:14 PM
**To:** Attoh, Prince A <paattoh@umes.edu>
**Cc:** abettercoach@gmail.com
**Subject:** FW: Article Critique Format

**From:** Wells, Berri A
**Sent:** Tuesday, October 2, 2018 12:36 PM
**To:** 'paatoh@umes.edu' <paatoh@umes.edu>
**Subject:** Article Critique Format

Hello Dr. Attoh – hope you are well!
Thank you for your feedback on the ciritique that I provided as well as, an opportunity to discuss.

1

| | |
|---|---|
| **From:** | Attoh, Prince A <paattoh@umes.edu> |
| **Sent:** | Wednesday, October 3, 2018 2:58 PM |
| **To:** | Wells, Berri A |
| **Subject:** | RE: Article Critique Format |

*On October 2 ₹ 3rd, Dr. Attoh did not request a phone call.*

Hello Berri

④ Please do not submit the paper. I have already calculated grades for 601. That is why I had asked you to call me. If you are available, can you call me now? I am in my office. We need to discuss what happens next after your 601 evaluation.

Dr. Attoh

*In Email #1, I responded to his invitation to discuss,*
*Date and Time: 10/2 @ 12:36*

Dr. Prince A.Attoh
Associate Professor and Director Organizational Leadership Ph.D program
Department of Social Sciences
University of Maryland Eastern Shore
1106 Spaulding Hall
Princess Anne, Maryland 21853
Tel. 410-651-8361 Fax 410-651-8418
Email: paattoh@umes.edu

*In Email #4, 24 hours, the grades had been calculated and submitted. We were in the process of determining a date and time to discuss. In the midst of that process, Dr. Attoh submitted the grades. Not sure what happened.*

**From:** Wells, Berri A [mailto:WellsBA1@state.gov]
**Sent:** Wednesday, October 03, 2018 2:16 PM
**To:** Attoh, Prince A <paattoh@umes.edu>
**Subject:** RE: Article Critique Format

Hello Dr. Attoh - thank you for asking. I was not able to complete the paper and I am working on it now. The rental that I decided on, fell through and I had to find another property, which I did. Having to shift gears on such short notice was a stressful distraction. I was going to touch base but decided against it and figured I would just turn it in.

**From:** Attoh, Prince A <paattoh@umes.edu>
**Sent:** Tuesday, October 2, 2018 5:30 PM
**To:** Wells, Berri A <WellsBA1@state.gov>
**Subject:** RE: Article Critique Format

Hello Berri

And yes, we can further discuss the critique evaluation. However, in my last email, I was referring to the last assignment; the Argument paper. I didn't get one from you. Did you submit one. I am currently grading papers and cannot find that paper. I will continue to look.

Dr. Prince A.Attoh
Associate Professor and Director Organizational Leadership Ph.D program
Department of Social Sciences
University of Maryland Eastern Shore



## (no subject)
1 message

**Berri Wells** <abettercoach@gmail.com>                                                    Thu, Oct 4, 2018 at 3:43 PM
To: Supreme GRAND Bishop Cofield <supremegrandbishop@gmail.com>

Good morning Berri

Attached, please find your Final Exam evaluation. Up to date, you should have received all of the other evaluations for 601. If you want me to resend any of the previous evaluations, please let me know. Below are your points for each of the assignment and the total grade for the course.

1. Assignment # 1 Organization Chart Presentation 5/5
2. Identification of the Problem: (Did not submit this assignment: 0/10
3. Reflection Paper: 8/10
4. Article Critique: Selected an inappropriate empirical article: 5/10
5. Group Presentation 19/20
6. Argument Paper (Did not submit) 0/20
7. Final Exam 21/25

**Total 601 Final Grade: 58/100 = F**

**According to the ORLD Retention Policy found in the Graduate Handbook (pg. 183)**

### "A student who receives a final course grade of "F" at any time will be immediately dismissed from the program".

Thus, the reason, I had sent you the email yesterday about dropping ORLD 602 and 603. In order to get a re-fund for those courses, you have to drop the course before its start date. ORLD 602 start date is Friday, 10/5th. Please go to the Registrar's site to retrieve the Drop form. After completing the form, please send it directly to the Registrar's Office. The Graduate Studies Office will follow up with a formal Dismissal Letter. If additional information is needed, please let me know.

--
Berri A. Wells, MA
President, Turning Point Solutions
Founder, Coaches Corner
Leadership Training, Job Search and Career Coach
www.turningpointsolutions.net
berriwells@turningpointsolutions.net
301-905-7160

## Final Exam Evaluation and Grade Calculation

5 messages

Attoh, Prince A <paattoh@umes.edu>
To: Berri Wells <abettercoach@gmail.com>
Cc: "Harris, Lakeisha L"          "Duffy, Cheryl L." <clduffy@umes.edu>

Thu, Oct 4, 2018 at 11:05 AM

Good morning Berri

Attached, please find your Final Exam evaluation. Up to date, you should have received all of the other evaluations for 601. If you want me to resend any of the previous evaluations, please let me know. Below are your points for each of the assignment and the total grade for the course.

1. Assignment # 1 Organization Chart Presentation 515
2. Identification of the Problem: (Did not submit this assignment:
3. Reflection Paper: 8/10
4. Article Critique: Selected an inappropriate empirical article: 5/10
5. Group Presentation 19/20
6. Argument Paper (Did not submit) 0/20
7. Final Exam 21/25

Total 601 Final Grade: 58/100 = F

According to the ORLD Retention Policy found in the Graduate Handbook (pg. 183)

"A student who receives a final course grade of "F" at any time will be immediately dismissed from the program".

Thus, the reason, I had sent you the email yesterday about dropping ORLD 602 and 603. In order to get a re-fund for those courses, you have to drop the course before its start date. ORLD 602 start date is Friday, 1015th. Please go to the Registrar's site to retrieve the Drop form. After completing the form, please send it directly to the Registrars Office The Graduate Studies Office will follow up with a formal Dismissal Letter. If additional information is needed, please let me know.

Dr. Attoh

Dr. Prince A.Attofi

Associate Professor and Director Organizational Leadership Ph.D program

Department of Social Sciences

university of Maryland Eastern Shore

1106 Spaulding 3-faLT

'Princess Anne, *Maryland21853

Tec 410-651-8361 fax 410-651-8418

'Emai G paattoh@umes.edu

CONFIDENTIX..ITY NOTICE : This message may contain confidential information intended only for the use of the person named above and may contain communication protected by law. If you have received this message in error, you are hereby notified that any dissemination, distribution, copying or other use of this message may be prohibited and you are requested to delete and destroy all copies of the email, and to notify the sender irrumediately at his/her electronic mail.

2 attachments
   Berri's Final Exam.docx

   Berri's Final Exam rubric.doc

 **Gmail**                    **Supreme GRAND Bishop Cofield <supremegrandbishop@gmail.com>**

## Fwd: Final Exam Evaluation and Grade Calculation
1 message

**Berri Wells** <abettercoach@gmail.com>                    Thu, Oct 4, 2018 at 3:44 PM
To: Supreme GRAND Bishop Cofield <supremegrandbishop@gmail.com>

Dr. Attoh - I have spoken to financial aid, the bursar and student accounts and am receiving conflicting information. According to the Bursar's office, you/the department should cancel my courses. I am not voluntarily leaving the program and as such, you should initiate the action.

When we spoke on yesterday, it was the first that I had heard that I was failing your course and that I had, "several missing assignments". I will send a screen shot of the emails that we exchanged.

Item Number 4 - In an email on Tuesday, you stated that I did not follow the rubric. In response to your comment, I provided you with the template and outline that you provided for the assignment. Today there was no mention of me not following the rubric and the reason that you gave had to do the article that I chose for the assignment; the article was inappropriate.    The inappropriate selection cost me half of the possible points as your comments on my paper are positive and you complimented me and stated the paper was well written. The fact that the type and kind of the article represented half of the possible points, knowing the characteristics of an empirical article was essential. At no time in class, in the materials you provided, our textbooks, or in the Blackboard were examples, samples or guidelines given on the characteristics of an empirical article. The article that I selected was from an academic journal, it was directly related to one of the theorists that we discussed in class and I thought the article was sufficient. I failed an assignment not because I did not grasp the content, not because I plagiarized but as the result of not picking a specific kind of article.

Item Number 6 - yes you are correct, I did not turn this assignment in on time. I was working on it and you told me to not to submit it as the grades had already been submitted.

In summary, I feel wronged. Hearing from you on yesterday that I was failing was a shock. I attend class, I participate. I think part of the problem is I did not know how I was progressing because I received my grades late in the process and had no idea that I was failing. This should not have been the case.

Thank you for providing the grades for each of my assignments. Unless I overlooked something, today was the first time that I saw all of my grades including the grade for my final, the grade of zero of the Problem Identification Paper and the grade of 5/10 for the reflection paper. Three assignments covers close to half of the course requirements. Not knowing my grades hurt me as I was unaware of the situation.

In response to you comments on each of my assignments. Thank you for providing feedback. Again, your comments came late, very late at the end of the semester and after the fact. Which meant, I was denied the opportunity to improve.

Item number 2 - I submitted this. Please see attachment number one. We exchanged emails about this assignment and I sent it to

    1.   Assignment # 1 Organization Chart Presentation 5/5
    2.   Identification of the Problem: (Did not submit this assignment: 0/10 -
    3.   Reflection Paper: 8/10

4.   Article Critique: Selected an inappropriate empirical article: 5/10
5.   Group Presentation 19/20
6.   Argument Paper (Did not submit) 0/20
7.   Final Exam 21/25

On Thu, Oct 4, 2018 at 11:08 AM Attoh, Prince A <paattoh@umes.edu> wrote:

Good morning Berri

Attached, please find your Final Exam evaluation. Up to date, you should have received all of the other evaluations for 601. If you want me to resend any of the previous evaluations, please let me know. Below are your points for each of the assignment and the total grade for the course.

1.   Assignment # 1 Organization Chart Presentation 5/5

2.   Identification of the Problem: (Did not submit this assignment: 0/10

3.   Reflection Paper: 8/10

4.   Article Critique: Selected an inappropriate empirical article: 5/10

5.   Group Presentation 19/20

6.   Argument Paper (Did not submit) 0/20

7.   Final Exam 21/25

**Total 601 Final Grade: 58/100 = F**

**According to the ORLD Retention Policy found in the Graduate Handbook (pg. 183)**

## "A student who receives a final course grade of "F" at any time will be immediately dismissed from the program".

Thus, the reason, I had sent you the email yesterday about dropping ORLD 602 and 603. In order to get a re-fund for those courses, you have to drop the course before its start date. ORLD 602 start date is Friday, 10/5[th]. Please go to the Registrar's site to retrieve the Drop form. After completing the form, please send it directly to the Registrar's Office. The Graduate Studies Office will follow up with a formal Dismissal Letter. If additional information is needed, please let me know.

Dr. Attoh

*Dr. Prince A.Attoh*

*Associate Professor and Director Organizational Leadership Ph.D program*

*Department of Social Sciences*

*University of Maryland Eastern Shore*

*1106 Spaulding Hall*

*Princess Anne, Maryland 21853*

*Tel. 410-651-8361 Fax 410-651-8418*

*Email:* paattoh@umes.edu

**CONFIDENTIALITY NOTICE:** This message may contain confidential information intended only for the use of the person named above and may contain communication protected by law. If you have received this message in error, you are hereby notified that any dissemination, distribution, copying or other use of this message may be prohibited and you are requested to delete and destroy all copies of the email, and to notify the sender immediately at his/her electronic mail.

--
Berri A. Wells, MA
President, Turning Point Solutions
Founder, Coaches Corner
Leadership Training, Job Search and Career Coach
www.turningpointsolutions.net
berriwells@turningpointsolutions.net
301-905-7160

---

**3 attachments**


**B. Wells Part II Problem Identification v3.docx**
43K


**Berri's Final Exam.docx**
28K

**Berri's Final Exam rubric.doc**
38K

# EXHIBIT-C

# ORLD 601 Grades for Berri A. Wells
## October 8, 2018

| Assignment Number | Assignment Description | Due Date | Date Submitted | Date Rec'd | Gap | Grade Rec'd | Reference Document | Comments |
|---|---|---|---|---|---|---|---|---|
| 1 | Problem Identification Paper: *"Rotation Resistance"* | 7 Sept 11:59 pm | 7 Sept | 4 Oct | 27 Days | 0/10 | B. Wells Reflection Paper.docx | A1 |
| 2 | Organization Chart Presentation | 9 Sept | 9 Sept | 9 Sept | Same Day | 5/5 | Assignment Number One\Org Chart v2.pdf | |
| 3 | Article Critique Paper: *"Scientific Management and Taylorism"* | 21 Sept 11:59 | 21 Sept 11:57 | 4 Oct | 14 Days | 5/10 | INSERT LINK FOR PAPER | A2 |
| 4 | Reflection Paper *"McGregor and Taylor: Y The Difference?"* | 14 Sept 11:59 | 14 Sept 11:54 | 4 Oct | 21 Days | 8/10 | B. Wells Reflection Paper.docx | |
| 5 | Argument Paper: *Discrimination Hiring & Firing* | 28 Sept | Not Submitted | 4 Oct | | 0/0 | | A3 |
| 6 | Group Project: *"Organization Culture"* | 21 Sept | 21 Sept | 21 Sept | Same Day | 19/20 | Group Presentation Rubric.docx | |

Appeal and Complaint of Berri A. Wells – UMES ORLD

| 7 | Final Exam | 23 Sept | 23 Sept | 3 Oct | 10 Days | 21/25 | D:\UMES\601\Berri's Final Exam (1).docx | |

## ORLD 621 Grades for Berri A. Wells
## October 8, 2018

| Assignment Number | Assignment | Due Date | Date Submitted | Grade Rec'd | Gap | Grade Rec'd | Attachment Number | Comments |
|---|---|---|---|---|---|---|---|---|
| 1 | Leadership Paper | 5 Oct | 5 Oct 3:25 | | | | Leadership Reflection.docx | A4 |
| 2 | Leadership Presentation | 5 Oct | | | | | INSERT POWER POINT | |

## Comments:

**A1. Problem Identification Paper.** I am not clear on what happened with this particular assignment as I emailed it to Dr. Attoh on September 14 and he acknowledged receipt September 16. Additionally, this was our first assignment and as such, there could have been any number of explanations from human error of not having the correct email address to technical difficulties. Considering Dr. Attoh according to him had not received the very first assignment, I do not think that him taking the initiative to check would have been too much to ask. As a student, yes, I am responsible for my work, however, I was unaware that Dr. Attoh thought he had not received my assignment as he waited 27 days to provide me with a grade. Without question had I known of the error, I would have followed up with resending the assignment. I believe not having the assignment cast a negative opinion of me to him.

**A2. Article Critique.** In an email dated October 2, Dr. Attoh brought to my attention his concern about the assignment. He stated, I had not followed the rubric and as a result, he was unsure on how to grade my paper. He was correct, I had not followed the rubric. Instead, I followed the two-page template that Dr. Attoh had provided for the assignment. Additionally, on Friday, September 21 I sought clarification about the template and he informed me that I should follow page 2 of the template, which I did.

As a follow up, I provided him with a copy of the template that we had discussed on the 21st. Additionally, I made myself available to meet at a time that was convenient to him. On the next day, expecting a meeting confirmation, instead, he followed up with a second observation that had nothing to do with first concern: I had not selected an appropriate empirical article for the assignment and as a result, I had earned a failing score of 5/10. Considering the weight, the selection of the right type and kind of article held, immediately, I checked my notes, the Blackboard

and handouts received in class for examples, samples, illustrations, empirical article checklist, guidelines related to empirical articles and found close to noting.   The absence of examples is particularly troublesome considering 50% of the grade was directly related to the selection of the article.  As a fellow adult educator, it is not clear to me how such an important aspect could have been provided with such minimal coverage. Additionally, I wonder if half of the other students' grades were also contingent upon the selection of the right kind of empirical article.

**A3.  Argument Paper.**  The last week of the month of September, I was still looking for housing which took time away from my studies.  As the week progressed, I knew that I was running out of time and would be unable to finish the assignment on time.  As the result of the first response that I received from Dr. Attoh, I concluded that I would be met with another denial and opted not to ask for an extension.  According to the syllabus for 601, "*Submission of late assignments will not be tolerated and are subject to strong penalties*".  (Attoh, 2018), p.2.  On October 2, I informed Dr. Attoh I was working on my paper and on October 3, he informed that he had already submitted the grades. This meant, I had a total of three F's:  the first assignment:  Problem Identification Paper, the third assignment:  the Article Critique and the last assignment:  the Argument Paper.

**A4.**  Although, at the time the paper was due, I was no longer in the program, I submitted the assignment all the same.  Knowing that I was appealing the decision and hoping for a favorable outcome and if the outcome was favorable, my assignments would be current.

# EXHIBIT-D

| 7 | Final Exam | 23 Sept | 23 Sept | 3 Oct | 10 Days | 21/25 | D:\UMES\601\Berri's Final Exam (1).docx | |

## ORLD 621 Grades for Berri A. Wells
## October 8, 2018

| Assignment Number | Assignment | Due Date | Date Submitted | Grade Rec'd | Gap | Grade Rec'd | Attachment Number | Comments |
|---|---|---|---|---|---|---|---|---|
| 1 | Leadership Paper | 5 Oct | 5 Oct 3:25 | | | . | Leadership Reflection.docx | A4 |
| 2 | Leadership Presentation | 5 Oct | | | | | INSERT POWER POINT | |

## Comments:

**A1. Problem Identification Paper.** I am not clear on what happened with this particular assignment as I emailed it to Dr. Attoh on September 14 and he acknowledged receipt September 16. Additionally, this was our first assignment and as such, there could have been any number of explanations from human error of not having the correct email address to technical difficulties. Considering Dr. Attoh according to him had not received the very first assignment, I do not think that him taking the initiative to check would have been too much to ask. As a student, yes, I am responsible for my work, however, I was unaware that Dr. Attoh thought he had not received my assignment as he waited 27 days to provide me with a grade. Without question had I known of the error, I would have followed up with resending the assignment. I believe not having the assignment cast a negative opinion of me to him.

**A2. Article Critique.** In an email dated October 2, Dr. Attoh brought to my attention his concern about the assignment. He stated, I had not followed the rubric and as a result, he was unsure on how to grade my paper. He was correct, I had not followed the rubric. Instead, I followed the two-page template that Dr. Attoh had provided for the assignment. Additionally, on Friday, September 21 I sought clarification about the template and he informed me that I should follow page 2 of the template, which I did.

As a follow up, I provided him with a copy of the template that we had discussed on the 21st. Additionally, I made myself available to meet at a time that was convenient to him. On the next day, expecting a meeting confirmation, instead, he followed up with a second observation that had nothing to do with first concern: I had not selected an appropriate empirical article for the assignment and as a result, I had earned a failing score of 5/10. Considering the weight, the selection of the right type and kind of article held, immediately, I checked my notes, the Blackboard

and handouts received in class for examples, samples, illustrations, empirical article checklist, guidelines related to empirical articles and found close to noting. The absence of examples is particularly troublesome considering 50% of the grade was directly related to the selection of the article. As a fellow adult educator, it is not clear to me how such an important aspect could have been provided with such minimal coverage. Additionally, I wonder if half of the other students' grades were also contingent upon the selection of the right kind of empirical article.

**A3. Argument Paper.** The last week of the month of September, I was still looking for housing which took time away from my studies. As the week progressed, I knew that I was running out of time and would be unable to finish the assignment on time. As the result of the first response that I received from Dr. Attoh, I concluded that I would be met with another denial and opted not to ask for an extension. According to the syllabus for 601, "*Submission of late assignments will not be tolerated and are subject to strong penalties*". (Attoh, 2018), p.2. On October 2, I informed Dr. Attoh I was working on my paper and on October 3, he informed that he had already submitted the grades. This meant, I had a total of three F's: the first assignment: Problem Identification Paper, the third assignment: the Article Critique and the last assignment: the Argument Paper.

**A4.** Although, at the time the paper was due, I was no longer in the program, I submitted the assignment all the same. Knowing that I was appealing the decision and hoping for a favorable outcome and if the outcome was favorable, my assignments would be current.

# EXHIBIT-E

## Chronology
## September – October 2018

**September 7**

Citing the need to secure housing for myself and my family, requested an assignment deadline extension from 11:59 pm on September 6 to September 7 at 9:00 am.

The ORLD 601 – History and Philosophies of Organization syllabus states, "*Students must clearly communicate any and all challenges they experience throughout the course if it may impact their performance in the course*". (Attoh, 2018, p.2). Per the syllabus as well as information that was shared during the Orientation the weekend of August 24, I emailed Dr. Attoh *before* the deadline and asked for an extension.

I was house hunting and needed to see a property. My real estate agent had found a listing that met my criteria; I needed a house that was both for sale AND for rent. According to her, FEWER THAN 2% of houses are dually listed in this way and because of the limited pool, I was compelled to see the house that day. Estimating the roundtrip travel time and the time needed to complete the subsequent paperwork if I liked the house, I was concerned that I would not have enough time to finish the paper before the deadline. I was pro-active and made my request. My lease expired September 30 and considering I was still looking as of September 6, seeing the house was urgent. As we learned in 601, shelter according to Maslow is a survival or a basic need, level one. Considering housing is a basic need it stands to reason that securing housing was heavy on my mind. (Maslow, 1954). INSERT LEASE INDICATING SEPT 30

Dr. Attoh declined my request for a nine-hour extension. His response would be the major influence in a decision that I would later make in reference to the argument paper that was due September 28, 2018.

In spite the denial, I was able to make the deadline and submitted my paper on time.

**September 21**     At the conclusion of class, spoke to Dr. Attoh to obtain clarification on which set of instructions I should use for the critique paper that was due later that night. I showed him the two-page template that he had provided and he indicated that I should adhere to page number 2 for the assignment, which I did.

INSERT LINK FOR TEMPLATES.

**October 2**     Dr. Attoh emailed my work account with concerns about the critique paper. I had not used the rubric and he was unsure on how to grade my work. Unbeknownst to me, I had two failing grades and I did not submit the argument paper on time as I was working very hard to find a place to live as my lease was expiring September 30. Had I received my grades and been aware of my situation, I would have turned in the argument paper on time as opposed to attempting to turning it in late.

INSERT EMAILS

**October 3**     During a telephone conversation, Dr. Attoh, I was ambushed by the following information:
1. According to his records, I had, "several missing assignments"
2. He had submitted the grades and there was no need for me to continue to work on the argument paper due Sept 28
3. I had failed the class and according to the Student Handbook, I would immediately be removed from the program
4. I should withdraw from 602 before Friday, October 5 to be eligible for a refund

**October 4**     This was the first time that I had all of my grades for each individual assignment for 601. The delayed information is problematic considering during the entire duration of the course, I was unaware of the status of my grade. I was failing and did not know that I was failing because I was denied crucial and critical information, my grades for each assignment.

1. 0/10 for an assignment erroneously recorded as missing. Paper was submitted and Dr. Attoh acknowledged receipt.

2. 5/10 for a critique paper for which Dr. Attoh used fluctuating and capricious standards:
a. Explanation number one: I had not followed the rubric. Which was accurate as I had followed the template that he had provided and that I discussed with him September 21.
b. Explanation number two: Upon receipt of the template, he changed the grading criteria by pointing out I had not selected an appropriate empirical article and received 5/10.

**October 5**          Emailed both parts of the first assignment of 602: power-point presentation on leadership and a reflection paper to Dr. Attoh.

During class, Dr. Attoh made it a point when he passed out handouts to exclude me and accomplished this with two behaviors: first, he only passed out eight handouts although, including me, there were nine students. Secondly, the way he passed out the handouts meaning the direction he chose ensured that I would be excluded and would not receive the materials. Dr. Attoh's conduct was punitive, revengeful and castigating. The manner in which he conducted himself, took a private situation and made it public. Although onlookers were unaware of the source of the problem, as he continued to ignore me, it became clear to me that Dr. Attoh had personalized the situation and was retaliating. It appears that Dr. Attoh took great exception to me being in class. However:

1. The Student Handbook does not state that while in appeal, the student is barred from class.
2. I was upfront with my intention to attend class and informed Dr. Attoh in two separate emails that I would be in attendance, providing him with advance notice, if in-fact advance notice was necessary.
3. My conduct, affect and demeanor were clam, pleasant and polite, per usual. Based on my conduct and conversation, in no way did my presence or attendance disrupt, derail or upset the environment and atmosphere.
4. Dr. Attoh had no right or grounds to dismiss me from class per the Student Handbook.

At approximately 6:10 pm, Dr. Attoh took an uncustomary early break for a class that began at 5:00 pm. The early break is indicative of his eagerness to dismiss me which again is curious and troubling for the reasons listed above. During the break, he provided me with a hard copy of the dismissal letter INSERT LINK and asked me to leave the premises. Although I had researched and studied the Student Handbook INSERT LINK and knew I was not barred from attending class, I complied with his request.

**Observations: Need to Flush this out**

Comments made to and about African American Women –

1. Christle – her work was "fraught with fragments
2. Sharon (Dr. Attoh's assistant) – She was not current, outdated skill set and he wished Hayleigh could work for him as her power point skills are great.
3. Berri – When I used my laptop during the class, from the front of the room he asked what I was doing as compared to the white women who use their laptops during the class and nothing was said.

Appeal and Complaint of Berri A. Wells – UMES ORLD

4. His bias and prejudice are blatant
5. Policy denies due process
6. No notice prior to dismissal
7. Sanctions imposed without warning

# EXHIBIT-F

**Appeal and Complaint**
from
**Berri A. Wells**
**ORLD PhD Student**
**University of Maryland Eastern Shore**

**9 October 2018**

## Introduction

I am writing to appeal the failing grade that I received for the first class in the course of study in the ORLD PhD program, 601 – Organizational Theory and to request reconsideration to be re-admitted into the Program.

The primary reasons for my protest are based on the following:

1. <u>The first time that I received all my grades was October 4, 2018 and by that time, the course was completed</u>. See Attachment 1.

   Dr. Attoh, waited until October 4, 2018 following the completion of the class to provide me all of the grades that I had earned for each of the seven assignments that were due between September 7 and September 28, 2018. This delay had a severe impact that caused irreparable harm and damage:

   *a.* As the result of receiving my grades on October 4, I was unaware that according to Dr. Attoh's records, I was missing one half of a two part assignment that I thought up until a few minutes ago, I had sent. On September 14, I emailed not one but two assignments: the Problem Identification Paper and the Reflection Paper. As it turns out, I misspelled the email address for the email containing the Problem Identification Paper which means Dr. Attoh never received it. The Reflection Paper that was also emailed September 14 had the correct email address and was in fact received and acknowledged. See Attachment Two.

   b. I suspect the lack of perceived follow through gave Dr. Attoh an incorrect impression of my commitment as a student. Again, had I known that one of two emails sent had not gone through, immediately, I would have resent the Problem Identification Paper. However, by the time he sent my

grades to me on October 4, the course was over, the grades had been submitted.

c. Upon learning about the missing assignment on October 4, I resent Dr. Attoh a copy of the Problem Identification paper that I had originally submitted on September 14. Nevertheless, he did not update my grade.

2. <u>For the third assignment, an empirical article critique, in an email dated October 2, Dr. Attoh had questions about the guidelines that I followed to complete the assignment as well as concerns about the article that I had selected for the assignment.</u> See Attachment Number Four. On September 20, I was unclear on which template to follow for the assignment and presented the two page template to Dr. Attoh for clarification after class. He instructed me to follow the second page of the template, which I did. On October 2, we were in the midst of determining a date and time to meet to discuss his concerns. The very next day, Dr. Attoh informed me that he had submitted the grades. This was confusing to me and I do not know what interfered with us having a clarifying conversation. See Attachment Five. Considering the significance placed on the type of article selected, we did not spend any time in class reviewing the criteria and characteristics of an appropriate empirical article in 601. Neither were samples provided in class or examples placed in the Blackboard. On October 5 in 602 however, Dr. Attoh did pass out a sample of an empirical article.

Lastly, I am protesting the decision because I am capable, able and willing to do the work. Five years ago, when I first applied to the Program and was denied, I was disappointed. When I reapplied the second time and was accepted, I was delighted as earning my PhD has been a long term career goal and aspiration. As a practitioner, this degree will improve the quality of information that I provide my clients which in turn will increase successful on the job applications. Equally important, my grades reflect my ability: 5/5 on my first in class assignment; 8/10 on my reflection paper, an almost perfect

score of 19/20 on the group presentation and 21/25 on my final. These are not the grades of a failing student. I attend class, apply myself, and help to create a positive environment with a good sense of esprit d' corps.

After reviewing and sorting through my three email inboxes, searching for messages, I do believe a great part of the problem has to do with a breakdown in communication and if I had to do it over again, I would use the "read/receipt" function, especially when submitting assignments. My assumption was that all of my assignments had been received and the reason that I had not received grades was that Dr. Attoh hadn't gotten around to grading all of the papers. On the receiving end, what would have been helpful for me was better utilization of the subject line, A well written subject for many people, myself included, serves as a filter and determines when and if an email is read. *"You are failing my class. I need to hear from by 5 pm on Friday"*, for example is a clear subject heading that stands out.

I suspect if you did not receive the Problem Identification Paper from me, this made an unfavorable impression and you may have concluded, *"Berri doesn't care"*. This is far from the truth and I care very much. Remember, I am the student who asked for an extension, didn't get it, made the deadline anyway and showed up to class pleasant, positive and full of enthusiasm.

Lastly, Dr. Attoh I now know that according to your records, you did not receive my Problem Identification Paper. I wrote it and had it in time for September 7. When you followed up and asked me about it, immediately, I sent it and, you acknowledged receipt. I believe there is room for re-instatement and I hope you will agree.

Berri A. Wells

<u>Relief Sought:</u>

1. *Full Re-Instatement into the ORLD PHD program at UMES.*

2. *Re-dress considering how poorly I was treated on October 5 while attending 602:*

- *Dr. Attoh refused to provide me with any of the handouts which created an awkwardness and drew attention to me. Not wanting to miss out, I turned around and read the handouts of a student who was sitting behind me. This arrangement was an infringement on the other student and was unfair to us both.*

- *During class Dr. Attoh made the following comment,..."now that there are eight of you in the class".... With me in class there were not eight students, there were nine.*

- *At the break, Dr. Attoh asked me to leave the premises. This meant that following the break, I had to return to the class collect my things while everyone watched. I cannot recount another incident when I have ever been treated in such an unprofessional and punitive manner.*

- *The dynamic lacked civility and courtesy which I consider hallmarks of professionals.*

3. *Receive credit for the class time that I missed on the weekend of October 5. I came to class to learn and was asked to leave.*

4. *A modified final exam to account for the coursework that I missed the weekend of October 5.*

5. *My official record updated and the failing grade expunged.*

6. *To ensure fair treatment, no person involved in the dismissal process be involved in the appeal process or procedure. Having persons to serve on both sides of the transaction, creates a conflict of interest.*

# EXHIBIT-G



# The University of Maryland
# Eastern Shore
*Graduate Catalog   2015-2017*





UNIVERSITY *of* MARYLAND
**EASTERN SHORE**

*Division of Academic Affairs*
*School of Graduate Studies*

**Appeal of Dismissal/Discontinuation Policies and Procedures**

**A. Purpose**

1. These procedural guidelines are designed to provide a means for the resolution of appeals by students who have been dismissed from the School of Graduate Studies because of poor academic performance or progress. Students dismissed from any graduate program will be given due process.

**B. Procedure**

1. A program director may recommend dismissal of a graduate student for failure to meet the program's standards of academic performance or progress. A student shall be given written notice of dismissal by the School of Graduate Studies stating the reasons for the dismissal.

2. Within five days of the date of the notice, a student who disputes the reasons for the dismissal must contact the department chair, the graduate program director and advisor for informal discussion of the situation.

3. If a student remains dissatisfied after the discussions required by paragraph 2, the student may file a formal appeal of the dismissal, no later than 10 days after the discussions. The appeal must be made in writing in the form of a letter to the Dean of the School of Graduate Studies and include (a) in detail, the basis for the appeal; (b) the date the student was advised of the dismissal; and (c) a summary of the informal discussions held pursuant to these procedures. An appeal also should be supported by any attachments necessary to explain the issue and by an attachment giving the names and contact information (i.e., campus addresses, telephone numbers) of persons with relevant information. An appeal may be supported by written statements from other persons, provided such persons are identified in the statement and contact information is included.

4. Upon receiving an appeal, the Dean shall forward a copy of it to the faculty advisor, the program director and department chairperson(s) of the program from which the student is dismissed.

5. The Dean shall review each dismissal appeal and shall dismiss the appeal if:

(a) The student has submitted the same or a similar complaint through any other formal grievance procedure;

(b) There are no procedural grounds or other evidence supporting the appeal;

(c) The appeal was not filed with the Dean within 10 days of the student's notice of the dismissal; or

If the appeal is dismissed, the Dean shall notify the student, the chairperson and the graduate program director in writing.

6. If an appeal is not dismissed by the Dean within five days of receipt of the appeal, the program involved shall submit a reply to the appeal within 10 days of the program's receipt of the appeal.

7. The Dean shall submit the appeal of the student and the response of the program involved to the Graduate Council Appeals Committee (GCAC). The GCAC will hear statements from the student and the program.

8. The committee shall meet privately at the close of the fact-finding meeting to decide whether a majority believe the evidence supports the allegation of arbitrary and capricious grading beyond a reasonable doubt.

9. Following deliberations, the Committee shall notify the Dean in writing of the decision within five days of the meeting.

10. The Dean shall issue a decision in writing to the student, the faculty advisor, the chairperson and the program director within five days after receiving the recommendations of the GCAC or the request to waive GCAC review.

11. GCAC review may be waived upon the written request of the student and the program.

## C. Authority of the Committee

The decision of the committee is final, and binding on both parties. The decision may not be appealed to any other body within UMES or the University of Maryland System.

## D. Implementation

The Graduate Dean shall be responsible for implementing the decision of the committee.

## E. Schedules

Times stated in these procedures will be shortened, if feasible, when an appeal is relevant to an advancement decision. The Dean may extend or shorten the deadlines stated in these procedures when circumstances do not permit student, faculty or administrative actions within the specified time frames. Requests by the faculty or student to extend or shorten these deadlines must be in writing, but the Dean may not require the GCAC to decide an appeal within a certain time. The Dean's decisions with respect to scheduling shall be in writing and shall be final.

N.B. Adopted from the UMBC School of Graduate Studies dismissal policy.

# EXHIBIT-H

Graduate Council
2017-2019

**School of Agricultural and Natural Sciences**
1. Salina Parveen
2. Joseph Pitula
3. Jurgen Schwarz
4. Eric May
5. Paulinus Chigbu- Dean Appointee

**School of Business and Technology**
1. Edward Chapin
2. I.K. Dabipi
3. Monisha Das
4. Daniel Seaton

**School of Education, Social Science, and the Arts**
1. Prince Attoh
2. Cheryl Bowers
3. Kimberly Poole-Sykes
4. Lily Chi-Fang
5. Derry Stufft- Dean Appointee

**School of Pharmacy and Health Professions**
1. Patrice Jackson-Ayotunde
2. Adel Karara
3. Madan Kharel
4. Miguel Martin-Caraballo

**Ex-Officio Members**
Dr. Juliette Bell, President
Dr. Kimberly Whitehead, Interim, Provost and Vice President for Academic Affairs
Dr. LaKeisha Harris, Interim Dean of the Graduate School; Chair of the Graduate Council

"The Graduate Council consists of members of the Graduate Faculty elected by the Assembly, as well as appointed and ex-officio members. It is charged with formulation of policies and procedures for the graduate programs at UMES. These include, but are not limited to, admission standards, review of new graduate programs and courses, and review of the UMES Graduate Faculty membership." Graduate Catalog www.umes.edu/grad

• Graduate Student Representative to appointed by the School Dean



UNIVERSITY *of* MARYLAND
# EASTERN SHORE

## DIVISION *of* ACADEMIC AFFAIRS
### School of Graduate Studies

Graduate Council

2017-2020

### School of Agricultural and Natural Sciences

| Name | Term |
| --- | --- |
| Dr. Salina Parveen | 2017-2019 |
| Dr. Joseph Pitula | 2017-2019 |
| Dr. Jurgen Schwarz | 2017-2019 |
| Dr. Eric May | 2017-2019 |
| Dr. Paulinus Chigbu- Dean Appointee | 2017-2019 |
| Dr. Stephan Tubene | 2018-2020 |
| Dr. Byungrok Min | 2018-2020 |

### School of Business and Technology

| | |
| --- | --- |
| Dr. Edward Chapin | 2017-2019 |
| Dr. I.K. Dabipi | 2017-2019 |
| Dr. Monisha Das | 2017-2019 |
| Dr. Daniel Seaton | 2017-2019 |
| Dr. Mohammad Ali | 2018-2020 |
| Dr. Gurdeep Hura | 2018-2020 |

### School of Education, Social Sciences, and the Arts

| | |
| --- | --- |
| Dr. Prince Attoh | 2017-2019 |
| Dr. Cheryl Bowers | 2017-2019 |
| Dr. Kimberly Poole-Sykes | 2017-2019 |
| Dr. Lily Tsai | 2017-2019 |
| Dr. Derry Stufft- Dean Appointee | 2017-2019 |
| Dr. Henry Wagner, Jr. | 2018-2020 |
| Dr. Nelseta Walters-Jones | 2018-2020 |

# EXHIBIT-I

## Grade Change, Repeating of Courses, Arbitrary and Capricious Grading

A student may repeat any course where repeats are authorized, in an effort to earn a better grade. The later grade, whether higher or lower, will be used in computing the GPA. While matriculated at UMES, a graduate student who earns a grade of 'F' or 'D' in residence may not advance his/her credit hours earned toward a UMES degree by repeating the course at another institution.

Grades for graduate students remain part of each student's permanent record. In addition to the repeating of courses, grades may be changed only by the original instructor on the supplementary grade report form and approved by both the department Chair and the Dean. Changes may be made only in circumstances in which an actual mistake was made in determining or recording the grade, to record a missing grade from the official grade roster or transcript, or to remove an incomplete grade.

A grade of 'W' recorded on the transcript does not qualify for the change of grade process.

Allowable grade changes other than an 'I' (Incomplete) grade must be received in the Registrar's Office in the specified 60 calendar day period (see Registrar Office policy for specifics - www.umes.edu/Registrar/Content.aspx?id=3340).



The UMES procedures for Review of Alleged Arbitrary and Capricious Grading (1992) address and cover both graduate and undergraduate students and will be used.

Where a faculty composition or venue are not workable, the Graduate School may appoint a required tenured professor(s) from the graduate faculty at-large to hear the case, which also may be heard outside the unit offering the course(s) in dispute.

## Auditing of Graduate Courses

A graduate student, regardless of program or status, may audit a graduate course with the written permission of the course instructor and the student's advisor and subject to certain restrictions.

Courses which may not be audited are
1. Internships
2. Research credit courses such as 799 thesis and 899 dissertation, the 699/798 Master's projects, and any other program's research-designated courses.
3. Any graduate course in the graduate program with restricted enrollment such as Physical Therapy, the Master of Arts in Teaching and intensive weekend programs.

Audited courses will appear on the student's academic record as 'AU' and may not be used to repeat a course for which credit has been previously earned.

Audited courses do not earn credit, nor count as part of the credit hour load, nor may be applied toward the requirements of a graduate degree. The regular tuition rate applies to audited courses. Once a course has been audited, it cannot be converted to credit, except as below.

If students later find that an audited course they took is/will be a required course for the degree program in which they are matriculated, they must file a *Petition for Waiver of Regulation* to be considered to repeat the course for credit.



fails if two (2) of four (4) Dissertation Committee members do not sign the appropriate form. In addition, the ORLD Coordinator may override any Dissertation Committee pass/fail decision. Circumstances for an override could include *a.)* a dissertation manuscript not in compliance with ORLD specified outline/style; *b.)* failure of the student to comply with IRB human subjects protection requirements; or *c.)* acts of plagiarism and faulty data handling and other examples of academic dishonesty that were found. These problems would go back to the student and the RAC with appropriate action to be taken as warranted, e.g., if an academic honesty or IRB issue and/or revisiting the dissertation manuscript for revision and a subsequent review following the above five pass/fail alternatives.

Although not an ORLD requirement, the Doctoral candidate may request a Public Seminar (open to the public) to serve as a dress rehearsal for the Dissertation Defense. The request should be submitted to the ORLD Coordinator.

### ORLD Program Grading and Retention Policies

The grading policy for the ORLD program is simple and straightforward. Students must receive a grade of either "B" or "A" in each program course with a letter grading system (A, B, C & F) and a grade of "S" in comprehensive examination, internship and research credit courses with a "S/F" grading system.

If students believe any grade received in a course is either in error or was the result of "arbitrary and capricious grading," they should immediately discuss the issue with the faculty member. If this does not result in a satisfactory outcome, they should utilize the formal appeal procedures afforded to them in the UMES Procedures for Review of Alleged Arbitrary and Capricious Grading. Information on these procedures is available in the current edition of the UMES Academic Catalog.

### Retention policy

1. A student who receives a grade of "C" in any course must repeat that course.

2. After receiving two final "C" grades (whether receiving two consecutive "C" grades in the process of repeating one course or whether, throughout the duration of the program, receiving two final "C" grades in any two different courses), the student will be dismissed from the program.

3. A student who receives a final course grade of "F" at any time will be immediately dismissed from the program.

4. A grade of "I" (Incomplete) is given in any course only to students who are passing the course at the time of a legitimate emergency. If the "I" grade has not been completed satisfactorily within six (6) months from the conclusion of the 5-week course in which the instructor granted the "I," the student's registration for the next sequence of courses is subject to hold. All "I" grades must be completed for the student to sit for the comprehensive examination.





# The University of Maryland Eastern Shore

## Graduate Catalog   2015-2017



# Alleged Arbitrary and Capricious Grading (Procedures for Review - Campus Policy #III-1.20 (A) 1-1-92)

A. **Definitions**
1. "Arbitrary and Capricious Grading:"
   a. The assignment of a course grade to a student on some basis other than performance in the course, or
   b. The assignment of a course grade to a student by unreasonable application of standards different from standards that were applied to other students that were in that course, or
   c. The assignment of a course grade by a substantial and unreasonable departure from the instructor's initially articulated standards.
2. "Student" refers to any individual registered and in attendance at UMES, and includes both undergraduate and graduate levels.
3. "Instructor" Instructor refers to any tenured or non-tenured teacher or any Graduate Assistant teaching a course and assigning grades at UMES.
4. "Day to Day" Refers to the normal working day at UMES.

B. **Informal Procedures**
5. A student who believes he or she has received an improper final grade in a course should inform the instructor promptly. The instructor shall meet with the student at a mutually convenient time and place within ten days of receipt of the information. The purpose of the meeting is to attempt to reach a resolution.
6. If the instructor has left the University, is on approved leave, or cannot be reached by the student, the student should contact the Department Chairperson. The Department Chairperson, or a designee, shall meet with the student as described above to solve the problem.

C. **Formal Appeal**
A formal appeal is available only upon a showing that the informal process has been exhausted.
7. General Requirements
   a. An appeal must be made in writing, addressed to the appropriate dean, and contain the following: the course title and number, the instructor's name, a statement detailing why the grade is believed to be arbitrary and capricious as defined in this policy, and all relevant supporting evidence.
   b. An appeal must be received in the Dean's Office within 20 (twenty) days of the first day of instruction of the next semester (excluding summer).
8. Procedures
   a. Each school shall have a standing committee of two tenured professors and one senior level student for the undergraduate school or graduate student for the graduate school to hear appeals of arbitrary and capricious grading. The appeal shall be heard within the academic unit offering the course. If the instructor of the course is a member of the committee, that instructor shall be replaced by an alternate designated by the dean.
   b. Each written appeal is to be reviewed by the entire committee for a decision by the majority. The committee shall either dismiss the appeal or move it forward.
   c. Grounds for dismissal: The student has submitted the same complaint to any other grievance procedure; the allegations, if true, would not constitute arbitrary and capricious grading; the appeal was not timely, or the informal process has not been exhausted.
   d. If the appeal is dismissed, the committee shall notify the student in writing within ten days of the decision, and include the reason or reasons for the dismissal.
   e. If the appeal is not dismissed, the committee shall submit a copy of the appeal to the instructor. The instructor must reply in writing to the committee within ten days.
   f. If, based on the instructor's reply, the committee feels there is a viable solution, that solution should be pursued with the student and the instructor.
   g. If no solution is reached, a fact-finding meeting with the student and the instructor shall be held promptly. It is to be non-adversarial and informal with neither party represented by an advocate. Witnesses may be asked to make a statement to the committee if the committee is informed prior to the meeting. The meeting shall not be open to the public.
   h. The committee shall meet privately at the close of the fact-finding meeting to decide whether a majority believes the evidence supports the allegation of arbitrary and capricious grading beyond a reasonable doubt.

③

         i. The committee shall notify the student, the instructor, and the Dean in writing of the decision within five days of the meeting.

## D. Authority of the Committee

9. The committee has the authority to take any action it believes will bring about substantial justice, including but not limited to:

   a. directing the professor to grade the student's work anew;

   b. directing the instructor to administer a new final exam or paper;

   c. directing the cancellation of the student's registration in a course;

   d. directing the award of a grade of "pass" in the course.

10. The committee does <u>not</u> have the authority to

    a. assign a letter grade for the course, or

    b. reprimand or take disciplinary action against the instructor.

11. The decision of the committee is final and binding on both parties. The decision may not be appealed to any other body with UMES or the University System of Maryland.

## E. Implementation

The Dean shall be responsible for implementing the decision of the committee.

# EXHIBIT-J

Good morning and happy Saturday.
Here is Dec., 4 letter from Dr. Harris.
Ill start on UMES chronology this weekend -even if only for 30 minutes.
Time for me to warm up and stretch.
Exercise works - my back is sooo much better. I am amazed at the improvement. Consider stretching your neck muscles with a few simple exercises, nothing too strenuous.

--------- Forwarded message ---------
From: **Harris, Lakeisha L** <llharris@umes.edu>
Date: Tue, Dec 4, 2018 at 12:56 PM
Subject: Letter of Withdrawal for Berri Wells 1238199
To: Wells, Berri A <bawells@umes.edu>, abettercoach@gmail.com <abettercoach@gmail.com>
Cc: Gross, Preston V <pvgross@umes.edu>

Good afternoon Ms. Wells, .

Please see the attached letter regarding your status at the University of Martin Eastern Shore. Please let me know if you have any questions.

Thank you,

Dr. Harris

LaKeisha L. Harris, Ph.D, CRC
Interim Associate Vice President for Research and Extended Education
and Interim Dean, School of Graduate Studies
Immediate Past Faculty Assembly Chair, 2018-2019
University of Maryland Eastern Shore
Engineering and Aviation Sciences Complex, Suite 3046
Princess Anne, Maryland 21853
Tel: (410) 651-7966
Fax: (410) 651-7571
llharris@umes.edu

CONFIDENTIALITY NOTICE: This message may contain confidential information intended only for the use of the person named above and may contain communication protected by law. If you have received this message in error, you are hereby notified that any dissemination, distribution, copying or other use of this message may be prohibited and you are requested to delete and destroy all copies of the email, and to notify the sender immediately at his/her electronic mail.



UNIVERSITY of MARYLAND
EASTERN SHORE

## DIVISION of ACADEMIC AFFAIRS
### School of Graduate Studies

December 4, 2018

Berri Wells #**1238199**
7723 English Oak Circle
Elkridge, MD 21075

Dear Ms. Wells:

After a review of the policies and procedures for the doctoral program in Organizational Leadership, I am writing to rescind your dismissal from the program effective today.

You have been withdrawn from ORLD 601 for fall 2018 and will receive any refunds if applicable.

Thank you again for your interest in the University of Maryland Eastern Shore and best wishes in your future endeavors.

Respectfully

*LaKeisha L. Harris*

Dr. LaKeisha Harris, Ph.D., CRC
Interim Dean

cc: Dr. Prince Attoh, Program Director
    Mrs. Cheryl Duffy, Registrar

# EXHIBIT-K

**Complaint and Appeal**

**from**

**Berri A. Wells**

**1238199**

**ORLD PhD Student**

**University of Maryland Eastern Shore**

**December 14, 2018**

# TABLE OF CONTENTS

Complaint      Pg. 3 - 8

Relief Sought      Pg. 9 - 10

Original Dismissal Appeal Dated October 9, 2018      Pg. 11 - 13

Chronology: September 7 – October 5      Pg. 14 - 16

Table:
     Assignment Due Dates and The Dates I Received My Grades      Pg. 17 - 18

Attachments:
     Number One: Emails between Dr. Attoh and Myself, Dated Oct 2 - 4      Pg. 19
       a. Grades for the Semester
       b. Argument Paper
       c. Grades Submitted
       d. Failed the Course

     Number Two: Assignment Number One - Problem Identification Paper: *"Resistance to Rotations"*      Pg. 25
       a. Undelivered Email Notification for Problem Identification Paper
       b. Extension Denial for Problem Identification Paper
       c. Copy of the Problem Identification Paper

     Number Three: Assignment Number Two - Empirical Article Critique: *"Scientific Management & Taylorism"*      Pg. 43
       a. Template
       b. Copy of the Paper including comments from Dr. Attoh

     Number Four: Assignment Number One for 602: *"Leadership Reflection"*      Pg. 51
       a. Copy of the Paper
       b. Copy of Power-Point Slide-deck

     Number Five: UMUC Course Syllabus      Pg. 64

Appeal and Complaint of Berri A. Wells - UMES ORLD

# COMPLAINT AGAINST DR. ATTOH AND APPEAL FOR REINSTATEMENT

Complainant: Berri A. Wells, MS, ACC
ORLD Graduate Student
UMES Identification Number: 1238199
301-905-7160
abettercoach@gmail.com

December 14, 2018

Mr. Jason A. Casares
Office on Institution Equity and Compliance
UMES
Princess Anne, MD 21853

Dear Mr. Casares:

I am writing to appeal my recent dismissal from the University and to file a complaint against my instructor and advisor, Dr. Prince Attoh. My complaints are listed below. Dr. Attoh discriminated against me, created a hostile work environment and deliberately withheld my grades so that he could fail me, which lead to my dismissal from the ORLD Program. I am writing to appeal that decision and to request re-instatement into the ORLD Doctoral Program. Dr. Attoh's behaviors include the following:

IA. Withholding and Denying Credit for Assignments and IB Arbitrary and Capricious Grading
II. Retaliation and Discrimination
III. Hostile Work Environment
IV. Disparate Treatment
V. Re-Payment Irregularity of Federal Financial Aid (this is not related to Dr. Attoh but rather toward the University)

# I.WITHHOLDING and DENYING CREDIT FOR ASSIGNMENTS and ARBITRARY & CAPRICOIUS GRADING

## A. Withholding and Denying Credit for Assignments

Briefly stated, on October 3, without notice or indication, I learned from Dr. Attoh that I had failed 601 and that I was also dismissed from the University. This conversation was the first time that I had heard that I was failing although I attended every class, had exchanged emails with Dr. Attoh throughout the course and had spoken with him when I had questions about an assignment. I was stunned, shocked and confused by the revelation. It took Dr. Attoh another 24 hours before he provided a written list of all of my grades for each assignment. *See Attachment Number 1A.*

For the first assignment that was due September 7 and worth 10 points, Dr. Attoh withheld my grade for 27 days. The third assignment, the Article Critique, 14 days. For the fourth assignment that was due September 14, The Reflection Paper, Dr. Attoh withheld my grade 10 days. Three out of seven assignments represent close to 50% of all of the graded assignments. In the absence of feedback, I assumed that I was passing. It never occurred to me that if I was failing, my instructor who also happened to be my advisor, would not have brought this to my attention. *See page 17 – Table Showing Dates Assignments Were Submitted and The Dates Grades Were Received.*

The pattern of withholding my grades until after the conclusion of the course denied me the opportunity of awareness and information that ultimately made it impossible for me to improve as I was unaware of my standing. According to his records:

1. **I Did Not Submit Two Assignments:**
   a. *The Problem Identification Paper*: Due September 7.
      i. On September 7, I both emailed the assignment and brought a hard copy to class with me, to submit to Dr. Attoh. Unfortunately, I misspelled Dr. Attoh's email address and I did not learn that the assignment was missing until September 14, when Dr. Attoh emailed me. Immediately, I forwarded my original email from September 7 to Dr. Attoh and that email contained date and time stamps showing the assignment had been submitted prior to the deadline. Despite the documentation, Dr. Attoh refused to update my grade and I received zero points for the assignment. In this instance, he denied me credit for submitted assignment. *See Attachments Number 2B – 2F.*

   b. *The Argument Paper*: Due September 28. I was late submitting this assignment and while I was working on the paper, on October 3 Dr. Attoh informed me that he had submitted the grades and there was no need to continue working on it. *See Attachment Number 1B for copies of the email exchange regarding the Argument Paper.*

### IB. Capricious Grading

2. **I Received a Score of 5/10 on the Empirical Article Critique.** Dr. Attoh provided two reasons for the failing grade:
   a. I did not use an appropriate article.
   b. I failed to follow the template.

a. Failed To Use An Appropriate Article. At no time during 601 did Dr. Attoh provide a single sample of what he considered an appropriate empirical article: not in the Blackboard; not as a handout and not included in a Power-point during class. Course 601 was my first course and I needed to be taught and shown an empirical article. Instead, Dr. Attoh deducted 25% and made me responsible for something that he did not teach, demonstrate or provide.

b. Failed To Follow the Template. On September 21, immediately after class, I met with Dr. Attoh to clarify which template/document I should follow for the Empirical Article Critique format. Dr. Attoh had provided multiple documents: a rubric and a two-page template. After class, I explained that I was not sure which template to follow and he stated that I should follow page 2, which is what I did. For this reason, I am not clear on why he penalized me 25%.
"*Berri, this is a well written paper...*"is how the feedback for the empirical article begins. That I failed a writing assignment and received 5 out of 10 points for reasons not related to my writing skills, critical thinking skills and ability to analyze content, is curious and suspicious. Following directions is important. In this case, I followed the directions that Dr. Attoh provided and still failed the assignment. *See Attachment Number 3A and 3B for a Copy of the Template and a Copy of the Paper I Submitted Including Dr. Attoh's Comments.*

## II. RETALIATION and DISCRIMINATION
As previously mentioned, without warning or advance notification, Dr. Attoh advised me that I had been dismissed from the Program. At that time, he also suggested that I immediately withdraw from the University. After reading the Student Handbook, I learned that students can appeal dismissal decisions. Additionally, there is no prohibition that bars students from attending class during the appeal process. Not wanting to miss any instruction, I informed Dr. Attoh of my decision to appeal his recommendation and I notified him that I would attend 602 the weekend of October 5.

During class on October 5 Dr. Attoh retaliated against my decision in several ways beginning with refusing to provide me with handouts that he freely gave to the rest of the class. He discriminated against me by selectively choosing not to provide me with any of the class materials. In this instance, he singled me out. Including myself, there were nine students in the classroom and he repeatedly passed out only eight copies of each of the handouts. To further deny and impede my education, he passed the materials beginning to his left. I sat to his far right and by passing out paperwork beginning at his left, my exclusion was guaranteed.

Class began at 5 PM and he took a break at 6:10 and it was uncustomary for him to take a break so early during the four-hour module. During the break he asked to speak with me and he confronted me in the hallway; right outside the doorway that lead to the classroom where my classmates were milling about. Guaranteed, anyone in earshot overheard the conversation. Dr. Attoh gave me with a dismissal letter dated October 4 from Dr. Harris. That Dr. Attoh presented me with the letter of dismissal was a conflict of interest as he is the chief and only complainant. The letter of dismissal should have come directly from the Dr. Harris and not from Dr. Attoh and it should not had been given to me during break within earshot of the other eight students. As a faculty member, official of the University and Department Head he had the highest standard and responsibility to conduct himself in a professional manner including protecting my privacy. His display and ugly behavior were openly hostile, in-discreet and created a hostile work environment. Clearly his intent was to embarrass and humiliate me in front of my classmates.

Lastly, during class he repeatedly made mention that there were, *"now eight students in the Program"*. However, including myself, there were nine students. By making these statements, he exposed me; he humiliated me; and broke my anonymity. I have a right to privacy. All of his retaliatory behavior combined, made it clear that I had failed the class and that I was out of the Program. His final and most egregious conduct was dismissing me from the building by telling me to leave the premises. Following the break after everyone had returned, I had to return to the classroom to retrieve my belongings as everyone looked on and observed. I cannot think of another incident that compares to the level of retaliation, resentment and abuse of power and authority displayed by Dr. Attoh on October 5 toward me.

### III. HOSTILE WORK ENVIRONMENT

In addition to Dr. Attoh's conduct on October 5, during 601, I noticed that Dr. Attoh did very little to hide his admiration and appreciation for the white students in the class; and his disapproval of disdain for the African American females in the class. These exchanges during 601 and 602, created a hostile work environment and I was uncomfortable with his lack of civility and decorum.

On September 23 the day of the final, one of the African American female students came to class with a new hairstyle; on this day, her hair was natural and she was wearing an afro. Dr. Attoh upon seeing her said, *"Oh, I see you are wearing your hair for the final"*. He did not follow up with a compliment or a flattering remark but rather he drew attention to her natural hair. Here is the US, ethnic and cultural hairstyles for African-American women continue to be a source of contention in the workplace and in professional settings and to draw attention to the students' hair, was uncouth and unprofessional and as an observer, it felt mean spirted and created a very awkward moment.

On September 21 Dr. Attoh went on to praise a white female student by saying, *"Oh, I wish you could work for me. Your computer skills are dynamite. Ms. Barkley (elder, African American female), my assistant, her skills are stuck in the past. If I had you on my team, wow, that would be wonderful"*.

On September 22 following a class presentation, to the student who worked for Purdie Chicken, he enthusiastically exclaimed, *"Does Purdue know how wonderful you are? Do they know how well you are representing them? You are doing such great work for them and I hope they know the value you bring to the table"*.

On September 8, Dr. Attoh provided the class with his initial impressions of our first writing assignment. In front of the class, to an African American student he said, *"your work has a lot of run-on's, lots of really long sentences which made your writing hard to understand and to follow"*.

On October 5 to one of the white male students he commented, *"Kirk, what a cool guy, so easy to work with"*.

In each of these instances, the target of the praise was a white or Latina student. Not once did he compliment or acknowledge an African American student with similar enthusiasm and sincerity.

## IV. DISPARATE TREATMENT AND LACK OF EMPATHY

During the Orientation, Dr. Attoh stressed the importance of keeping instructors abreast and making special requests known before deadlines. Taking him at his word, the afternoon of September 6, I emailed and asked for a nine-hour extension from midnight to the following morning at 9 am. I explained that I was in the midst of house hunting; that my agent had found a property and that I had an appointment for that afternoon in advance of other house hunters on full alert for Labor Day Weekend, to see the property. As I considered the distance to the property and the time of day, I was worried that I would not get back in time to finish up the assignment. Although, I made my request in advance of the deadline, he denied my request for an extension. According to the syllabus for 601, *"Students must communicate any and all challenges they experience throughout the course if it may impact their performance in the course"*. (Attoh, 2018}. Although I took the initiative before the deadline to seek help, my request to address a most pressing issue of where I was going to live, he said no. Looking for housing for myself and my family, was a legitimate and pressing need. Dr. Attoh felt otherwise. *See Attachment 2B.*

His refusal played an integral part at the end of the month when I knew that it would be impossible for me to make the deadline of September 28, our final assignment. The house that I had located had fallen through and I was back at square one. Not only that, my lease was expiring at the end of September and I was under tremendous pressure to find another home and to move. This time however, I did not ask for an extension based upon his response the first time that I had made a request as a result of my housing situation. Accepting the fact that I would be late, my intent was to write the paper and turn it in late. As I worked on the paper, Dr.

Attoh informed me that finishing the paper was not necessary as he had submitted the grades and that I had failed the course. *See Attachment 1C.*

I am an adult learner, head of household, a parent to a college freshman, a self-employed consultant – I did not plan to have to move at the same time that I began my doctoral plan of study. I asked for help and in my estimation an extension of nine hours considering what I was dealing with, was a small request. For his own reasons Dr. Attoh refused and considering he encouraged us to follow up and express concerns sooner rather than later, his response was disappointing and confusing.


## V. REPAYMENT IRREGULARITY OF FEDERAL FINANCIAL AID

Lastly on November 30, to gain clarity on my balance due, I called the Office of Student Accounts to inquire. After several telephone conversations that afternoon, I learned that my balance was $7,200+ and I would need to re-pay the University in full by June 2019. If I failed to repay the entire amount by June, my account would be turned over to the Central Collections Unit of Maryland, without exception. During my conversation with the Bursar, I protested and noted, the US Department of Education does not require or stipulate a re-payment of several months but rather several years. In contrast however, UMES requires a repayment of seven months for seven thousand dollars which feels punitive and seems unusual, irregular and potentially illegal. My concerns fell on death ears. This situation reeks of kickbacks and under the table payments and should be investigated thoroughly – I suspect thousands upon thousands of dollars have been shared among officials and faculty at UMES. Each time a student is dismissed or advised to withdraw, "they" enrich themselves as there is no accountability once federal funds are received.

By now, I would have expected a statement, coupon book or other repayment documentation. To date, I have not received any paperwork or statement informing me where and how I should make my accelerated payments of $1,000 per month over the next seven months. Again, this is another example of the University not providing paperwork in a timely manner.


Regards,

Berri A. Wells

## Relief Sought:

As a result of the conduct and behavior of Dr. Attoh, I suffered irreputable harm, embarrassment and public humiliation. My rights to privacy, due process and equal protection under the law were violated. Optimally, I would like to informally resolve this situation. However, I am prepared to file a civil rights complaint to all the appropriate authorities and courts.

1. Full Re-Instatement into the ORLD PhD Program at UMES.

2. Retroactive, full funding for tuition, books and hotel accommodations for remainder of the Program.

3. Review and revision of UMES policies and procedures for graduate students receiving a failing grade. The Student Handbook is deficient on the topic and fails to provide adequate details to assist students who find themselves in this situation.

4. Training for the Deans, staff and faculty including: students accounts, the Bursars office and the Registrar on the process of withdrawing, appealing decisions, financial aid refunds.

5. Creation of an Ombudsman's Office.

6. Striking the policy for graduate students regarding failing grades – failing students are automatically dismissed from UMES. Adoption of provisions and practices similar to the Doctoral of Business Administration Program of UMUC that provides resources and assistance for students who are struggling or needing additional support, for example an opportunity for refining and resubmitting work. See

Attachment Five.

7. I believe there is just cause in my complaint. Dr. Attoh did not demonstrate an interest in my success and as an instructor, neither did he direct me to resources and help me to create a plan to move forward. He was openly discriminatory. He deliberately withheld grades. His posture contradicts the desired outcome of learning and research and as a result, he should be terminated.

8. Create a sample framework for course syllabus to include: Grading Information, Course Grade Calculations, Late Work, etc. Again, UMUC provides a comprehensive syllabus that is informative and helpful.

9. Investigation and forensic audit of all student accounts beginning with ORLD, for those students who withdrew, failed a course and/or were dismissed from the Program, should be initiated.

**DISMISSAL APPEAL – Submitted October 9, 2019**

I am writing to appeal the failing grade that I received for the first class in the course of study in the ORLD PhD program, 601 - Organizational Theory and to request reconsideration to be re-admitted into the Program.

The primary reasons for my protest are based on the following:

1. The first time that I received all my grades was October 4, 2018 and by that time, the course was completed. See Attachment 1.
   Dr. Attoh, waited until October 4, 2018 following the completion of the class to provide me all of the grades that I had earned for each of the seven assignments that were due between September 7 and September 28, 2018. This delay had a severe impact that caused irreparable harm and damage:

   a. As the result of receiving my grades on October 4, I was unaware that according to Dr. Attoh's records, I was missing one half of a two part assignment. On September 14, I emailed not one but two assignments: the Problem Identification Paper and the Reflection Paper. As it turns out, I misspelled the email address for the email containing the Problem Identification Paper which means Dr. Attoh never received it. The Reflection Paper that was also emailed September 14 had the correct email address and was in fact received and acknowledged. See Attachment Two.

   b. I suspect the lack of perceived follow through gave Dr. Attoh an incorrect impression of my commitment as a student. Again, had I known that one of two emails sent had not gone through, immediately, I would have resent the Problem Identification Paper. However, by the time he sent my

grades to me on October 4, the course was over, the grades had been submitted.

c. Upon learning about the missing assignment on October 4, I resent Dr. Attoh a copy of the Problem Identification paper that I had originally submitted on September 14. Nevertheless, he did not update my grade.

2. <u>For the third assignment, an empirical article critique, in an email dated October 2, Dr. Attoh had questions about the guidelines that I followed to complete the assignment as well as concerns about the article that I had selected for the assignment.</u> See Attachment Number Four. On September 20, 1 was unclear on which template to follow for the assignment and presented the two page template to Dr. Attoh for clarification after class. He instructed me to follow the second page of the template, which I did. On October 2, we were in the midst of determining a date and time to meet to discuss his concerns. The very next day, Dr. Attoh informed me that he had submitted the grades. This was confusing to me and I do not know what interfered with us having a clarifying conversation. See Attachment Five. Considering the significance placed on the type of article selected, we did not spend any time in class reviewing the criteria and characteristics of an appropriate empirical article in 601. Neither were samples provided in class or examples placed in the Blackboard.     On October 5 in 602 however, Dr. Attoh did pass out a sample of an empirical article.

Lastly, I am protesting the decision because I am capable, able and willing to do the work. Five years ago, when I first applied to the Program and was denied, I was disappointed. When I reapplied the second time and was accepted, I was delighted as earning my PhD has been a long term career goal and aspiration.   As a practitioner, this degree will improve the quality of information that I provide my clients which in turn will increase successful on the job applications. Equally important, my grades reflect my ability: 5/5 on my first in class assignment; 8/10 on my reflection paper, an almost perfect

score of 19/20 on the group presentation and 21/25 on my final. These are not the grades of a failing student. I attend class, apply myself, and help to create a positive environment with a good sense of esprit d' corps.

I suspect if you did not receive the Problem Identification Paper from me, this made an unfavorable impression and you may have concluded, *"Berri doesn't care"*. This is far from the truth and I care very much. Remember, I am the student who asked for an extension, didn't get it, made the deadline anyway and showed up to class pleasant, positive and full of enthusiasm.

Lastly, Dr. Attoh I now know that according to your records, you did not receive my Problem Identification Paper. I wrote it and had it in time for September 7. When you followed up and asked me about it, immediately, I sent it and, you acknowledged receipt. I believe there is room for re-instatement and I hope you will agree.

Berri A. Wells

## *Chronology: Sept. – Dec. 2018*

Citing the need to secure housing for myself and my family, I requested an assignment deadline extension from 11:59 pm on September 6 to September 7 at 9:00 am.

Dr. Attoh declined my request. In spite the denial, I submitted my paper on time and received a perfect scor See Attachment 2B.

**Sept 21**

At the conclusion of class, I spoke to Dr. Attoh to obtain clarification on which set of instructions I should use for the critique paper that was due later that night. I showed him the two-paged template that he had provided and he indicated that I should adhere to page number 2 for the assignment, which I did. See Attachment 3A.

**Sept 28**

My housing emergency persisted and I did not complete the Argument Paper that was due. Unbeknownst to me, at that point in time, I had two failing grades because I did not receive all of my grades from Dr. Attoh until October 4. Not knowing the status of my grades lead to me making an uninformed decision.

I responded to Dr. Attoh' email about the empirical journal critique. He offered to discuss, I agreed. In his comments he questioned the format that I had followed. I emailed him the template that he and I had discussed on Sept. 21 after class. See Attachment 3A.

During exchange, I was ambushed by the following information:

1. According to his records, I had, "*several missing assignments*".
2. He had submitted the grades and there was no need for me to continue to work on the Argument Paper that had been due Sept 28.
3. I had failed the class and according to the Student Handbook, I would immediately be removed from the Program.
4. I should withdraw from 602 before Friday, October 5.

For the first time, I received all of my grades for each assignment for 601. Learned that I had two failing grades:

1. 0/10 for an assignment erroneously recorded as missing. I emailed the paper on September 7 using the wrong email and on Sept 14, I resubmitted the paper with correct email address. Dr. Attoh refused to give me credit for the assignment.

2. 5/10 for a Critique Paper for which Dr. Attoh on October 2 offered to discuss and by October 3 had submitted the grades without a discussion in spite my responsiveness and willingness to discuss.

**Oct 5**          Although I had been removed from the Program, not wanting to fall behind, I emailed both parts of the first assignment for 602: power-point presentation on leadership and a reflection paper to Dr. Attoh. See Attachments 4A and 4B.

During class, Dr. Attoh made it a point when he passed out handouts to exclude me and accomplished this with two behaviors: first, he only passed out eight handouts although, including me, there were nine students. Secondly, the way he passed out the handouts meaning the direction he chose, ensured that I would be excluded and would not receive the materials. The manner in which he conducted himself, took a private situation and made it public. It became clear that Dr. Attoh had personalized the situation and was retaliating. Dr. Attoh took great exception to me being in class. However:

1. The Student Handbook does not state that while in appeal, a student is barred from class.
2. I was upfront with my intention to attend class and informed Dr. Attoh in two separate emails that I would be in attendance, providing him with advance notice, if in-fact advance notice was necessary.

My conduct, affect and demeanor were clam, pleasant and polite, per usual. Based on my conduct and conversation, in no way did my presence or attendance disrupt, derail or upset the environment and atmosphere.

Dr. Attoh had no right or grounds to dismiss me from class per the Student Handbook.

Oct. 9      Submitted Appeal and Complaint to  Drs. Harris, Boyd and Attoh.

Oct. 19     After not making any progress with my Appeal, I informed Drs. Harris and Boyd that I was no longer interested in returning to the University.

Dec. 15     Reconsidered my position and am re-instating my appeal and complaint.

## ORLD 601 Grades for Berri A. Wells

| Assignment Number | Assignment Description | Due Date | Date Submitted | Date Rec'd | Gap | Grade Rec'd | Reference Document or Comments |
|---|---|---|---|---|---|---|---|
| 1A | Problem Identification Paper: "Rotation Resistance" | 7 Sept 11:59 pm | 7 Sept | 4 Oct | 27 Days | 0/10 | Attachment Number Two<br><br>Submitted paper using wrong email. Re-submitted 9/14 when I learned of the mistake. Dr. Attoh denied credit even though date and time stamp show assignment was finished before deadline. |
| 1B | Organization Chart Presentation | 9Sept | 9Sept | 9Sept | Same Day | 5/5 | |
| 2 | Article Critique Paper: "Scientific Management and Taylorism" | 21 Sept 11:59 | 21 Sept 11:57 | 4 Oct | 14 Day s | 5/10 | Attachment Number Three<br><br>Dr. Attoh stated, didn't follow template and didn't use appropriate empirical article |
| 3 | Reflection Paper "McGregor and Taylor: "Y" The Difference?" | 14 Sept 11:59 | 14 Sept 11:54 | 4 Oct | 21 Days | 8/10 | |
| 4 | Argument Paper: Discrimination Hiring & Firing | 28 Sept | Not Submitted | 4 Oct | | 0/0 | Please see Comment One, at the bottom of the next page.<br><br>While working on the paper, after offering to discuss, Dr. Attoh abruptly failed me for the assignment and submitted the grade. |
| 5 | Group Project: "Organization Culture" | 21 Sept | 21 Sept | 21 Sept | Same Day | 19/20 | |
| 6 | Final Exam | 23 Sept | 23 Sept | 3 Oct | 10 Days | 21/25 | |

## ORLD 602 Grades for Berri A. Wells
### October 8, 2018

| Assignment Number | Assignment | Due Date | Date Submitted | Grade Rec'd | Gap | Grade Rec'd | Attachment Number |
|---|---|---|---|---|---|---|---|
| 1 | Leadership Paper | 5 Oct | 5 Oct | | | | Attachment Five |
| 2 | Leadership Presentation | 5 Oct | 5 Oct | | | | Attachment Five |

### Comment One

**Argument Paper.** The last week of the month of September, my housing emergency persisted and I was still looking for accommodations for my family and myself. As the week progressed, I knew that I was running out of time and would be unable to finish the argument paper by Friday. As the result of the first response that I received from Dr. Attoh on September 6 regarding an extension for the very same issue, I concluded that I would be met with another denial and opted not to ask for an extension. According to the syllabus for 601, "Students must communicate any and all challenges they experience throughout the course if it may impact their performance in the course". (Attoh, 2018}.

Although I took the initiative before the deadline to seek help, my request to address a most pressing issue of where I was going to live, was denied.

# EXHIBIT-L

GmailBerri Weiis <abettercoach@gmail.com>

## Final Exam Evaluation and Grade Calculation
5 messages

Attoh, Prince A <paattoh@umes.edu>                                                                          Thu, Oct 4, 2018 at 11:05 AM
To: Berri Wells <abettercoach@gmail.com>
Cc: "Harris, Lakeisha L"            "Duffy, Cheryl L." <clduffy@umes.edu>

Good morning Berri

Attached, please find your Final Exam evaluation. Up to date, you should have received all of the other evaluations for 601. If you want me to resend any of the previous evaluations, please let me know. Below are your points for each of the assignment and the total grade for the course.

1. Assignment # 1 Organization Chart Presentation 515
2. Identification of the Problem: (Did not submit this assignment:

3. Reflection Paper: 8/10

4. Article Critique: Selected an inappropriate empirical article: 5/10

5. Group Presentation 19/20

6. Argument Paper (Did not submit) 0/20

7. Final Exam 21/25
Total 601 Final Grade: 58/100 = F

According to the ORLD Retention Policy found in the Graduate Handbook (pg. 183)


"A student who receives a final course grade of "F" at any time will be immediately dismissed from the program".


Thus, the reason, I had sent you the email yesterday about dropping ORLD 602 and 603. In order to get a re-fund for those courses, you have to drop the course before its start date. ORLD 602 start date is Friday, 1015th. Please go to the Registrar's site to retrieve the Drop form. After completing the form, please send it directly to the Registrars Office The Graduate Studies Office will follow up with a formal Dismissal Letter. If additional information is needed, please let me know.

Dr. Attoh

Dr. Prince A.Attofi

Associate Professor and Director Organizational Leadership Ph.D program

Department of Social Sciences

university of Maryland Eastern Shore

1106 Spaulding 3-faLT

'Princess Anne, *Maryland21853

Tec 410-651-8361 fax 410-651-8418
'Emai G paattoh@umes.edu

CONFIDENTIX..ITY NOTICE : This message may contain confidential information intended only for the use of the person named above and may contain communication protected by law. If you have received this message in error, you are hereby notified that any dissemination, distribution, copying or other use of this message may be prohibited and you are requested to delete and destroy all copies of the email, and to notify the sender irrunediately at his/her electronic mail.

2 attachments
  Berri's Final Exam.docx

  Berri's Final Exam rubric.doc

8

Berri Wells <abettercoach@gmail.com>
Draft To: "Attoh, Prince A" <paattoh@umes.edu>
Cc: "Harris, Lakeisha L" <llharris@umes.edu>, "Duffy, Cheryl L." <clduffy@umes.edu>

(Quoted text hidden)

---

# Wells, Berri A

| | |
|---|---|
| From: | Attoh, Prince A |
| Sent: | <paattoh@umes.edu> |
| | Tuesday, October 2, 2018 5:30 PM |
| To: | Wells, Berri A |
| Subject: | RE: Article Critique Format |

Hello Berri

And yes, we can further discuss the critique evaluation. However, in my last email, I was referring to the last assignment; the Argument paper. I didn't get one from you. Did you submit one. I am currently grading papers and cannot find that paper. I will continue to 1001<0

'Dr. Prince Attoh
Associate Professor and Director Organizational Leadership Ph.D program
"Department of Social Sciences
"University of (Maryland Eastern Shore
1106 Spaulding JfaC(,-^C
Princess Anne, [Maryland 21853
'TOC 410651-836.1 fax 410-65.1-84.18
Entails: _paattoh@u mes.edu

From: Wells, Berri A [mailto:WellsBA1@state.gov]
Sent: Tuesday, October 02, 2018 4:14 PM
To: Attoh, Prince A <paattoh@umes.edu>
Cc: abettercoach@gmail.com
Subject: FW: Article Critique Format

From: Wells, Berri A
Sent: Tuesday, October 2, 2018 12:36 PM
To: 'paattoh@umes.edu'<paattoh@umes.edu>
Subject: Article Critique Format

Hello Dr. Attoh — hope you are well!
Thank you for your feedback on the ciritique that I provided as well as, an opportunity to discuss.

*[handwritten margin note:]* The opportunity did not materialize as Dr. submitted the graars the very next day, before we had a chance to discuss.

ell as, an opportunity to discuss. discuss.

I am flexbile regarding meeting place, me an location.    e can meet in person this weekend or over the next few days via phone or zoom. Let me know your preference and availability.

Needless to say, your coments got my attention. Knowing that you place a premium on following directions, I reflected on the instructions and guidelines that I followed and wondered about the source of the disconnect between what you were expecting and what I provided. Please see the attachment as this is what I used to guide my content.

Bottom line, knowing how to write an empirical article is part of my development and once I am clear, I will re-submit.

All the best,

Berri

## Wells, Berri A

| | |
|---|---|
| From: | Wells, Berri A |
| Sent: | Wednesday, October 3, 2018 2:16 PM |
| To: | [1] Attoh, Prince A[1] |
| Subject: | RE: Article Critique Format |

Hello Dr. Attoh thank you for asking. I was not able to complete the paper and I am working on it now. The rental that I decided on, fell through and I had to find another property, which I did. Having to shift gears on such short notice was a stressful distraction. I was going to touch base but decided against it and figured I would just turn it in.

*Explanation of my housing emergency.*

**From:** Attoh, Prince A <paattoh@umes.edu>
**Sent:** Tuesday, October 2, 2018 5:30 PM
**To:** Wells, Berri A <WellsBA1@state.gov>
**Subject:** RE: Article Critique Format

Hello Berri

And yes, we can further discuss the critique evaluation. However, in my last email, I was referring to the last assignment; the Argument paper. I didn't get one from you. Did you submit one. I am currently grading papers and cannot find that paper. I will continue to look.

*Dr. Prince A. Attoh*
*Associate Professor and Director Organizational Leadership Ph.D program*
*Department of Social Sciences*
*University of Maryland Eastern Shore*
*1106 Spaulding Hall*
*Princess Anne, Maryland 21853*
cess {Anne, {Maryland 21853
;T/eL 410-651836.1 fax 410-651-8418
"Email? paatto/if@umes.ediu

From: Wells, Berri A mailto:WellsBA1@state. ov]
Sent: Tuesday, October 02, 2018 4:14 PM
To: Attoh, Prince A < aattoh umes.edu>
Cc: abettercoach mailgcom
Subject: FW: Article Critique Format

From: Wells, Berri A
Sent: Tuesday, October 2, 2018 12:36 PM
To: paatoh@umes.edu' <paatoh umes.edu> Subject:
Article Critique Format

Hello Dr. Attoh — hope you are well!
Thank you for your feedback on the ciritique that I provided as well as, an opportunity to discuss.



# ORLD 601 Evaluation

1 message

Attoh, Prince A <paattoh@umes.edu>
To: Berri Wells <abettercoach@gmail.com>

wed, Oct 3, 2018 at 11 :58 AM

Good morning Berri

Will you please give me a call at your earliest convenience to discuss your 601 evaluation. It is curial that you call me today.

Dr. Attoh

Dr. Prince Attoh

Associate "Professor and Director Organizational Leadership "Ph.D program

Department of Social Sciences

"University of Maryland Eastern Shore

1106 Spaulding fffaCC

Princess Anne, filaryCand21853

Tec 410-651-8361 fax 410-651-8418
"Email: paattoh@umessedu

CONFIDENTIALITY NOTICE: This message may contain confidential information intended only for the use of the person named above and may contain communication protected by law. If you have received this message in error, you are hereby notified that any dissemination, distribution, copying or other use of this message may be prohibited and you are requested to delete and destroy all copies of the email, and to notify the sender immediately at his/her electronic mail.