IN THE CIRCUIT COURT FOR SOMERSET COUNTY, MARYLAND

JANE DOE, INDIVIDUALLY
AND IN HER OFFICIAL CAPACITY
AND ALL OTHERS KNOWN OR UNKNOWN
PAST, PRESENT AND FUTURE STUDENTS
AT MD UMES AND OR ANY OTHER MD HBCU'S
OF THE UNIVERSITY OF MARYLAND SYSTEM
WHO HAVE BEEN, CURRENTLY AND/OR
POSSIBLE VICTIMS OF **DIRECT** RACE, SEX, AGE, GENDER
AND OTHER ACTS OF DISCRIMINATION & BIASES
4109 CUTTY SARK RD.
BALTIMORE, MD 21220
EMAIL:psychdotor101@gmail.com

JANE DOE a.k.a. BERRI A.WELLS
**2019 MARYLAND GOVERNOR'S SERVICE AWARD WINNER**
7414 RIVERHILL RD.
OXON HILL, MARYLAND 20745
(301)905-7160
EMAIL:abettercoach@gmail.com

BERRI A. WELLS
7414 RIVERHILL RD.
OXON HILL, MD 20745
(301)905-7160
EMAIL:abettercoach@gmail.com

PLAINTIFF(S)

Vs

CASE NUMBER:_____
**VERIFIED COMPLAINT/DEMAND FOR TRIAL BY JURY**

**SERVE**:
STATE OF MARYLAND
ATTORNEY GENERAL BRIAN FROSH
200 St. Paul Place
Baltimore, MD 21202

**SERVE ON:  FOR**

**1). STATE OF MARYLAND**
**Larry Hogan, Governor of MD**
100 State Circle
Annapolis, Maryland 21401-1925

**2). STATE OF MARYLAND**
**MD GENERAL ASSEMBLY/MD House Speaker-**
**Hon. Adrienne A. Jones, and ALL other Members Known or Unknown**
90 State Circle
Annapolis, MD 21401-1925

**3). University of MD College Park**
**UNIVERSITY SYSTEM OF MARYLAND**
**Hon. Wallace Loh, President**
**and/or Successor Darryll J. Pines**
1101 Main Administration Bldg.
College Park, MD 20742

**4). University of Maryland-College Park**
**University System of Maryland**
**Attn: Board of Regents and Board of Trustees**
1101 Main Administration Bldg.
College Park, MD 20742

**5). Maryland Higher Education Commission**
**MD Attorney General, Consumer Protection Division**
200 St. Paul St.
Baltimore, MD 21202

**6). Associate Director of Career and Workforce Education**
**Maryland Higher Education Commission**
6 N. Liberty Street, 10th Floor
Baltimore, MD 21201

**7). Office of the Secretary**
**Maryland State Department of Education**
200 West Baltimore Street
Baltimore, MD 21201-2595

**8). State of Maryland**
**University of MD College Park**
**Office of the General Counsel**
2117 Seneca Bldg.
College Park, MD 20742

**9). University of MD-College Park**
**Office of Civil Rights & Sexual Misconduct**
3101 Susquehanna Hall
4200 Lehigh Rd.
College Park, MD 20742

**10). University of MD-College Park**
**Ombudsman Officer**
**Hon. Mark A. Shayman**
2117 Seneca Bldg.
College Park, MD 20742

**11). Office of the President-UMES/MD HBCU**
**Dr. Heidi M. Anderson, President**
11868 College Backbone Rd.
Princess Anne, MD 21853-1299

**12). Dr. Prince Attoh, Program Director, Instructor, Student-Advisor**
**UMES/MD HBCU**
11868 College Backbone Rd.
Princess Anne, MD 21853-1299

**13). Ms. Cheryl Duffy, REGISTRAR**
**UMES/MD HBCU**
11868 College Backbone Rd.
Princess Anne, MD 21853-1299

**14). Dr. LaKeisha Harris, Interim Dean-Graduate School**
**UMES/MD HBCU**
11868 College Backbone Rd.
Princess Anne, MD 21853-1299

**15). Jason Casares, Dir.**
**UMES/MD Office of Institutional Equity & Compliance**
11868 College Backbone Rd.
Princess Anne, MD 21853-1299

**16). Dr. Joyce Bell, Interim Chair-DSS**
**UMES/MD HBCU**
11868 College Backbone Rd.
Princess Anne, MD 21853-1299

**17). Dr. Marshall Stevenson, Dean**
**UMES/MD HBCU**
11868 College Backbone Rd.
Princess Anne, MD 21853-1299

**18). Dr. Boyd**
**UMES/MD HBCU**
11868 College Backbone Rd.
Princess Anne, MD 21853-1299

**19). State of Maryland**
**STATE TREASURER**
**State Treasurer, Nancy Kopp**
80 Calvert Street, Room 109
Annapolis, MD 21401

**20). Department of Budget & Management**
**Central Collections Unit**
300 W. Preston Street
Baltimore, MD 21201

<u>SERVE:</u>
**1). U.S. ATTORNEY AND U.S. ATTORNEY GENERAL & OFFICES**
36 S. Charles St.
Baltimore. MD 21201

<u>SERVE ON:</u>

**2). U.S. Department of Education**
**Office for Civil Rights**
400 Maryland Avenue, SW
Washington, DC 20202-1100

**3). Office for Civil Rights, Philadelphia Office**
**U.S. Department of Education**
100 Penn Square East, Suite 515
Philadelphia, PA 19107-3323

4). **U.S. DEPARTMENT OF JUSTICE**
950 PENNSYLVANIA AVE., N.W.
WASHINGTON, DC 20530-0001

**Middle State Commission BELOW –Separate** Defendant

**1). Middle States Commission on Higher Education**
**Attn: Hon. Dr. Heather Perfetti, President Elect**
3624 Market Street, Suite 2 West
Philadelphia, PA 19104

ALL DEFENDANTS ARE BEING SUED IN THEIR INDIVIDUAL AND OFFICIAL
CAPACITY

## PRELIMINARY STATEMENT

1). The Plaintiffs assert that this Honorable Court has subject matter jurisdiction over the

persons, and parties included in this petition. This Complaint is to bring an action to

redress acts, conduct and/or practices of various forms of discrimination against the

Plaintiff and others. This Court has jurisdiction over this case and parties as to the acts

and conduct described herein violated or violates The Civil Rights Act of 1866, The Civil

Rights Act of 1964, Age Discrimination Act of 1975, Article 24 of the Maryland

Declaration of Rights, Article 26 of the Maryland Declaration of Rights, MD CONSUMER

DEBT COLLECTION ACT, MD CONSUMER PROTECTION ACT, Title 42 USC 1981,

Title 42 USC 1983, Title 42 USC 1985, Title 42 USC 1986, Title VI of the Civil Rights

Act of 1964, Title IX and because some of the Defendants are recipients of Federal

financial assistance and educational services, and therefore is subject to Title IX of the

Educational Amendments of 1972, 20 U.S.C. 1681-1688, and MD Criminal Code, 7-

302, Computer Crimes, Violation of the 5th, 8th Amendment Cruel and Usual Punishment

and 14th Amendments., were all under the color of state and federal laws or statutes in

further violation of the equal protection laws. Title IX prohibits providers of Federal

5

financial assistance from discriminating on the basis of sex in educational programs or activities. Additionally, it is unlawful for a school and/or staff members and to officials to retaliate against any individual (student) because he or she filed a complaint, opposed any unlawful practice, or testified or assisted in an investigation or proceeding. **"Governor Hogan I am hurt by the way I was mistreated." I exhausted ALL of my administrative remedies.**

2).                         **PROCEDURAL AND FACTUAL BACKGROUND**

**STATEMENT OF THE CASE AND FACTS**
**COMPLAINT AND COUNT ONE**

3).      **COME NOW** the Plaintiff(s) Jane Doe, and Berri A. Wells, a **2019 Maryland Governor's Service Award Winner.** And John Doe, INDIVIDUALLY AND IN HER OFFICIAL CAPACITY AS A FORMER STUDENT AND ALL OTHERS KNOWN OR UNKNOWN, PAST, PRESENT AND FUTURE **FEMALE** STUDENTS AT the University of Maryland Eastern Shore ( UMES) AND OR ANY OTHER University of Maryland Historical Black College or University (MD HBCU'S) WHO HAVE BEEN, CURRENTLY AND/OR POSSIBLE VICTIMS OF **DIRECT** RACE, SEX, AGE, GENDER AND OTHER ACTS OF DISCRIMINATION and BIASES, you will find my Complaint with attachments, exhibits and evidence to support **each** claim as set forth herein and below, and respectfully sue State of MD Defendants 1-18, and the United States Defendants 1-4. In addition, the Middle States Commission on Higher Education, is a separate and independent Defendant  and for the cause of action state as follows:

**CAUSES OF ACTION**

4). Beginning on or about the 7th day of September, 2018, the Defendants, individually, separately and/or jointly, did knowingly, willingly, purposely, negligently,

6

commit some acts or conduct with malice, deliberate indifference, did commit and/or caused, allowed to cause and/or authorize malicious mischief to occur against the Plaintiff a Black/African-American woman of color 55 year of age and others before, during and after her attendance at MD UMES, was denied equal educational opportunities on the basis of sex, gender, race, color, age and nationality through promoted acts of discrimination by several of the Defendants mainly Defendant Dr. Prince Attoh, a professor at UMES for the designed purpose of executing the scheme to **deny** Black women any opportunity, by illegally and unlawfully perpetrating discriminatory policies and practices to ensure Black female students would fail without any procedural safeguards, due process and equal protections under the law.

**The Civil Rights Act of 1866, The Civil Rights Act of 1964, Age Discrimination Act of 1975, Article 24 of the Maryland Declaration of Rights, Article 26 of the Maryland Declaration of Rights, Title 42 USC 1981, Title 42 USC 1983, Title 42 USC 1985, Title 42 USC 1986, Title VI of the Civil Rights Act of 1964, Title IX and Federal financial assistance and educational services and therefore is subject to Title IX of the Educational Amendments of 1972, 20 U.S.C. 1681-1688, and MD Criminal Code, 7-302, Computer Crimes, Violation of the 5th, 8th Amendment Cruel and Usual Punishment and 14th Amendments, were all under the color of state and federal laws or statutes in further violation of the equal protection laws.**

## Protection from Harm and Discrimination

5). UMES by its own policies and practices described herein subject Plaintiff(s) to a substantial risk of serious harm, cruel and unusual punishment by failing to protect female Black students from class room violence, insults, demeaning language and verbiage from, Dr. Attoh, who is male. He, used his professional title with great energy to guarantee that targeted black Female students would fail his course and subsequently be dismissed from the doctoral program. UMES ORLD. Like a modern day former Gov. George C. Wallace, Dr. Attoh, and Dr. Harris, the Dean of Graduate

Studies through the years, perpetuated policies and practices, that continue to deprive Plaintiff of her rights that are secured by the United States Constitution under the 5th, Eighth and 14th Amendments and federal laws.

6). Defendants have been and are aware of all of the deprivations complained of herein, and have condoned or have been deliberately indifferent to such conduct.

7). Defendants Number 1, 2, 3, 4, 5, 7, 8, 9, 11, and the U.S. Department of Education, the U.S. Justice Department, and the **Middle States Commission of Higher Education**, the Primary Accreditation Authority, failed and willfully neglected to oversee UMES, all MD HBCU's and the entire University of Maryland facilities and institutions as to programs, policies, practices and procedures. The lack of oversight ensured targeted UMES students were victimized by discrimination  and policies that favor or protect white students attending both the predominant white institutions (PWI) of the University of Maryland system as well as, white students attending UMES.  UMES Black Females suffer without a safety net, as personnel and policies between the PWI's and the HBCU's vary immensely.  The white students, regardless to location are aided and supported and the Black students at UMES lose while received no such aid or assistance.

## **BACKGROUND**

8). For the record, there are at least 15 other former UMES students with identical or similar complaints of Plaintiff, Jane Doe.  They too were victimized by discriminatory, and capricious grading practices of the primary perpetrators, Defendant  Dr. Prince Attoh and his accomplice Dr. Lakeisha Harris. In 2018, during the Christmas holiday,

8

the Saturday before Christmas, on December 22, 2018, UMES sent Jason Casares Director of the UMES Office of Institutional Equity & Compliance to conduct emergency, in-person, one-on-one interviews with victims of Dr. Attoh and Dr. Harris. The investigation was initiated as the result of two African-American female students, both over the age of 40, from the class of 2017, who alerted UMES administration of grading irregularities and communicated with the Administration and alerted them to the problem by creating a fictitious email address to protect their anonymity. Similar to other victims, The Plaintiff followed through with her interview and met Defendant Jason Casares on December 28, 2017. Topics of discussion during the interview addressed:  grading irregularities, discriminatory comments and treatment exhibited toward, African-American female students and the topic of inappropriate sexual mis-conduct on the part of Dr. Attoh.   During the interview, Plaintiff Wells truthfully answered questions, reviewed the documentation supporting her observations and provided a hard copy of evidence in the form of her original Complaint to UMES .

### 9). I. The Four Components of the Systematic Removal of African-American Female Students from the (ORLD) Program of UMES

> **Step 1**-Withholding grades and denying notification until the end of the course makes it impossible for students to redo, or respond before final grades are submitted.
>
> **Step 2**-Capricious Grading.  In conjunction with late notification, capricious grading including not giving students credit for assignments that were in fact submitted, further ensuring a failing grade.
>
> **Step 3**-Immediate Removal from the Program.  Late notification and capricious grading assure students will fail and per UMES policies, are immediately removed.
>
> **Step 4**-Saddling the Student with Debt. UMES after implementing the Scheme, turn the students' account over to the Maryland Central Collection Unit.

Graduate courses of the ORLD do not follow a traditional semester or trimester format.

But rather, each course occurs over the span of two-weekends each month: Fridays

5pm – 9pm; Saturdays and Sundays 9am to 5pm. In September 2018, the first course

of the ORLD Program was course 601-Theories of Organizations and was held the first

and the third weekends during the month of September 2018.  There were a total of

eight (8) assignments: six (6) Written Papers, one (1) Group Project-Oral Presentation

and a Final Exam. **Exhibit C**-Table of Grades, provides an overview of assignments,

the due dates, the submission dates and the dates Plaintiff Wells received her grades

from Dr. Attoh. As a result of the compressed weekend format, obtaining timely

feedback and grades from instructors is critical to a students' success as UMES has a

zero tolerance for failing grades see page 83-of the UMES Student Handbook.  Unlike

UMUC, UMES students are not provided up to three opportunities to resubmit each

paper, nor are UMES students offered any support, assistance or resources to address

deficiencies. **Exhibit P**- UMUC Syllabus.  Withholding grades in any academic setting

disadvantages students.  In a compressed format, withholding grades guarantees

students failing the course which leads to automatic dismissal from the UMES program.

In addition to Dr. Attoh informing Plaintiff Wells of her first graded assignment 27 days

following the on-time submission, Dr. Attoh claimed that she failed to submit the

assignment and she received a zero.  On October 3, 2018 when Plaintiff Wells became

aware of the zero, she provided emails and screen shots showing proof of the

submission of the assignment to Dr. Attoh.  He refused to re-consider the failing grade

and to give her the credit for the assignment that she deserved.

10). **Step 1/Withholding Grades and Denying Notifications Until the Course Has Concluded.  Along With Not Giving Credit for Assignments That Were Submitted**-

Plaintiff Doe, for the first course of the ORLD Program, Theories of Organizations

Course ORLD 601 submitted the first assignment on time: September *7, 2018*.

Date Grade Received: October 4.

Grade Received 0/10.

Turnaround Time: 27 days

Course ORLD 601

Total number of assignments: eight (8)?

Turnaround Time (from date of submission to the date Dr. Attoh provided grades):

Assignment number 1:  27 Days

Assignment number 3:  14 Days

Assignment number 4:  21 Days

On average, fifty percent of the graded assignments had a turnaround time of 21 days. The only instances that Dr. Attoh provided timely and prompt feedback were for in-class presentations.   Two assignments fall into this category, or 1/3 of the assignments:

| The | Turnaround | Time | for | In-Class | | Presentations: |
|-----|-----------|------|-----|----------|-----|---------------|
| Assignment | Number | 2: | | Same | | Day |
| Assignment | Number | 6: | | Same | | Day |

See **Exhibit C** – ORLD Table of Grades. **CHRONOLOGY**

**I. Table:  Grade Submission Dates-Exhibit C**

**II. Emails:  Attachments/Exhibits B:**
a). October 2, 2018, time: 10:23.  I offered to meet on October

3rd or 4th, 2018. Dr. Attoh informed me with was too late, Attoh had already submitted grades.

b). On October 4, 2018,      the Plaintiff received Termination and mail from Defendant Dr. LaKeisha Harris, Interim Dean of the UMES Graduate School, informing the Plaintiff Wells, that her admission to the doctoral program at UMES was terminated effective

11

October 4, 2018, and she was no longer in good academic standing. The email also included her FINAL GRADE and the points assigned for each assignment. (See **Exhibit A**)

c). Also on October 4, 2018 at 11:05 am,    Plaintiff Wells sent Defendant Dr. Prince Attoh an email addressing several issues and concerns that she had with his Final Exam Evaluation and Grade Calculation. This was based upon Defendant Attoh email to me of October 4, 2018 at 11:05 am. **(See Exhibit B)**    October is the same time period of my dismissal and when Dr. Attoh told me to leave his class, which I did not find Defendant Attoh had any such authority to do so whether challenges, appeals or grievances were about to be filed or filed, no such authority was located in the policy exist. Once again, Defendant Attoh over-reached a power grabbed twice, doing an act outside the scope of his job description and legal authority.

d). For the record, the Plaintiff submits that correspondence in her Complaint to **(See Exhibits B, C, D, E**) in further support of Plaintiff(s) email to Defendant Attoh.

e). The Plaintiff does hereby adopt and incorporate each and every statement, claim and issues presented in **Exhibits A, B, C, D**, and **E,** paragraphs 1-4, and her Appeal and Complaint dated October 9, 2018, **without** having to reassert or re-allege those claims attached to this Complaint, as evidence in support of the entire Complaint in this matter.

f). **Exhibit D**, provides the Plaintiffs Complaint and all Defendants an overview and Chronology beginning September 7-October 2018, which breaks down my issues, concerns and problems with grades, comments made to or about African American

blatant, policies denies Plaintiff due process of law, no Notice prior to dismissal, alleged Sanctions imposed without warning, were all expressed to Defendant Dr. Prince Attoh, with my appeal and complaint, with the requested relief sought.

11). According to Dr. Attoh on October 4, he informed me that he had not received the very last assignment that was required from the course. Although I emailed this assignment to Dr. Attoh and he acknowledged receipt, he refused to give me credit for the assignment, stating that I had failed to submit the paper.

12). The 2nd paper was due and submitted on time: September 21, Date Grade Received, Grade Received 5/10 on October 4, Turn Around Time-14 days.

13). The 3rd paper due and submitted on time: September 14. Date Grade Received October 4, Grade Received 8/10. Turn around time-21 days.

14). According to Dr. Attoh records, by the 3rd assignment, at the outset of the course, Plaintiff Wells was failing the course. In his capacity as her instructor, and as he Department Chair and as her advisor, Dr. Attoh ws obligated and expected to inform her ɩ of her standing in the class.

15). **Part-2 A). Capricious Grading-** Dr. Attoh's grading was unduly influenced by race, gender, sex, and age. The 2nd highest score that I received was 19/20 for a Group project that I was partnered with a white male student who was younger than I. Although we completed and submitted the assignment on time, our work did not merit a near perfect score. Being partnered with the white male student was helpful to me but for the wrong reason.

13

16). **Part-3 Immediate Removal/October 4th-Letter from Dr. Harris**

Unfair policies at UMES disadvantage students, unlike multiple chances students at UMD-College Park are provided with:

a. Syllabus that outlines steps to take when failing

b. Opportunities to re-write each paper 3 times

c. Resources made available to assist.

d. Syllabus from UMGC

17). **Part 4-Saddled with Debt**

**Exhibits T, U, V, AA, and BB.**

**Part 2B-Capricious Grading**-The 3rd assignment, the 2nd paper of the course, Plaintiff Wells received 5/10. Dr. Attoh's rational was that Ms. Wells had failed to follow the rubric that Dr. Attoh had provided. Although Ms. Wells concedes that she did not follow the rubric, she points out that she had followed the template which Dr. Attoh had also provided in the instructions. He had provided students with two options to follow: the rubric or the template. The 2nd reason Dr. Attoh provided, related to the gravity of the empirical article that Ms. Wells selected. In the Defendants response regarding the failing grade, Dr. Attoh stated the following…. "You did not select an appropriate empirical article for the assignment" and as a result, I received a failing grade.

**III. Defendants Violated UMES Appeal of Dismissal Policies and Procedures By Both Defendants UMES, Dr. Harris and Dr. Attoh**

14

18). Attached as **Exhibit F**, is the above referenced UMES policy and procedures for

Graduate Student –Dismissal and Appeals. "**Division of Academic Affairs School of Graduate**

**Studies Appeal of Dismissal/Discontinuation Policies and Procedures**  A. Purpose 1. These

procedural guidelines are designed to provide a means for the resolution of appeals by students

who have been dismissed from the School of Graduate Studies because of poor academic

performance or progress. Students dismissed from any graduate program **will be given due**

**process**. B. Procedure 1. A program director may recommend dismissal of a graduate student

for failure to meet the program's standards of academic performance or progress. A student

shall be given written notice of dismissal by the School of Graduate Studies stating the reasons

for the dismissal. 2. Within five days of the date of the notice, a student who disputes the

reasons for the dismissal must contact the department chair, the graduate program director

and advisor for informal discussion of the situation. 3. If a student remains dissatisfied after the

discussions required by paragraph 2, the student may file a formal appeal of the dismissal, no

later than 10 days after the discussions. The appeal must be made in writing in the form of a

letter to the Dean of the School of Graduate Studies and include (a) in detail, the basis for the

appeal; (b) the date the student was advised of the dismissal; and (c) a summary of the informal

discussions held pursuant to these procedures. An appeal also should be supported by any

attachments necessary to explain the issue and by an attachment giving the names and contact

information (i.e., campus addresses, telephone numbers) of persons with relevant information.

An appeal may be supported by written statements from other persons, provided such persons

are identified in the statement and contact information is included. 4. Upon receiving an

appeal, the Dean shall forward a copy of it to the faculty advisor, the program director and

department chairperson(s) of the program from which the student is dismissed. 5. The Dean

shall review each dismissal appeal and shall dismiss the appeal if: (a) The student has submitted

the same or a similar complaint through any other formal grievance procedure; (b) There are no

procedural grounds or other evidence supporting the appeal; (c) The appeal was not filed with

the Dean within 10 days of the student's notice of the dismissal; or Early Childhood Research

Center, Suite 1137 Princess Anne, MD 21853 Tel: (410) 651-6507 Fax: (410) 651-7571 If the

appeal is dismissed, the Dean shall notify the student, the chairperson and the graduate

program director in writing. 6. If an appeal is not dismissed by the Dean within five days of

receipt of the appeal, the program involved shall submit a reply to the appeal within 10 days of

the program's receipt of the appeal. 7. The Dean shall submit the appeal of the student and the

response of the program involved to the Graduate Council Appeals Committee (GCAC). The

GCAC will hear statements from the student and the program. 8. The committee shall meet

privately at the close of the fact-finding meeting to decide whether a majority believe the

evidence supports the allegation of arbitrary and capricious grading beyond a reasonable

doubt. 9. Following deliberations, the Committee shall notify the Dean in writing of the decision

within five days of the meeting. 10. The Dean shall issue a decision in writing to the student, the

faculty advisor, the chairperson and the program director within five days after receiving the

recommendations of the GCAC or the request to waive GCAC review. 11. GCAC review may be

waived upon the written request of the student and the program. C. Authority of the

Committee The decision of the committee is final, and binding on both parties. The decision

may not be appealed to any other body within UMES or the University of Maryland System. D.

Implementation The Graduate Dean shall be responsible for implementing the decision of the

committee. E. Schedules Times stated in these procedures will be shortened, if feasible, when

an appeal is relevant to an advancement decision. The Dean may extend or shorten the

deadlines stated in these procedures when circumstances do not permit student, faculty or

administrative actions within the specified time frames. Requests by the faculty or student to

extend or shorten these deadlines must be in writing, but the Dean may not require the GCAC

to decide an appeal within a certain time. The Dean's decisions with respect to scheduling shall

be in writing and shall be final. Early Childhood Research Center, Suite 1137 Princess Anne, MD

21853 Tel: (410) 651-6507 Fax: (410) 651-7571 N.B. Adopted from the UMBC School of

Graduate Studies dismissal policy." These Defendants **did not** follow nor comply with ^any^ parts

or provisions of the procedures. Clearly violating the Plaintiff Wells rights to procedural due

process. Plaintiff Wells did not receive all the protections required under the policy in her case,

appeal and complaint. (See **Exhibit F**)

18). Defendant Harris or Graduate School Dean Harris failed to comply with the dictates of

**Exhibit F**, when she power played all the positions, including those of the Graduate Council

Appeals Committee (Chair) who by policy is the *FINAL* decision maker and authority, were

**never** given the opportunity to take part in Plaintiff Wells appeal, as Defendant Harris like

Defendant Attoh are both members of the (GCAC), and thus conflicts occurred, and

what will be described later, any action by Defendant Harris was illegal and in direct violation of

UMES policy, as her actions were to cover-up for Defendant Dr. Attoh. (See **Exhibit G**/**Graduate**

**Council Members List**)

19). At UMES and as it relates to the discriminatory acts, conduct to conflicts of interests, as to the Appeal policy and procedures, the policies and procedures described were and continue to be unfair, discriminatory, unconstitutional, defective process to Plaintiff Wells and other Black Female students ever affected while attending Graduate School and UMES, when Defendant Dr. Attoh, played ALL of the initial roles, but department chair as to the appeal process, thus making it impossible for Plaintiff Wells to have fair notice, review, **without** . . hearing every being held, in further violation of UMES policy and procedures. This Complaint goes directly to the heart of due process and equal protection violations in too many ways. The Plaintiff **never** had any meetings with anyone as required by policy. Defendant Harris, the Dean never submitted anything to the (GCAC) she chairs. The Plaintiff shall ask the Court to rule and declare that the actions of both Defendants Attoh and Harris were illegal, unlawful to unconstitutional and violated the Plaintiffs right to due process and UMES policy were never followed.

## IV. Arbitrary and Capricious Grading-Violations Withholding and Denying Credit for Assignments

20). **Exhibit H,** further describes the UMES policies on Arbitrary and Capricious Grading problems involving Plaintiff Well and Dr. Attoh.

a). Attached as **Exhibit I,** is the copy of an email and letter from Defendant Harris dated December 4, 2018, that she **self-ruled** and informed me, Defendant Dr. Harris had rescinded my dismissal from the program effective that day, December 4, 2018. **NOTE: There are NO past correspondence letters or information from any Defendant reflective of the Appeal, Complaint and Grievance process and procedures being followed.**

18

b). On or about the 14th day of December, 2018, pages 3, 4, 5, and 19, of **Exhibit J** describe in great detail in Plaintiff Wells **"*Complaint and Appeal"*** to UMES and Defendant Jason A. Casares of the UMES Office on Institution Equity and Compliance Investigator who interviewed me and several Black Female students who were victims of UMES, Dr. Attoh and Harris discriminatory schemes.

## V. UMES Compliance & Discrimination Policy Section Incomplete

21). It has been discovered Defendants at UMES Compliance Policy, provides the student NO information or directions of what the Office of Institutional Equity and Compliance does or the Plaintiffs has a right to notice which is not provided, thus the Plaintiff and other students of color rights to due process of law and equal protection are and were violated and infringed upon by UMES, staff and officials under this section are not defined. (See **Exhibit L**)

22). On December 27, 2018, Plaintiff Wells sent ALL UMES Defendants an email seeking to Amend and Supplement    Complaint for Civil Rights, Discrimination Violations & Request For Investigation With Action Plan-**COVER LETTER**. Plaintiff never heard back from the Defendants as to what is marked as **Exhibit K**.

## VI. COMPLAINT UPDATE-TO Defendant Jason Casares
## Situations that Prompt the Need for Policy Changes-Addressed

23). On March 1, 2019, and May 29, 2019,  Plaintiff Wells sent Defendant Jason Casares of Institutional Equity and Compliance, the attached emails, and letters Updating her Complaint with that UMES office, of the need to change, modify and upgrade various policy voids, that

19

keep students like me Berri Wells at a total disadvantage compared to students at the

predominately white institutions of the University of Maryland System. (See **Exhibit-M**)

**VII. Plaintiff Wells Follow-up Complaint, and Email to**
**Jason Casares of June 24, 2019-Appeal Status and Illegal**
**To Unauthorized Grade Tampering-From F to W-IS CRIMINAL**

24). On June 24, 2019, the Plaintiff sent Defendant Jason Casares another email complaining

about not receiving any correspondence from any Defendant of UMES as to her appeal,

grievances, of 8 months, and now notification that someone at UMES illegally gained access to

my student record, changed an **F to a W**, without my knowledge or notice. At no time have or

did I withdraw from the program at UMES. MD Criminal Code 7-302, et. seq. prohibits the illegal

and unlawful access to my personal records to commit a fraud by anyone. **This act along**

**requires a criminal investigation by state and federal law enforcement to investigate who**

**changed by grades, and who authorized the changes which were illegal, and sounds like an**

**attempt to cover-up various Defendants tracks in this case to lower or hide risk and fault.**

**(See Exhibit N)**

**VIII. ADDITIONAL COMPLAINTS TO DEFENDANT DR. HARRIS**
**Regarding Discriminatory Practices at UMES-Threats of CCU Collections**
**By Bursar Office, Illegal Grade Changes/Tampering & Policy Changes Requested**
**ORLD Removal From The Program and Unresolved ORLD Fall 2019 Course Schedule Issues**

25). On June 25, 2019, **July 17, 2019 and August 29, 2019-Exhibit P**, the Plaintiff sent yet

another email, inquiry, complaint and update request to Defendant Harris and UMES to no

avail. Plaintiff Wells once again addressed and attempted to reach out to the Defendants in

hopes of resolving many issues that remained opened without any answers or responses to

date. The Defendants Dr. Attoh and UMES as described in that email message actively and

continue to unlawfully engage in practicing discriminatory grading practices that harmed the Plaintiff and many others to date, **must be** halted by the Courts. **Clearly, Defendant Harris, did not contact nor consult with the General Counsel of the MD Attorney's Office, for the institution.**    (See **Exhibit 0-1 & 2 and Exhibit P**)

## IX. September 18, 2019-Letter from Defendant Dr. Harris Informing Plaintiff Wells was DISMISSED from the program in error.

26). Enclosed as **Exhibit Q**, a letter and email from Defendant Dr. Harris who **admitted,** after reviewing policies and procedures for the ORLD program determined Plaintiff Wells was DISMISSED in error.

## X. Reinstatement Plan Letter from Defendant Dr. Harris Dated September 26, 2019

27). Defendant Dr. Harris emailed the Plaintiff Wells a letter regarding reinstatement, that failed to address the unresolved issues and problems to date with the entire process that have not been corrected nor cured. (See **Exhibit R )** Without, the Defendants and officials of the Graduate School Council taking part in the decisions of Plaintiff Wells appeal, grievances etc., this letter or correspondence fails to have the force and effect of the policy, and cannot be taken as true, nor legally accurate, as Defendant Harris was without legal authority on her own to make ALL the decisions and decide Plaintiff Wells case, **without** the right, power, authority nor jurisdiction to do so on her own. **This ruling along with all others issued by Defendant Harris cannot legally stand as valid orders, judgments or instruments consistent with UMES policy and procedures.** (See also **Exhibit S-Email from Berri Wells to Defendant Harris**) The Plaintiff Wells continues to show through continuous emails and correspondence to the Defendants, of UMES, Harris and Attoh failure and refusal to comply and follow the dictates of

the UMES policy, rules, regulations, practices and procedures on Appeals, Grievances and

Complaints.

## XI. 28). <u>What a difference between UMES and UMUC.   Check out the syllabus?</u>

Here is my email and Cover Letter dated January 9, 2019 to UMES staff and officials on the issue and concerns of the syllabus differences of two University College facilities.

" Last fall with great excitement, I entered the Organizational Learning Doctoral Program at the University of Maryland Eastern Shore.  Following the completion of my first course, Organizational Theory, I learned that not only had I failed the course, per UMES policy; I was dismissed from the Program.  All of this without a conversation or any indication from the instructor who also happened to be my advisor, Dr. Prince Attoh.

During the process of researching and educating myself on available options, quite accidentally, while online, I came across the syllabus of the University of Maryland University College's Foundations of Doctoral of Management Program – Course Number:  DMG 600 Business Management Doctoral Program and was astounded at the desperate policies and practices between the two University of Maryland System schools.  In comparing the syllabi from UMES and UMUC, here are a few of the differences, taken directly from the syllabus:

1. "Faculty will strive to provide feedback within four (4) calendar days"
2. "Work may only be submitted up to three times"
3. "Information of receiving the Grade of "I"I"
4. "7 Day Incomplete"
5. "60 Day Incomplete"

Without any effort, UMUC students have substantial information about grading policies, available options at their fingertips by way of the course syllabus.  In contrast to UMES students, we have to struggle and grope for direction and accurate information on next steps and available options.

As a Historical Black College and University, UMES serves a specific population that is often overlooked and disregarded.  Instead of adhering to practices and policies that support and aide students, UMES specifically ORLD, systematically and routinely discriminates against its students and creates a hostile learning environment that dismisses students as a matter of course.  The Cohort of 2016 – 2017 began with 17 students and to date, three to four or – 15% remain.   In my cohort of 2018 – 2019, ten students completed the first course and eight students were advanced to the second course.

I am writing to express my concerns over the systematic practices of UMES ORLD that dismiss African American, female students disproportionately.  Practices including:  withholding grades Had I had only one of the provisions so freely offered at UMUC, I would not be in the position that I am in, fighting an uphill battle in the dark – with vague and conflicting information."

Berri Wells

**This BIG problem has to be corrected to benefit ALL University of Maryland System, and**

**MD HBCU's students regardless of race, sex, gender and age, or campus location.**

## COUNT 2
## COMPLAINT FOR FRAUD, UNJUST ENRICHMENT, CONVERSION, IMPROPER ACCESS TO A COMPUTER, SYSTEM, NETWORK AND SCHEME TO DEFRAUD AND ILLEGAL GRADE TAMPERING AND UNAUTHORIZED GRADE CHANGES

29). The Plaintiff hereby re-alleges each and every and any and all the allegations and claims set forth in Paragraphs 1-28 above and incorporates same herein by reference in further support of all the claims made in this Complaint. The Plaintiff Wells was verbally notified in May of 2019, by Defendants Jason Casares, that one of her grades had been changed from a **F to W**. Plaintiff Wells has never submitted any withdrawal letter to any of the Defendants at UMES.

30). These Defendants known or unknown made these grade changes without any written or other Notice to Plaintiff Wells, knowing the representations were illegal, false and Defendants knew the falsity of these grade changes to **F to W** would impact the Plaintiffs status at the time the grades were changed, by some staff member or official at UMES.

31). The Defendants sought to have the Plaintiff rely on the representations and fraud committed.

32). Plaintiff is informed and believes and thereon alleges that the Defendants known or unknown went to great lengths behind the scenes of the specific purpose to change and tamper with the Plaintiffs grade, that deprived the Plaintiff of a full educational opportunity at UMES, to harass and humiliate Plaintiff in her personal life, business, reputation, to defraud plaintiff, to subject the Plaintiff to public ridicule and embarrassment in the classroom, all with malice toward Plaintiff.

33). Plaintiff was and continues to be injured and suffers by the loss of her funds, loss of reputation, and an inability to compete in the market place without the use of being able to obtain her degree at UMES.

34). That the Defendants known and/or unknown owed the Plaintiff a legal duty to protect her school educational records from illegal and unlawful intrusion of staff and officials seeking to permanently injure the Plaintiff from further educational opportunities.

35). The acts and conduct described herein in **COUNT 2**, not only unfairly or unduly took advantage of Plaintiff Wells or commit wrongful acts in order to unjustly enrich and smear the Plaintiff at the expense of a degree and higher level educational opportunity, for which the Plaintiff applied to succeed.

36). The Defendants did knowingly, willingly, purposely, negligently to malice and fraudulent intent wrongfully converted, took, utilizing or managing the property and financial interests of the Plaintiff to their own self benefits and that of UMES and not the Plaintiff.

37). Such acts and omissions leading to the Defendant's unjust enrichment were the actual and proximate cause of harm to Wells.

38). The Defendants at UMES breached that duty on more than one occasion and such breaches described herein were the actual and proximate cause of further harm to Plaintiff Wells.

39). These acts and conduct of UMES staff and officials and many Defendants were malicious, fraudulent and oppressive, justifying an award of Punitive Damages so that Defendants and each of them will not engage in such conduct in the future and make an example of them.

24

Grade changing and illegal access to a student's private state record using a computer to falsify a grade is a crime.

## COUNT-3
40).        **BREACH OF CONTRACT AND CONVENANT OF GOOD FAITH**
**AND FAIR DEALING**

41). The Plaintiff hereby re-alleges each and every and any and all the allegations and claims set forth in Paragraphs 1-39 above and incorporates same herein by reference in further support of all the claims made in this Complaint. As stated above, the parties were in a contractual relationship with UMES and all Defendants and ALL Defendants by whatever names owed a duty to Plaintiff Wells to act in good faith and deal fairly with her. Such acts and omissions leading to the Defendant's breach of their legal duty to deal in good faith and fairly with Plaintiff Wells were the actual and proximate cause of past, present and future harm to Wells the Black *Female* student victim.

42). Defendants Harris and Attoh and others conduct was outrageous, with both Harris and Attoh acts being done with malice or bad motives or reckless indifference to the interests of Wells.

43).                    **COUNT 4**
**COMPLAINT FOR VIOLATION OF MD**
**CONSUMER DEBT COLLECTION ACT AND CONSUMER**
**PROTECTION ACT BY UMES AND MDCENTRAL COLLECTION UNIT**
**COLLECTING OR ATTEMPTIING TO COLLECT A DEBT**
**WITHOUT A LICENSE**

25

44). The Plaintiff hereby re-alleges each and every and any and all the allegations and claims set forth in Paragraphs 1-42 above and incorporates same herein by reference in further support of all the claims made in this Complaint, and says:

45). The Defendants at UMES on June 11, 2019 emailed the Plaintiff a debt letter claiming Wells owed $7,681.00 allegedly to UMES. The Plaintiff has never entered into any financial contract or other agreement with the Defendants or UMES as to her student loan. (See **Exhibit-T** )

46). Plaintiff student loan is with the U.S. Department of Education, exclusively.

32). On or dated July 1, 2029, without legal or just cause, and without any adequate Notice, the Defendants sent the Plaintiff Wells a debt Notice demanding the Plaintiff pay $8,986.77. (See **Exhibit U** )

47). The Defendants as described herein, are debt collectors as defined in MD Commercial Law 14-201(a)(b)(c), MD Business Regulations Section 7-101, when the Defendants a State agency and institution, when it engaged in unlawful debt collection activities in violation of MCALA.

48). A violation of the consumer debt collection act constitutes per se violation of the Consumer Protection Act Section 13-301(14)(iii), by collecting or attempting to collect debts not owed or knew had not incurred and by collecting a debt without First obtaining a license the requisite debt collection license.

49). The Plaintiff has obtained direct information but evidence that the Central Collection Unit, or CCU, State of Maryland Central Collection Unit, Maryland Department of Budget and Management,  and/or Maryland Central Collections Unit, **DO NOT** have the required license to engage, nor force hustle a consumers debt, **without** the required license. (See **Exhibit V** ) The debt or debts described herein **must be voided** by the state, immediately, as the State

Defendants have NO legal right, but license from itself, to collect any debts, knowing no debt is actually owed and no such debt could be enforced by the State Defendants as NO contract exist between the Plaintiff and Defendants for this alleged debt. (See also Section 14-202(8) of the Consumer Debt Collection Act. **The Plaintiff owes NO debt to the State of Maryland.**

50). The Defendants of the State of MD, have imposed and sent correspondence to the various credit bureaus of the false debt, and also within the various sate components in other attempts to collect this false debt bill, whereas the Plaintiff is being harmed further or likely to be harmed with her taxes being affected and monies taken, illegally, without a license.

51). The acts and conduct described herein and above violate not only my constitutional rights to due process under the law and the equal protection violations of the 5th, 14th Amendment to the Civil Rights Act of 1964, and separately The Civil Rights Act of 1866,The Equal Educational Opportunities Act of 1974, Title IX of the Educational Amendments of 1972, to include Title 20 USC 1681-1688, and Age Discrimination Act of 1975.  The Plaintiff and Complainant Berri A. Wells was the victim of harassment, gender, race, sex, age, color discrimination, as well as cruel and usual punishment at UMES, as there are without any doubt Title VI and Title IX violations committed by Defendants UMES, The University of MD System, Dr. Attoh, Dr. Harris and other UMES staff to officials subjects of this Complaint.

52). The policies, rules, regulations and guidelines of UMES, the subject of this issue, **and possibly** now also includes Morgan State, Bowie State, Coppin State as well as UMES. UMES and the three other historically black institutions policies, rules, regulations and guidelines on **"Arbitrary and Capricious Grading Policies in Courses, Doctoral, Dismissal, Student Rights / Responsibilities & Grievance Procedures"** are shameful to slave time, outdated to draconian

27

adversely affecting mostly black students at each of these HBCU's compared to the almost ALL white staff and student ratio within the UM Systems College Park and other campuses statewide. The University of Maryland System **grants** its mostly all white institutions and students, ***"Marquee Academic Policies"*** while the UM Systems HBCU's have NO second, third or fourth chances for its students, no protections or no safe guards, and no safety net for mostly black students at HBCU's compared to the largely white UM system campuses students enjoy, from Baltimore City/County to College Park. This conduct described is implicit bias and cuts deep racially against black students, as costs or saving money to cutting corners at MD HBCU's could be the motivating impact. Clearly, there is a pointed injustice towards all four MD HBCU's, in not treating or offering to treat ALL MD University system students whether at HBCU's and mostly white UM campuses in College Park, and Baltimore, the **same**.

**53). Below is a outline of UM System (College Park-Main campus) Graduate School Policies, that are stand-alone mostly "*white only*" policies on the subject of Arbitrary and Capricious Grading Policies, Dismissal and Grievance Procedures, that benefit mostly white students:**

(A). Arbitrary and Capricious Grading Policies In Courses and Doctoral Qualifying
(B). Formal Procedures
(C). Benefit of Ombudsman Officer and Office-Staff and Students benefit
(D). The Informal Appeal Process
(E). The Formal Appeals Process
(F). The Initial Evaluation Phrase
(G). The Dispute Resolution Phrase
(H). The Examination Committee's Response Phrase
(I). The Fact-Finding Phrase
(J). The Authority of the Appeal Committee
(K). The Appeal's Committee Decision

## GRADUATE STUDENT RIGHTS AND RESPONSIBILITIES
**GRIEVANCE PROCEDURE**

**(I). Limitations**
**(II). Informal Consultation**
**(III). Formal Grievance**

28

**(IV). The Appeal Process**
**(V).  General Rules Controlling Formal Grievance Procedures**

54). The same policies referenced herein above which most student protections, civil rights safe guards **do not** exist or apply at UMES, Coppin State, Morgan State and Bowie is like having land, and sand drowning, compared to the life rafts UM System schools at College Park and Baltimore provide to its students and staff.

55). Conflicts exist with UMES and other MD University Systems HBCU's institutions, with staff directors, officials, department chairs, and Chief University UMES Complainant setting on multiple boards to committees with multiple hats to decision making action or authorities over the affected students initial appeal, dismissal and/or grading issues, when presented to UMES staff.

56). Case in point, UM System at College Park have several policies in place in real time which eliminate staff holding multiple conflict roles over a student's complaint, grievance, appeals or dismissal involvement in the process. There should be NO great disparities between UM system mostly white campuses and UMES and HBCU's which are mostly black not enjoying the same protections as mostly white students at UM system campuses. The policies outlined below should be consistent and uniformed throughout the entire UM system institutions need be applied equally system wide, not spread apart because you are at UMES, Coppin State, Morgan State and Bowie, all black colleges.

57). All UM system campuses policies, rules, regulations on grading, dismissals, appeals, informal to formal complaints, grievances and rights to responsibilities should be for the "*equal*" benefit of any and all UM system students state wide and staff, without

discriminating against a black few, with UMES and the other three HBCU's giving mainly one shot, miss you are out.

## **REQUEST FOR RELIEF**

1.  Plaintiffs have no adequate remedy at law to redress the wrongs suffered as set forth in this complaint. Plaintiffs will continue to suffer irreparable harm and personal injury as a result of the unlawful acts, omissions, policies, and practices of Defendants, as alleged herein, unless this Court grants the relief requested. The need for relief is critical because the rights at issue are paramount under the United States Constitution and the laws of the United States.

2.  **WHEREFORE, Plaintiffs respectfully request that the Court**:

    a.  Adjudge and declare that the acts, omissions, policies, and practices of Defendants, and their agents, employees, officials, and all persons acting in concert with them under color of state law or otherwise as described herein are in violation of the rights of the Plaintiffs under the Cruel and Unusual Punishments Clause of the Eighth Amendment to the United States Constitution and federal law;

    b.  Preliminarily and permanently enjoin Defendants, their agents, employees, officials, and all persons acting in concert with them under color of state law, from subjecting Plaintiffs to the illegal and unconstitutional conditions, acts, omissions,

        policies, and practices set forth above;

    c.  Order Defendants to develop and implement, as soon as practical, a plan to eliminate the substantial risks of serious harm that Plaintiffs suffer due to

planned to targeted acts of discrimination and the Defendants' plan shall include at a minimum the following:

    a.  Protection from Harm and acts or other illegal to unlawful, discriminatory conduct that infringes upon the equal rights of all Black Female students at UMES and MD HBCU students and any and all basic human needs required by dignity, civilized standards, humanity, and decency, as Female students at UMES and any and all MD HBCU's, should enjoy.

**d.** Issue a judgment against Defendants in an amount to be determined at trial, including compensatory and punitive damages in an amount that is fair, just, and **reasonable;**

e.  Award Plaintiffs the costs of this suit, and reasonable attorneys' fees and litigation expenses pursuant to 42 U.S.C. § 1988, and other applicable laws;

f.  Retain jurisdiction of this case until Defendants have fully complied with the orders of this Court, and there is a reasonable assurance that Defendants will continue to comply in the future absent continuing jurisdiction; and

g.  Grant Plaintiffs such other relief as the Court deems appropriate and just.

h.  **Request for Appointment of Counsel.**

i.  That the Defendants of the State of Maryland **TERMINATE** the employment status of Defendants Dr. Attoh and Dr. Harris, and Dr. Bell for the acts and illegal conduct as described herein above, as both violated UMES and state policy and procedures and created their own in violating the rights of Plaintiff Wells.  That Dr. Heidi M. Anderson UMES President be **immediately REMOVED** from office, as she knew

and/or should have known that her staff and Defendants were directly and intentionally violating Black Female students rights.

## AMENDED REQUESTED RELIEF:

1). Demand For Trial By Jury

2). The Plaintiff demand damages in the amount of $10,250,000 Dollars in Compensatory Damages and $20,000,000 in Punitive Damages, against each Defendant, as to **COUNT ONE**. Plaintiff demands damages in the amount of $2,500,000 in Compensatory Damages and $5,000,000 dollars in Punitive Damages against each applicable Defendant as to **COUNT TWO**. As to **COUNT 3**, the Plaintiff demands and seeks damages against each Defendant in the amount of $1,000,000 dollars in Compensatory Damages and $500,000 dollars in Punitive Damages. For **COUNT 4,** the Plaintiff demands judgment and relief in the amount of $250,000 dollars in Compensatory Damages and $750,000 dollars in Punitive Damages.

a). Request other **unspecified** damages, which can be fully negotiated between the parties.

b). The UM System educational services **must** mandate and ensure that any and all rules, policies, regulations, procedures and guidelines, to student rights and responsibilities to grievance procedures from each UM System institution to its students regardless of campuses location, are equally applied, and student safe guards and full protections and rights are in place consistent with UM College Parks main campus policies for all students in any programs enrolled.

c). That any policy changes, corrections, or other amendments should be made or posted publicly online with proper legal Notice to all students, staff and general public of the planned action.

d). That ALL UM System institutions shall have and/or employ a Ombudsman officer and office at each facility, fully staffed for students and staff.

e). The State of MD/UM System shall agree **not to** create or have policies between each UM System campus that are different or otherwise conflict with other UM System institutions, based upon race, color or other discriminatory appearances to practices.

f). The Petitioner/Complainant Berri Wells, requests that she be issued an **"*Honorary Degree*"** from the University of Maryland System with FULL honors for her mental pain and suffering that I endured, and will never be the same in the functional educational setting again.

g). Rule, Declare and Order the Defendants at UMES Compliance Policy, provide the student NO information or directions of what the Office of Institutional Equity and Compliance does or the relevant areas of discrimination it covers. The Section is incomplete and the students' rights to all Notice is not provided, thus the students' rights to due process and equal protection are violated and infringed upon by UMES, who's policies under this section are not defined. This policy must be consistent with All other University of Maryland campuses and institutions Compliance policies.

h). Rule and Order that the Defendants **cannot** legally collect any alleged debts from the Plaintiff without a lawful contract and license by the collecting agency and/or entity.

i). Rule and Declare that the Defendants CCU and/or UMES do not have at time of alleged debt notice went out to collect any debt from the Plaintiff as set forth and alleged herein, legally

33

without a license to collect such debts.

j). Rule and Order that the debts from UMES and CCU Defendants is voided and cannot be enforced.

k). That the Court issue an immediate ORDER to open a criminal investigation as to who directed, accessed and authorized the unauthorized and illegal grade tampering and grade changes of Plaintiff Wells grade from a F to W.

l). Rule and Declare that both Defendants Harris and Attoh violated UMES policy and procedures as outlined and described above, and violated Plaintiff Wells rights to due process and equal protections laws.

m). Rule, Declare and Order that the Court takes Judicial Notice of the admission by Defendant Harris that the UMES and other Defendants dismissed Plaintiff Wells from her program in error.

n). Rule and Order that the changing of the Plaintiffs grade from a F to W, without reason, notice and justification was illegal, unlawful and criminal.

o). Rule, Order and Declare that the Defendants to whom applicable failed to follow the appeals, complaint and grievance procedures, which denied the Plaintiff due process, which was not fait to Plaintiff.

p). Rule, Order and Declare that NO acts or conduct can or shall occur that violate the rights of any student based upon race, sex, color, gender, or age.

q). That the Court shall immediately order and direct that any and all policies, rules, regulations between all Defendants institutions of the University of Maryland System shall be consistent, fair and equal to all students, regardless, of race, sex, color, age or gender.

r). Rule, Order and Declare that ALL University of MD institutions ***Syllabus*** must be consistent,

34

fair and equal too ALL University of MD students.

s). Rule, Order and Declare that Defendant Attoh **did not** have the legal right, power nor authority to dismiss and tell the Plaintiff to leave his class, as due process during the appeal, grievance and complaint process would and shall protect victims like the Plaintiff until the appeal and/or grievance process is completed, that NO student shall be under these circumstances be not allowed to continue their classes, until this process is FINAL.

t). That the Defendants shall immediately create a policy that any unauthorized access to another students educational records and any changes without notice or legal justification to harm the student, is illegal and criminal, and any staff member and/or employee found to be in violation will be terminated, and subject to criminal prosecution.

u). That the Court Rule, Order and Declare that the Defendants shall immediately eliminate any and all complaints and issues with *Arbitrary and Capricious Grading Policies, Appeal, Grievance and Complaints need be fair across the board and any and all apparent Disparities Between policies at each Institutions in these policy areas shall be consistent and protect all students, equally.*

_____

Berri A. Wells
7414 Riverhill Rd.
Oxon Hill, MD 20745
(301)905-7160
Email: abettercoach@gmail.com

Dated this the 21st day of May, 2020

## VERIFICATION

I do hereby VERIFY & CERTIFY this date that the above and foregoing Complaint

is true and correct to the best of my knowledge, information and beliefs.


_____

Berri A. Wells